UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ECOLOGICAL RIGHTS FOUNDATION, <br><br> *Plaintiff,* <br><br> v. <br><br> U.S. ENVIRONMENTAL PROTECTION AGENCY, <br><br> *Defendant*. | Civil Action No. 19-0980 (BAH) |

## <u>MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>

This case involves a Freedom of Information Act ("FOIA") request Plaintiff Ecological

Rights Foundation ("EcoRights") submitted to the Defendant ("EPA") broadly described as

seeking records related to EPA's current and former Administrator; records pertaining to EPA's

policies and procedures for processing FOIA requests; and EPA's procedures for engaging with

the media.  EPA undertook appropriate efforts to search for and provide all reasonably

segregable records, and EPA has withheld only information that is properly exempt from release

under FOIA Exemptions 5, 6, 7(C), and 7(E).  As explained herein, in the attached Statement of

Facts, declaration, the exhibits thereto, and the *Vaughn* Index, no material questions of fact

remain, and EPA is entitled to judgment as a matter of law.

## BACKGROUND

EPA hereby incorporates its Statement of Facts; the declaration prepared by Elizabeth

White ("White Decl.") (attached), and the *Vaughn* Index (attached).

On or about August 30, 2018, EcoRights submitted a ten-part, multiple subpart FOIA

request, seeking records held by EPA related to several topics.  White Decl. ¶ 3.  Broadly

described, EcoRights' FOIA request seeks records pertaining to: whether certain Agency policies, practices, and procedures have changed since July 5, 2018, including those related to the Administrator's calendar, those related to engagement with the media, those related to travel for senior EPA leadership, those related to processing FOIA requests, and those related to the provision of security to the Administrator; EPA Office of Inspector General investigations of former Administrator Pruitt; current Administrator Andrew Wheeler's calendar and calendar attachments since July 5, 2018; and the processing of a separate FOIA request Plaintiff submitted to EPA that is currently in litigation in the Federal District Court for the Northern District of California. *Id.*

On March 15, 2019, EPA provided an initial production of documents pertaining to Administrator Wheeler's calendar. White Decl. ¶ 6. Portions of the records were withheld pursuant to FOIA Exemptions 5, 6, 7(C) and 7(F). *Id.* Ex. C. On April 8, 2019, EcoRights filed this action against EPA for failing to provide a final determination to its FOIA request in a timely manner, challenging EPA's withholding of information, and challenging EPA's search of responsive documents. Compl. ¶¶ 51-82.

On July 18, 2019, based on Boolean search terms, EPA's eDiscovery Service team returned completed search results that identified approximately 212,000 pages of potentially responsive material. White Decl. ¶ 17. The parties agreed to an alternative search strategy, one not relying on e-discovery tools and Boolean searches, but instead EcoRights agreed to further clarify its request with such language that could be provided to management-level staff and subject matter experts who would determine, with input from staff when appropriate, whether responsive records exist. *Id.* ¶ 18-19; *see also* ECF No. 13. Subsequently, EPA provided

EcoRights all responsive records in eight separate productions, withholding exempt information pursuant to FOIA Exemptions 5, 6, 7(C) and 7(E).[1]  White Decl. ¶¶ 16-33.

**LEGAL STANDARDS**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment must demonstrate an absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has met its burden, the non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248.

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Benjamin v. Dep't of State*, 178 F. Supp. 3d 1, 3 (D.D.C. 2016), *aff'd*, 2017 WL 160801 (D.C. Cir. Jan. 3, 2017) (quoting *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009)).  A defendant is entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, that it has conducted an adequate search for responsive records, and that each responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure.  *See, e.g., Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980).  To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations.  *See, e.g., McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Santana v. Dep't of Justice*, 828 F. Supp. 2d 204, 208 (D.D.C. 2011); *Allen v. U.S. Secret Serv.*, 335 F. Supp. 2d 95, 97 (D.D.C. 2004).

---

[1] When the records were initially released to EcoRights, EPA withheld the names and email addresses of Personnel Security Detail ("PSD") agents pursuant to FOIA Exemptions 6, 7(C) and 7(F).  EPA is no longer asserting Exemption 7(F) to withhold this information.

**ARGUMENT**

**I.    EPA CONDUCTED A REASONABLE AND ADEQUATE SEARCH FOR RESPONSIVE RECORDS**

Following EPA's search for records responsive to EcoRights' FOIA request, as well as discussions regarding the scope of EcoRights' request, EcoRights proposed that EPA conduct a search based on consultations with management-level staff and subject matter experts, with input from staff when necessary, rather than relying on e-discovery methods and Boolean searching. White Decl. ¶ 18, 19.  EPA staff then conducted searches across relevant program offices for potentially responsive records using the search method proposed by EcoRights. *Id.* ¶ 21.  EPA consulted with subject matter experts across EPA concerning the various aspects of EcoRights' FOIA request. *Id.*

EPA consulted with staff in the Office of Public Affairs, the Office of the Chief Financial Officer, the Office of Mission Support, the National FOIA Office, the Office of Enforcement and Compliance Assurance, and other offices. *Id.*  Subject matter experts reviewed the request language and searched for responsive records. *Id.*  In the discussions following EPA's final production of records, EcoRights raised concerns with particular aspects of EPA's search.  *Id.* ¶¶ 18-33. Specifically, EcoRights identified attachments that were missing from certain calendar entries, from documents produced by the Office of the Inspector General ("OIG"), and from a memorandum that had been produced.  *Id.* ¶ 24.  EPA subsequently collected the identified attachments and produced those records to EcoRights, subject to any applicable FOIA exemptions, in productions of records on June 10, 2020 and July 10, 2020.  *Id.* ¶¶ 25-33.

EcoRights raised two concerns that the parties were unable to resolve.  First, EcoRights alleged that drafts of a particular document that was produced, a "November 2018 Awareness Notification Memorandum," should have been collected as responsive to the FOIA request.  *Id.*

4

¶ 34.  Second, EcoRights alleged that records generated in the process of converting the responsive calendar entries from an Outlook format to a PDF were responsive to the FOIA request.  *Id.* As demonstrated below, EPA conducted a reasonable and adequate search for records, and these two categories of additional records that EcoRights now seeks are not responsive to the FOIA request.

### A.       The Agreed-Upon Search that EPA Conducted Was Reasonable.

Under FOIA, an agency is obligated to conduct a search that is "reasonably calculated to uncover all relevant documents."  *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); *see also Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."); *Media Research Ctr. v. Dep't of Justice*, 818 F. Supp. 2d 131, 137 (D.D.C. 2011).  A reasonable search is one that covers those locations where responsive records are likely to be located.  *Oglesby*, 920 F.2d at 68.  To satisfy its obligation, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Id.*

Where an agency affidavit attests that a reasonable search was conducted, the agency is entitled to a presumption of good faith.  *Defenders of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004).  "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).  FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA

request if responsive documents are likely to be located in a particular place. *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996); *Marks v. Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978). Nor does the FOIA require that an agency search every record system. *Oglesby*, 920 F.2d at 68.

"To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009). However, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The process of conducting an adequate search for documents requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise," and it is "hardly an area in which the courts should attempt to micromanage the executive branch." *Schrecker v. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003) (internal quotation marks and citation omitted).

A plaintiff "cannot rebut the good faith presumption" afforded to an agency's supporting affidavits "through purely speculative claims about the existence and discoverability of other documents." *Brown v. Dep't of Justice*, 724 F. Supp. 2d 126, 129 (D.D.C. 2010) (quoting *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)); *accord Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994) (a plaintiff's "mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them"); *SafeCard Servs.*, 926 F.2d at 1201 ("When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question

6

it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant.").

Moreover, in responding to a FOIA request, an agency looks to the "reasonabl[e] descri[ption]" of the records sought.  5 U.S.C. § 552(a)(3)(A).  That is, a professional agency employee familiar with the subject area must, in light of the FOIA request framed by the requestor, be able to locate the requested records with a "reasonable amount of effort."  H.R. Rep. No. 93-876, at 6 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6271.  The agency must be able to determine "precisely" which records are being requested.  *Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997) (citation and internal quotation marks omitted).  The agency then is obligated to perform a "reasonable" search in response to the request framed by the requestor.  *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986); *Zemansky v. EPA*, 767 F.2d 569, 571-73 (9th Cir. 1985).

Here, there is no material doubt that EPA conducted a reasonable and adequate search. As explained in the White Declaration, EPA agreed to implement a search strategy that was proposed by EcoRights.  White Decl. ¶¶ 18-19.  In accordance with EcoRights' proposal, EPA consulted with subject matter experts across EPA concerning the various aspects of EcoRights' FOIA request. *Id* at ¶ 21.  EPA consulted with staff in the Office of Public Affairs, the Office of the Chief Financial Officer, the Office of Mission Support, the National FOIA Office, the Office of Enforcement and Compliance Assurance, and other offices.  *Id.*  As agreed, subject matter experts reviewed the request language and searched for responsive records.  *Id.*  Following searches based on the agreed upon strategy, EPA submitted three productions of responsive records to EcoRights.  *Id.* ¶¶ 21-23.

On April 23, 2020, EcoRights alleged that aspects of EPA's search were unreasonable and inadequate in part because attachments to certain calendar entries, from documents produced by OIG, and from a memorandum that had been produced were missing. *Id.* ¶ 24, Ex. M. On June 10, 2020, EPA addressed EcoRights' concerns with non-calendar related attachments that were missing and indicated that it would conduct a supplemental search for the attachments to the calendar entries. *Id.* ¶ 25, Ex. N. On July 10, 2020, having conducted a supplemental search that located attachments to calendar entries, EPA provided EcoRights with releasable calendar attachments. *Id.* ¶ 28. EPA conducted an adequate and reasonable search, and the two concerns that EcoRights has identified, as discussed above and in further detail below, lack merit.

**B.      Drafts of the "November 2018 Awareness Notification Memorandum" are Not Responsive to EcoRights' FOIA Request.**

FOIA request EPA-HQ-2018-011071 sought in part, "All documents created by EPA since July 5, 2018, constituting or memorializing any instructions, directive, plan, policy, practice, or memorandum to EPA staff concerning how to review and/or respond to [FOIA] requests." *Id.* ¶ 38, Ex. A. One of the records that EPA produced in response to this portion of the request is a November 16, 2018, memorandum issued by then Chief of Staff Ryan Jackson concerning EPA's Awareness Notification process ("Awareness Notification Memorandum"). *Id.* ¶ 38. In its April 23, 2020, letter, EcoRights stated that, "[t]here are no drafts of the single record provided in this production. It is not plausible that this statement went directly to its final version." *Id.* ¶ 38, Ex. M. As EPA explains in the White Declaration, EPA did not collect drafts of the Awareness Notification Memorandum as part of its response to this FOIA request because the request sought any "instructions, directive, plan, policy, practice, or memorandum to EPA staff concerning how to review and/or respond to [FOIA] requests." *Id.* ¶ 39. A draft version of the Awareness Notification Memorandum was not circulated to EPA staff as an instruction,

directive, plan, policy, practice or memorandum concerning how to review and/or respond to FOIA requests, and therefore was not collected in response to this portion of the request. *Id.*

The FOIA request here sought instructions or directives concerning FOIA processing, and EPA provided those records. Non-final instructions that were never circulated beyond those involved with drafting the documents are beyond the scope of the FOIA request, and the law is clear that a requester cannot expand a FOIA request after it is made. *See Coss v. Dep't of Justice*, 98 F. Supp. 3d 28, 34 (D.D.C. 2015) ("Although the FOIA requires an agency to produce all records reasonably described, a FOIA plaintiff may not expand the scope of his request once his original request is made"). The draft records that EcoRights now seeks are beyond the scope of the FOIA request at issue, and therefore, do nothing to undermine the reasonableness of EPA's search.

**C.      Records Created in the Course of Responding to the FOIA Request at Issue Here are Not Responsive.**

EcoRights has asserted that EPA has improperly withheld portions of records as not responsive. However, EPA has not withheld any portion of a responsive record. Instead, EPA redacted entirely separate records that are not responsive to the FOIA request. White Decl. ¶ 37.

Specifically, EcoRights' FOIA request sought Administrator Wheeler's electronic calendar from the Outlook software program, among other records. *Id.* ¶ 35, Ex. A. EPA determined that a particular Outlook calendar constitutes a single record for purposes of EcoRights' FOIA request. Because an Outlook calendar is a computer software application, the requested calendar must be converted into a format that can be produced to the requester. As discussed in the White Declaration, the technical process used to convert the calendar into a PDF format for FOIA production adds additional information to the PDF containing the calendar record—information that is not contained in the Outlook version of the calendar. *Id.* ¶¶ 36-37.

9

Specifically, in order to create the PDF version of Administrator Wheeler's Outlook calendar an EPA employee exported the calendar from Outlook, emailed themselves the Outlook calendar, and then converted that email attachment to PDF. *Id.* When the calendar was printed to PDF, it was embedded in an email from the employee who printed the calendar. *Id.* As a result, the final PDF product included a header with the name of the employee who generated the PDF of the calendar and the subject line of the email and a footer of the same employee's name and signature block. *Id.* Accordingly, the single PDF contains additional records beyond the calendar itself.

Plaintiff may argue that EPA's redaction of records added through the PDF conversion process and contained in the PDF printout violates *American Immigration Lawyers Association ("AILA") v. Executive Office for Immigration Review*, 830 F.3d 667 (D.C. Cir. 2016). But this is not so. In *AILA*, the D.C. Circuit left open "the antecedent question of what constitutes a distinct 'record' for FOIA purposes[.]" *Id.* at 678 (explaining that "agencies . . . in effect define a 'record' when they undertake the process of identifying records that are responsive to a request"); *see also Shapiro v. CIA*, 247 F. Supp. 3d 53, 73-75 (D.D.C. 2017) (concluding that the FBI did not violate *AILA* where it withheld non-responsive portions of a multi-topic document based on the FBI's determination of what constitutes a record). Here, the responsive record is the Administrator's calendar. The overlay of additional records that contain the name of the FOIA processor are beyond the scope of the FOIA request: these records were generated as a result of the search and collection of the responsive calendar record. EPA properly redacted the header and footer information that were added as the result of the conversion process of the calendar entries to a PDF because these non-responsive records were not part of the requested record.

10

In sum, EcoRights and EPA reached agreement on how the search for records responsive to the FOIA request at issue would be conducted, EPA conducted a search in accordance with that agreement, and EPA addressed all but two of EcoRights' concerns with EPA's search for records. As described above, EcoRights' two remaining complaints with EPA's search are without merit.  Accordingly, EPA has conducted a reasonable search for responsive records.

## II.    EPA PROPERLY INVOKED FOIA EXEMPTIONS 5, 6, 7(C), AND 7(E)

FOIA does not allow the public to have unfettered access to government files. *McCutchen v. Dep't of Health & Human Servs.*, 30 F.3d 183, 184 (D.C. Cir. 1994).  Although disclosure is the dominant objective of FOIA, there are several exemptions to the statute's disclosure requirements.  *Dep't of Def. v. Fed. Labor Relations Auth. ("FLRA")*, 510 U.S. 487, 494 (1994).  FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of the Act's nine exemptions.  5 U.S.C. § 552(b); *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150-51 (1989). To protect materials from disclosure, the agency must show that they come within one of the FOIA exemptions.  *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007).

As explained below and as detailed in the White Declaration and the *Vaughn* Index, EPA properly relied on Exemptions 5, 6, 7(C) and 7(E), to withhold records, or portions of records, responsive to EcoRights' FOIA request.

### A.    Exemption 5, Deliberative Process Privilege.

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption shields documents of the type that would be privileged in the civil

11

discovery context, including the executive deliberative process privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004); *Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 601 (D.C. Cir. 2001).

Documents exempt from disclosure pursuant to Exemption 5, deliberative process privilege, include those "'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Sears, Roebuck & Co.*, 421 U.S. at 150 (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)); *see McKinley v. FDIC,* 744 F. Supp. 2d 128, 137-38 (D.D.C. 2010). As the U.S. Supreme Court has explained:

> The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (internal quotation marks and citations omitted).

The deliberative process privilege is designed to prevent injury to the quality of agency decisions by (1) encouraging open, frank discussions on matters of policy between subordinates and superiors; (2) protecting against premature disclosure of proposed policies before they are adopted; and (3) protecting against public confusion that might result from the disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's decision. *See Sears, Roebuck & Co.*, 421 U.S. at 151-53; *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *Citizens for Responsibility & Ethics in Wash. ("CREW") v. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152, 156 (D.D.C. 2009); *FPL Grp. Inc. v. IRS*, 698 F.

Supp. 2d 66, 81 (D.D.C. 2010).  Examples of documents covered by the deliberative process privilege include recommendations, draft documents, proposals, suggestions, advisory opinions, and other documents, such as email messages, that provide the views of the author, rather than the official policy of the agency, or which reflect the give and take of the policy making process. *See Bloomberg, L.P. v. SEC*, 357 F. Supp. 2d 156, 168 (D.D.C. 2004).

To invoke the deliberative process privilege, an agency must show that the exempt document is both pre-decisional and deliberative.  *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1194 (D.C. Cir. 1991); *Coastal States*, 617 F.2d at 868.  For a document to be pre-decisional, it must be antecedent to the adoption of an agency policy.  *See Jordan v. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc); *see also In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) ("The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made[.]").  To show that a document is pre-decisional, however, the agency need not identify a specific final agency decision; it is sufficient to establish "'what deliberative process is involved, and the role played by the documents at issue in the course of that process.'"  *Heggestad v. Dep't of Justice*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States Gas*, 617 F.2d at 868); *see Gold Anti-Trust Action Comm. v. Bd. of Governors*, 762 F. Supp. 2d 123, 135-36 (D.D.C. 2011) ("[E]ven if an internal discussion does not lead to adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document was generated as part of a definable decision-making process.") (citing *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992)).

As the White Declaration and *Vaughn* Index explain, the information that EPA is withholding pursuant to the Deliberative Process Privilege is predecisional.  For example, the

13

portions of "talking points" documents that are withheld were drafted by staff in various contexts to facilitate the Administrator's decision-making as to what remarks to offer at an event or meeting. White Decl. ¶ 60. The withheld information is pre-decisional because it is communicated in advance of the Administrator's decision on what to communicate at the particular event or meeting. *Id*. *See Am. Ctr. for Law & Justice v. Dep't of Justice*, 325 F. Supp. 3d 162, 171-72 (D.D.C. 2018).

The privilege protects information that if disclosure "would 'expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990) (quoting *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987)). A document is "deliberative" if it "'reflects the give-and-take of the consultative process.'" *McKinley*, 744 F. Supp. 2d at 138 (quoting *Coastal States Gas*, 617 F.2d at 866). Thus, "'pre-decisional materials are not exempt merely because they are pre-decisional; they also must be part of the agency give-and-take of the deliberative process by which the decision itself is made.'" *Jowett, Inc. v. Dep't of Navy*, 729 F. Supp. 871, 875 (D.D.C. 1989) (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975)). The White Declaration and EPA's *Vaughn* entries detail the deliberative nature of each Exemption 5 withholding. For example, EPA has withheld portions of briefing records pursuant to the deliberative process privilege. These documents are deliberative because they contain staff-identified options, recommendations, or other information provided to aid senior officials, often the Administrator, in deciding how to address the particular subjects that are detailed in the *Vaughn* entries. White Decl. ¶ 55

14

In this case, EPA properly invoked Exemption 5 to withhold predecisional, deliberative information found within Administrator Wheeler's calendar entries and calendar attachments. White Decl. ¶ 50, 54. The withheld material includes:

i.      internal briefing materials for Administrator Wheeler based on staff recommendations and preliminary thoughts on how to improve EPA's overall lab framework and enterprise, *id.* ¶ 51, *Vaughn* Index Part I page 6, and Part II doc. ED_00412_00018087, and doc. ED_004712_00018089;

ii.     draft agenda for official events and meetings, White Decl. ¶ 53, *Vaughn* Index Part I pages 8, Part II doc. ED_004712_00017471;

iii.    internal briefing material for Administrator Wheeler containing preliminary thoughts and proposals for potential talking points and discussion topics for meetings with foreign dignitaries, White Decl. ¶ 52, *Vaughn* Index Part I page 7, and Part II doc. ED_004712_00005385 and doc. ED_004712_00017459;

iv.    suggestions for discussion topics and talking points for upcoming meetings and phone calls with various senators and state officials, White Decl. ¶¶ 60-62, *Vaughn* Index Part II doc. ED_004712_00017552, doc. ED_004712_00017727, doc. ED_004712_00017816, doc. ED_00412_00017838, and doc. ED_004712_00017961;

v.     an internal draft briefing document for Administrator Wheeler suggesting discussion topics and/or questions that could be raised during an upcoming interview with the Washington Examiner, *Vaughn* Index Part II doc. ED_004712_00017919;

vi.    three draft documents pertaining to EPA's emergency response to Hurricane Florence and Super Typhoon Yutu containing draft management objectives providing thoughts and recommendations on how to best evaluate EPA's emergency response, White Decl. ¶¶ 63-64, *Vaughn* Index Part II, doc. ED_004712_00018082, doc. ED_00412_00018071, and doc. ED_004712_00018000;

vii.    internal deliberations, discussions and thoughts on the various options and action items for the resolution of the dispute that arose under the Federal Facilities Agreement that governs the superfund cleanup at the Edwards Air Force Base South Air Force Research Laboratory site, White Decl. ¶¶ 56-58, *Vaughn* Index Part II doc. ED_004712_00004639, doc. ED_004712_00004640, and doc. ED_004712_00004641; and

viii.    various other internal briefing documents used to brief Administrator Wheeler, and other senior EPA leaders, before making a final decision on EPA's approach to certain topics, *Vaughn* Index Part II doc. ED_004712_00005410, doc. ED_004712_00005438, doc. ED_004712_00017566, doc. ED_004712_00017637, doc. ED_004712_00018003, and Part III.

The information that EPA withheld is the type of information that falls within the deliberative process privilege of FOIA Exemption 5. *See, e.g., Protect Democracy Project, Inc. v. Dep't of Def.*, 320 F. Supp. 3d 162, 177 (D.D.C. 2018) (talking points deemed predecisional and deliberative, release of such information "would expose the process by which agency officials crafted a strategy for responding to the press and to Congress"); *Competitive Enter. Inst. v. EPA,* 12 F. Supp. 3d 100, 120 (D.D.C. 2014) (holding that internal agency communications

discussing how to communicate with members of Congress are predecisional); *CREW v. Dep't of Homeland Sec.,* 514 F. Supp. 2d 36, 46 (D.D.C. 2007) (protecting briefing materials concerning response to Hurricane Katrina, which included proposed "solutions and approaches").

Disclosure of the withheld information would lead to concrete, reasonably foreseeable harms, ranging from discouragement of free exchange of views within and between agencies and an accordant diminution of the quality of governmental decision-making.  White Decl. ¶¶ 52, 53, 58, 61, 64, 65, 67.  The foreseeable harm in releasing the withheld information would also lead to public confusion where, for example, the Administrator's remarks do not reflect the suggested talking points, or where EPA's decision and action differ from internal suggested and recommended advice.  White Decl. ¶¶ 52, 55, 58, 60, 61, 64.  Thus, the Exemption 5, deliberative process privilege, invocations in this case accord with the FOIA Improvement Act of 2016, which provides, in relevant part, that "[a]n agency shall withhold information under this section only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b)."  5 U.S.C. § 552(a)(8)(A)(i)(I).

### B.      Exemption 6, Personal Calendar Entries

Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The term "similar files" is broadly construed and includes "Government records on an individual which can be identified as applying to that individual."  *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."); *Govt. Accountability Project v. Dep't of State*, 699 F. Supp. 2d 97, 105-06 (D.D.C. 2010).  In assessing the applicability of

17

Exemption 6, courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46; *Chang v. Dep't of Navy*, 314 F. Supp. 2d 35, 43 (D.D.C. 2004). "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting *FLRA*, 510 U.S. at 497) (alterations in original); *Beck v. Dep't of Justice*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

Importantly, "[t]he privacy interest at stake belongs to the individual, not the agency." *Amuso v. Dep't of Justice*, 600 F. Supp. 2d 78, 93 (D.D.C. 2009); *accord Reporters Comm.*, 489 U.S. at 763-65. And "the concept of personal privacy . . . is not some limited or 'cramped notion' of that idea," *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 165-70 (2004) (construing analogous Exemption 7(C)), but rather is grounded in "both the common law and the literal understandings of privacy [that] encompass the individual's control of information concerning his or her person." *Reporters Comm.*, 489 U.S. at 763. "Even seemingly innocuous information can be enough to trigger the protections of Exemption 6." *Horowitz v. Peace Corps*, 428 F.3d 271, 279 (D.C. Cir. 2005). An individual's privacy interest "is not limited to [personal information] of an embarrassing or intimate nature." *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 304 (D.D.C. 2007); *accord Appleton v. FDA*, 451 F. Supp. 2d 129, 145 (D.D.C. 2006). Under Exemption 6, any personal privacy interest greater than *de minimis* is considered to be "substantial." *Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health & Human Servs.*, 554 F.3d 1046, 1050 (D.C. Cir. 2009).

Here, EPA invoked Exemption 6 to withhold the names and locations of where Administrator Wheeler ate lunch or dinner; hotel locations at which the Administrator stayed; and train or flight reservations, namely specific ticket or route numbers. White Decl. ¶¶ 42-43; *Vaughn* Index Part I multiple entries at p. 2-3. Administrator Wheeler has a strong privacy interest in this information, the release of which would constitute a clearly unwarranted invasion of personal privacy and could lead to harassment as well as unwanted contact by the media and others. *Id.*; *see Judicial Watch v. Dep't of Commerce,* 337 F. Supp. 2d 146, 177 (D.D.C. 2004) ("[plaintiff] is not entitled to release of personal information contained within the Secretary's calendars and schedules"); *see also Long v. Off. of Pers. Mgmt.*, 692 F.3d 185, 192 (2d Cir. 2012) ("federal employees in sensitive agencies and occupations face an increased risk of harassment or attack"). Furthermore, the locations where Administrator Wheeler routinely dined, stayed while traveling, or specific travel information, such as specific ticket or route numbers, do not shed light on EPA's performance of its statutory duties. *Id.*; *see Beck*, 997 F.2d at 1492 ("Information that 'reveals little or nothing about an agency's own conduct' does not further the [FOIA's] statutory purpose; thus the public has no cognizable interest in the release of such information.").

Pursuant to FOIA Exemption 6, EPA also withheld the names and phone numbers of two individuals as that information was associated with prospective job candidates. In the first instance, the withheld name and contact information is associated with an individual that Administrator Wheeler was scheduled to call to provide a job reference. White Decl. ¶ 48; *Vaughn* Index Part I entries at p. 3-4. In the second instance, the withheld name and contact information is associated with a prospective EPA candidate that did not fill the position for which he or she was considered. *Id.* In each of these cases, disclosure of the withheld

19

information would reveal information about job candidates seeking positions.  An individual has a strong privacy interest in information related to his or her job prospects.  Further, the public interest in such information is minimal as releasing the names and phone numbers of these two individuals would not shed light on EPA's performance of its statutory duties.  *Id.; see also Judicial Watch v Exp.-Imp. Bank*, 108 F. Supp. 2d 19, 38 (D.D.C. 2000) (resumes of individuals whose applications "were withdrawn or declined may be withheld").

The burden is on Plaintiff to establish that disclosure would sufficiently serve the public interest so as to overcome the individuals' privacy interests.  *See, e.g., Carter v. Dep't of Commerce*, 830 F.2d 388, 391 n.13 (D.C. Cir. 1987); *accord Associated Press v. Dep't of Def.*, 549 F.3d 62, 66 (2d Cir. 2008); *Salas v. Off. of the Inspector Gen.*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008) ("It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant." (citing *Favish*, 541 U.S at 172)).  Here, there is no countervailing public interest that would be served by the disclosure of this personal information.  White Decl. ¶¶ 43, 48.

In sum, because there is no countervailing public interest that can overcome the privacy interest of Administrator Wheeler and these individuals, EPA properly withheld this information pursuant to FOIA Exemption 6.  *See Beck,* 997 F.3d at 1494 (when there is no public interest at all, the court "'need not linger over the balance; something outweighs nothing every time'") (quoting *Nat'l Ass'n of Retired. Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)).

### C.   Exemptions 6 and 7(C), Personnel Security Detail Agents

Similarly, for information compiled for law enforcement purposes, FOIA Exemption 7(C) protects personal privacy when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  An agency need not link

its collection of material to a specific or ongoing investigation. *See, e.g.*, *Tax Analysts v. IRS*, 294 F.3d 71, 78 (D.C. Cir. 2002).

Here, EPA correctly invoked Exemptions 6 and 7(C) to withhold the names and email addresses of Personnel Security Detail ("PSD") agents who provide protection to the Administrator. White Decl. ¶ 44; *Vaughn* Index Part I entry at p. 5. PSD agents have a significant personal privacy interest in remaining free from threats and harassment related to their role in law enforcement. *Id.* ¶ 45. Further, disclosure of the identities and email addresses of PSD agents could interfere with their ability to protect the physical safety of the Administrator when on duty. *Id.* ¶ 46. These withholdings are justified because disclosure of PSD agent names and email addresses "could expose them to harassment or danger due to their role providing security to the Administrator." *Id.*¶¶ 45-46.

Given the significant privacy interests at stake, and absence of any countervailing public interest, Exemptions 6 and 7(C) were properly invoked to protect the identities and contact information of these PSD agents. *Michael v. Dep't of Justice,* Civ. A. No. 17-0197 (ABJ), 2018 WL 4637358, *11 (D.D.C. Sept. 27, 2018) ("disclosure of personal information of law enforcement personnel may hinder the ability to conduct ongoing investigations, may lead to unwarranted harassment, and may otherwise cause embarrassment" constituting an invasion of privacy).

### D.    Exemption 7(E)

Exemption 7(E) permits withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information … would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions

if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting the "relatively low bar for the agency to justify withholding" information under Exemption 7(E)).

In this Circuit, "'the exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.'" *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)). In fact, "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Id.* (quoting *Mayer Brown*, 562 F.3d at 1194) (internal quotation marks and alterations omitted).

Pursuant to Exemption 7(E), EPA withheld the name of specific rooms within the White House where certain meetings were conducted. White Decl. ¶ 49. EPA explained that such a withholding is warranted because "due to the high security concerns associated with meetings held at the White House and the law enforcement work required to protect White House staff and visitors, records associated with particular locations within the White House are compiled for law enforcement." *Id.*

## III.     EPA RELEASED ALL REASONABLY SEGREGABLE PORTIONS OF THE RESPONSIVE RECORDS.

Under FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information must be disclosed after redaction of the exempt information. 5 U.S.C. § 552(b). Non-exempt portions of records need not be disclosed if they

are "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of Air Force,* 566 F.2d 242, 260 (D.C. Cir. 1977). To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Justice*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

In this case, where non-exempt information could be segregated from exempt information, EPA segregated and disclosed the non-exempt information from the records. White Decl. ¶ 68. Ms. White's declaration and the *Vaughn* Index demonstrate throughout, with reasonable specificity, that all documents reviewed were processed to achieve maximum disclosure consistent with the FOIA provisions. Therefore, the Court should find that EPA has properly complied with the duty to segregate exempt from non-exempt information.

*      *      *

23

## CONCLUSION

For the reasons set forth above, EPA respectfully requests that this Court grant summary

judgment in favor of EPA as to all claims in this case.

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

Daniel F. Van Horn
Chief, Civil Division
D.C. Bar #924092

By: /s/ *Kathleene Molen*
KATHLEENE MOLEN
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: (202) 803-1572
Kathleene.Molen@usdoj.gov

*Counsel for Defendant*