**EcoRights v. United States Environmental Protection Agency**
**Civil Action No. 1:19-CV-00980 (D.D.C.)**
**Vaughn Index**

This index is divided into three parts. The first part discusses the Agency's withholdings associated with the responsive calendar entries that remain at issue. The second part discusses the Agency's withholdings associated with the responsive calendar attachments that remain at issue. The third part addresses the single non-calendar withholding at issue in this case, a document titled, "ORD Response to OW Phase 2 request DRAFT 03-07-17."

## PART I: CALENDAR ENTRIES

When possible, calendar entries that contain the same withheld information have been consolidated.

---

**Date(s):** Multiple entries. Thursday, July 5, 2018 12:00PM-12:10PM, 12:00PM-1:00PM, 1:00PM-1:15PM (pages 3, 17); Tuesday, July 10, 2018 12:30-2:00PM (pages 2, 3, 29); Thursday, July 12, 12:00-1:15PM (page 40). Tuesday, December 11, 2018, 1:15PM-2:30PM (pages 7, 48); Thursday, December 20, 2018, 12:15PM-1:15pm (pages 13, 75);  Monday, January 7, 2019, 12:15-1:15PM (pages 3, 23); Tuesday, January 22, 2019, 12:00PM-1:00PM (pages 10, 62); Monday, January 28, 2019, 12:15PM-1:15PM (pages 13, 72); Wednesday, March 6, 2019, 11:45AM-12:50PM (pages 4, 37); Friday, March 8, 2019, 12:00PM-1:00PM (pages 6, 49); Wednesday, March 27, 2019, 12:15-1:15PM (pages 18, 120); Saturday, March 30, 2019, 4:00PM-5:00PM (pages 20, 132); Saturday, March 30, 2019, At 9:00PM (pages 21, 132)

**Exemption(s):** Exemption 6

**Description:** The withheld portions of these entries contain the locations at which the Administrator ate lunch or dinner.

These calendar entries constitute personnel and "similar" files because the information applies to and is identified with a particular individual, Administrator Wheeler, and it is personal in nature. Administrator Wheeler has a strong privacy interest in the non-disclosure of the places where he eats lunch or dinner. Information in these entries may include, names of restaurants, restaurant addresses, dining locations, and directions. Disclosure of this information could expose Administrator Wheeler to harassment during future visits to these restaurants, and there is a privacy interest in not having one's dietary preferences published. There is very little to no public interest in knowing what Administrator Wheeler had for lunch or dinner on a given day. Where the Administrator ate his lunch or his dinner does not shed light on EPA's performance of statutory duties. In this instance, the harm to the individual as a result of disclosure clearly outweighs the very little to no public interest in such disclosure.

The only information that has been withheld in these calendar entries is the names or descriptions of restaurants where Administrator Wheeler had lunch or dinner. All other information has been produced.

---

**Date(s):** Multiple entries. Thursday, February 14, 2019, 9:45-11:56 AM (pages 7 and 42); Monday March 25, 2019 6:55-7:00PM (pages 113-114)

**Exemption(s):** Exemption 6

**Description:** The withheld portions of these entries contain information related to the Administrator's travel. Specifically, the withheld information is composed of information related to train or flight reservations (i.e. specific ticket or route numbers) and the names of hotels at which the Administrator stayed while traveling.

These calendar entries constitute personnel and "similar" files because the information applies to and is identified with a particular individual, Administrator Wheeler, and it is personal in nature. Administrator Wheeler has a strong privacy interest in the non-disclosure of his travel information. The Administrator will repeatedly use similar travel routes and stay in similar hotels, and disclosure of this information could expose Administrator Wheeler to harassment during future visits or travel. There is very little to no public interest in knowing where the Administrator stayed while traveling. The withheld information does not shed light on EPA's performance of statutory duties or otherwise let citizens know what their government is up to. In this instance, the harm to the individual as a result of disclosure clearly outweighs the very little to no public interest in such disclosure.

The only information that has been withheld in these calendar entries are the names of hotels at which Administrator Wheeler stayed or specific information about travel arrangements like flight or train details. All other information has been produced.

---

**Date(s):** Monday, November 19, 2018, 3:30-3:45PM (pages 10 and 64)

**Exemption(s):** Exemption 6

**Description:** The withheld portion of this calendar entry contains the name and phone number of a person that the Administrator was going to call concerning a job reference that he was providing.

The withheld information constitutes personnel and similar files because the information applies to a particular individual and it is personal in nature. This individual has a strong privacy interest in the non-disclosure of his/her name, and telephone number, and its association with a job reference discussion that occurred with Administrator Wheeler. It is routine for professionals to provide references for people that they have worked with, but hiring processes are a matter of significant privacy for job applicants. Disclosure of this information would threaten the privacy of the job candidate for whom the reference was being provided. The withheld information does not shed light on EPA's performance of statutory duties. In this instance, the harm to the individual as a result of disclosure clearly outweighs the very little to no public interest in such disclosure.

The only information that is withheld is the name of the person that the Administrator was calling, that person's phone number, and a note that this call is in regard to a reference. All other information has been produced.

**Date(s):** Multiple Entries. Friday, January 4, 2019, 2:00-3:00PM; Thursday, January 24, 2019, 11:30AM-11:45AM (page 11); January 24, 2019, 1:30PM-2:30PM (page 68)

**Exemption(s):** Exemption 7(E)

**Description:** The withheld information in these calendar entries is composed of particular locations within the White House where meetings took place.

The withheld information constitutes personnel and similar files because the information applies to particular individuals and it is personal in nature. Due to the high level of security associated with particular locations in the White House these records were compiled for law enforcement purposes. Disclosure of regular meeting locations within the White House could reasonably be expected to risk circumvention of the law should bad actors have access to this information. Further, disclosure would pose operational challenges for security if the regular meeting locations for senior government leaders within the White House were to become publicly available information. Therefore, disclosure could reasonably be expected to risk circumvention of the law.

The only information that has been withheld in this calendar entry is the name of the room within the White House where a meeting took place. All other information has been produced.

**Date:** Friday, February 8, 2019, 10:00AM-10:30AM (pages 28-29)

**Exemptions:** Exemption 6

**Description:** The withheld portions of this calendar entry contains the name and telephone number of an individual that was a prospective candidate for a position at EPA. The candidate did not fill the position for which they were being considered.

The withheld information constitutes personnel and similar files because the information applies to a particular individual and it is personal in nature. This individual has a strong privacy interest in the non-disclosure of his/her name, and telephone number, and its association with a potential position within EPA. Candidates who are not selected for positions may face embarrassment or disruption with their current employer if it is disclosed that the individual sought a position at EPA. The prospective candidate's name and contact information does not shed any light on EPA's performance of statutory duties. In this instance, the harm to the individual as a result of disclosure clearly outweighs the absence of public interest.

The only information that has been withheld in this calendar entry is the name and telephone number of an individual that was being considered for a position at EPA. All other information has been produced.

**Date(s):** Multiple entries. Tuesday, July 10, 2018, 11:15-11:45 (pages 28-29); Monday, August 27, 2:00-2:10PM (page 15); Wednesday, September 5, 2018, 8:00-8:30AM (page 23); Thursday, September 13, 2018, 2:15-3:00PM (page 54); Thursday, September 13, 2018, 3:00-4:00PM (page 55); Friday, September 14, 2018, 1:30-1:45 PM (page 61); Monday, September 17, 2018 10:30-10:45PM (page 72); Tuesday, September 25, 2018, 9:30-10:30AM (page 105); Tuesday, October 2, 2018, 8:30-9:30AM (page 28); Wednesday, October 17, 2018, 3:00-4:00PM (page 61); Tuesday, October 23, 2018, 8:30-9:30AM (page 86); Thursday, November 1, 2018, 11:00-12:00PM (pages 16-17); Tuesday, November 6, 8:30-9:30AM (page 31); Tuesday, November 13, 2018, 8:30-9:30AM (page 42); Tuesday, November 20, 2018, 8:30-9:30AM (page 65); Tuesday, November 27, 2018, 8:30-9:30AM (page 75); Tuesday, December 4, 2018, 8:15-9:00AM (page 24); Tuesday, December 11, 2018, 9:15-10:00AM (page 47); Friday, December 21, 2018, 11:20AM-12:00PM (page 78); Friday, January 25, 2019, 11:00AM-11:15AM (pages 12, 69-70); Tuesday, January 29, 2019, 8:30-9:30AM (page 78); Wednesday, February 27, 2019, 11:00-11:30AM (pages 14, 83); Thursday, February 7, 2019, 3:00-4:00PM (pages 26-27); Friday, February 15, 2019, 1:30-2:30PM (page 48); Thursday, February 21, 2019, 3:00-3:00PM (page 64); Tuesday, February 26, 2019, 8:30-9:30AM (pages 76-77); Thursday, March 7, 2019, 2:00-3:00PM (page 44); Tuesday, March 12, 2019, 2:30-3:30PM (page 62); Tuesday, March 19, 2019, 8:30-9:30AM (page 87); Wednesday, March 27, 2019, 2:30-3:15PM (pages 121-122).

**Exemption(s):** 6, 7(C)

**Description:** The withheld portions of these entries contain the names and email addresses of Special Agents who were serving on the Administrator's Personnel Security Detail (PSD).

The calendar entries constitute personnel and "similar" files because the information applies to and is identified with particular individuals. Further, the purpose of the PSD is to ensure the Administrator's security by detecting, preventing, and responding to potential criminal acts perpetrated against him. PSD protection of the Administrator is a law enforcement purpose. Calendar entries containing PSD information were compiled for law enforcement purposes.

The PSD agents have a significant privacy interest in the continued withholding of their names and email addresses. Disclosure of their identities, including contact information, could expose them to harassment or danger due to their role providing security to the Administrator. The identity of the PSD agents that protected the Administrator on a particular day or time does not shed light on EPA's performance of statutory duties. Therefore, disclosure of the information would constitute a clearly unwarranted invasion of personal privacy.

PSD agents are also members of law enforcement, heightening the need to protect their identities. Therefore, their identities should be withheld pursuant to Exemption 7(C) as well as Exemption 6. Disclosure of the identities and email addresses of PSD agents could interfere with their ability to protect the physical safety of the Administrator when on duty. PSD agents have a significant personal privacy interest in remaining free from threats and harassment related to their role in law enforcement. There is no public interest in disclosure of the identities of

individual PSD agents, or their contact information. Therefore, disclosure of the law enforcement information would constitute a clearly unwarranted invasion of personal privacy.

The Agency has released all reasonably segregable information. The only information withheld is the names and email addresses of individual PSD agents.

**Date:** Tuesday, July 5, 2018, 11:00AM-12:00PM (page 17)

**Exemption:** Exemption 5

**Description:** The withheld portion of this calendar entry contains descriptions of documents that are attached to the meeting invitation. The descriptions include staff recommendations.

The withheld information is protected by the deliberative process privilege because it reflects pre-decisional deliberations among EPA staff and senior management regarding the creation of a framework for managing EPA's laboratories as part of the Office of Research and Development's (ORD) Kaizen lab project. At the time this entry was created, ORD staff and management were discussing internally how to possibly improve EPA's overall lab enterprise as part of a Kaizen lab project. The withheld information details parts of that deliberative process including staff recommendations. The withheld information was not circulated outside the EPA. The withheld information is deliberative because EPA staff and management were internally considering how to improve EPA's overall lab enterprise. The withheld information reflects preliminary thoughts about the Kaizen lab project and staff recommendations to senior leaders, including Administrator Wheeler. The content of the entry does not reflect a final decision, only the thoughts and considerations of EPA staff engaged in ORD's Kaizen lab project and then briefing their recommendations to Administrator Wheeler and other relevant senior leaders for decision-making. The foreseeable harm associated with release of the withheld information is that disclosure would have a chilling effect on the Agency's ability to engage in open and frank discussions concerning making recommendations to EPA senior leadership regarding possible improvements to Agency management of its resources.

The "Time," "Subject," "Location," "Attachments," and "Show Time As" portions of this calendar entry were released; the description portion of this calendar entry was withheld in part. The Agency has released all reasonably segregable information. The withheld information does not contain reasonably segregable factual information. To the extent any of the withheld information contains facts, they are inextricably intertwined with the deliberative discussions concerning ORD's Kaizen lab project and recommendations about improving EPA's overall lab enterprise. In addition, any factual information contained in the entry reflects the author's selection of facts from a broad range of available information to prepare for the meeting during the deliberative process described above. The selection of those facts was an integral part of the deliberations, and the factual information contained therein is inextricably intertwined with the deliberative discussion surrounding ORD's Kaizen lab project and recommendations for improving EPA's overall lab enterprise.

**Date:** Wednesday, July 11, 2018, 9:30AM-10:00AM (page 35)

**Exemption:** Exemption 5

**Description:** The withheld portion of this calendar entry contains preparation notes for an upcoming meeting between Administrator Wheeler and Australian Minister Josh Frydenberg. The notes contain information about plans for a briefing for the Administrator and highlights changes that have been made to certain briefing materials.

The withheld information is protected by the deliberative process privilege because it reflects pre-decisional deliberations among EPA staff in preparing Administrator Wheeler and other senior leaders for a meeting with Australian Minister Josh Frydenberg. At the time this entry was created, EPA staff and senior leaders were discussing internally how to effectively prepare for the meeting with Minister Frydenberg and were planning a briefing for Administrator Wheeler and other relevant senior leaders. The withheld information details a part of that preparatory process. The withheld information was not circulated outside the EPA. The withheld information is deliberative because EPA staff and management were internally considering how to best prepare Administrator Wheeler and other relevant senior leaders for the meeting with Minister Frydenberg. The withheld information reflects preliminary thoughts about potential topics for discussion, meeting invitees, and elements of a briefing package, that were considered as part of the Agency's decision-making process concerning preparation for the meeting. The content of the entry does not reflect a final decision, only the thoughts and considerations of EPA staff engaged in preparing Administrator Wheeler and other relevant senior leaders for this meeting with Minister Frydenberg.

The foreseeable harm associated with release of the withheld information is that disclosure would have a chilling effect on the Agency's ability to foster the open and forthright exchange of ideas and advice among its staff necessary to adequately prepare senior leaders for high level meetings with representatives of foreign governments. Release would therefore interfere with Agency decision-making processes related to preparing EPA's senior leaders for participation in these meetings and in advising senior leaders on talking points to consider. Lastly, release would cause public confusion by disclosing options and recommendations that staff provided the Administrator in this record, including the recommended talking points, which may differ from what ultimately later occurred at the meeting and what was communicated by Administrator Wheeler.

The "Time," "Subject," "Location," "Attachments," and "Show Time As" portions of this calendar entry were released; the description portion of this calendar entry was withheld in full. The Agency has released all reasonably segregable information. The withheld information does not contain reasonably segregable factual information. To the extent any of the withheld information contains facts, they are inextricably intertwined with the deliberative discussions concerning preparing Administrator Wheeler and senior leadership for a meeting with Australian

Minister Josh Frydenberg. In addition, any factual information contained in the entry reflects the author's selection of facts from a broad range of available information to prepare for the meeting during the deliberative process described above. The selection of those facts was an integral part of the deliberations, and the factual information contained therein is inextricably intertwined with the deliberative discussion surrounding the work to prepare senior leadership for the meeting with the Minister.

---

**Date:** Tuesday, December 3, 2018, 4:00-6:15PM (pages 22-23)

**Exemption:** Exemption 5

**Description:** The withheld portion of this calendar entry contains a draft agenda for Cabinet members' participation in the Arrival Ceremony and Lying in State in the Capitol Rotunda for former President George H.W. Bush.

The withheld information is protected by the deliberative process privilege because it reflects pre-decisional deliberations among federal government staff concerning the tentative schedule and plans for Cabinet members to participate in the arrival ceremony and lying in state in the Capitol Rotunda for former President George H.W. Bush. The withheld information is deliberative because federal government staff were discussing logistics, including a draft schedule, and plans for attendance. The withheld information reflects preliminary thoughts and plans that were considered as part of the decision-making process for scheduling and preparing for the ceremony. The content of this entry does not reflect a final decision, only the thoughts and considerations of staff engaged in the scheduling and planning of the solemn event. The information was not circulated outside the federal government. The foreseeable harm associated with release of the withheld information is that disclosure would have a chilling effect on federal government decision-making processes, and on staff's ability to freely discuss their ideas and thoughts concerning the scheduling and planning of high-profile public government events.

The "Time," "Subject," "Location," "Attachments," and "Show Time As" portions of this calendar entry were released; the description portion of this calendar entry was withheld in full. The Agency has released all reasonably segregable information. The withheld information does not contain reasonably segregable factual information. To the extent any of the withheld information contains facts, they are inextricably intertwined with the deliberative discussions concerning the scheduling and planning of the arrival ceremony and lying in state in the Capitol Rotunda for former President George H.W. Bush. In addition, any factual information contained in the entry reflects the author's selection of facts from a broad range of available information to plan for the ceremony during the deliberative process described above. The selection of those facts was an integral part of the deliberations, and the factual information contained therein is inextricably intertwined with the deliberative discussion surrounding preparation for the ceremony.

8

**PART II: CALENDAR ATTACHMENTS**

| ED_004712_00004639 | Final Agenda Edwards Dispute Admin Briefing 11-2-18.docx | Ex. 5 - Deliberative Process (DP) |
|---|---|---|
| The withheld information is internal to EPA and was provided as a briefing document to Administrator Wheeler and other senior Agency leaders. The one-page agenda document is titled, "Acting Administrator Wheeler Briefing Edwards AFB – South AFRL ESD FFA Dispute." The document contains a briefing on options for resolution of a dispute that arose under the Federal Facilities Agreement (FFA) that governs the superfund cleanup at the Edwards Air Force Base South Air Force Research Laboratory (AFRL) site. The Air Force, EPA, Department of Toxic Substances Control (DTSC), and the Lahontan Water Board signed an FFA in 1990 which established the procedural framework and schedule for developing, implementing, and monitoring at the Base in accordance with CERCLA, the NCP, Superfund guidance and policy, and applicable State of California laws. The document is organized into four sections: (1) "Introduction and Review of Meeting Purpose," (2) "Dispute Background and Brief Chronology," (3) "Options for Resolution Discussion," and (4) "Action Items and Path Forward." The "Options for Resolution Discussion" and "Action Items and Path Forward" sections are withheld pursuant to Exemption 5, the deliberative process privilege. EPA staff used the document to brief the Administrator, and other Agency leaders, on a decision regarding a dispute that arose under the FFA. The withheld information is pre-decisional because it was generated prior to arriving at a final decision concerning EPA's actions with regards to resolution of the dispute. <br><br> At the time, EPA was still deliberating about the best approach to the matter and the withheld information reflects some of the options available to the Agency, as identified by staff working on this issue. The withheld information is deliberative because it reflects options for resolution and the thoughts of staff related to action items and a path forward on this dispute. The information was provided to the Agency's senior leaders to solicit feedback and final decision-making on staff's proposed options. The information does not reflect an official Agency decision or policy, instead it reflects analysis, opinions, and suggestions on actions still in development. The document was used to brief Administrator Wheeler, and other senior leaders, to assist the leaders in making a final decision. <br><br> The foreseeable harm associated with release of the withheld information is that disclosure would hamper the efficient day-to-day workings of EPA, as staff would no longer feel free to brief issues with candor and provide advice and options to senior level decisionmakers. If the withheld information were released, staff would be more circumspect in providing their views and opinions, which would impair the Agency's ability to foster forthright, internal discussions necessary for efficient and proper decision-making. Furthermore, release could cause public confusion by disclosure of options, rationales, and conclusions that were in fact ultimately the bases for the Agency's decision how to approach the Edwards South AFRL dispute and the actions that were taken towards resolution. | | |

The "Introduction and Review of Meeting Purpose" and "Dispute Background and Brief Chronology" portions of this briefing document were released in full, while the "Options for Resolution Discussion" and "Action Items and Path Forward" portions of the record were withheld. The Agency has released all reasonably segregable information. The withheld information does not contain reasonably segregable factual information. To the extent any of the withheld information contains facts, they are inextricably intertwined with the deliberative discussions concerning options for addressing this dispute. In addition, any factual information contained in the document reflects the author's selection of facts from a broad range of available information to advise the Administrator, and other senior leaders, during the deliberative process described above. The selection of those facts was an integral part of the deliberations, and the factual information contained therein is inextricably intertwined with the deliberative discussion surrounding options to resolve the Edwards South AFRL dispute.

| ED_004712_00005385 | Emperor's Birthday Paper_Final.docx | Ex. 5 - Deliberative Process (DP) |
|---|---|---|

The withheld information is internal to EPA and was provided as a briefing document to Administrator Wheeler. The four-page document is titled, "Acting Administrator Wheeler Meeting." The document is a briefing on the Emperor of Japan's birthday celebration that Administrator Wheeler was scheduled to attend at the Ambassador of Japan's residence. The document is organized into six sections: (1) "Purpose," (2) "Run of Show," (3) "Participants," (4) "Prior History/Actions to Date," (5) "Background," and (6) "Attachments." There are two attachments included with the briefing document: a bullet-point biography of Ambassador Shinsuke J. Sugiyama and suggested talking points. The only portion of the document that is withheld is the "suggested talking points" attachment, which is withheld pursuant to Exemption 5, deliberative process privilege. EPA staff used the document to brief the Administrator on the details of the celebration and facilitate his decision-making as to what remarks he may offer while attending the event. The withheld information is pre-decisional because it was generated to brief the Administrator on the details of the event and provide him with suggested talking points to consider as he prepared to give remarks at the birthday celebration.

The withheld information is deliberative because it reflects the personal opinions and thoughts of staff working on preparing the Administrator for the event and tasked with providing him with suggested talking points. The information does not reflect an official Agency decision or policy, instead it reflects opinions and thoughts from staff on what Administrator Wheeler could expect to occur at the event and suggested talking points that the Administrator could consider during his remarks. The document was used to brief Administrator Wheeler so that he could be adequately prepared for the event and to provide him with talking points for the celebration.

The foreseeable harm associated with release of the withheld information is that disclosure would have a chilling effect on the Agency's ability of agency's staff to prepare senior leaders for public speaking engagements. Release would therefore interfere with Agency decision-making processes related to preparing EPA's senior leaders to communicate with the public at events. Lastly, release

would cause public confusion by disclosing options and recommendations staff provided the Administrator in the talking points.

Three of the document's four pages were released in full, including the following sections: (1) "Purpose," (2) "Run of Show," (3) "Participants," (4) "Prior History/Actions to Date," and (5) "Background." The "Talking Points" attachment was withheld. The Agency has released all reasonably segregable information. The withheld information does not contain reasonably segregable factual information. To the extent any of the withheld information contains facts, they are inextricably intertwined with the deliberative framing of talking points for the Administrator. In addition, any factual information contained in the document reflects the author's selection of facts from a broad range of available information to advise the Administrator during the deliberative process described above. The selection of those facts was an integral part of the deliberations, and the factual information contained therein is inextricably intertwined with the deliberative discussion surrounding providing the Administrator with talking points for his attendance at the Emperor of Japan's birthday celebration.

| ED_004712_00005410 | ESA BiOps 8.3. 2018 .docx | Ex. 5 - Deliberative Process (DP) |
|---|---|---|

The withheld information is internal to EPA and was provided as a briefing document to Administrator Wheeler and other Agency leaders. The one-page document is titled, "Endangered Species Act (ESA) Biological Opinions (BiOps)." The document contains a footer that reads, "Internal, Deliberative, Do Not Distribute." The document is organized into three sections: (1) "Background," (2) "Issue," and (3) "Timeline." EPA staff used the document to brief the Administrator, and other senior leaders, in order to facilitate decision-making related to the registration review for the pesticide Chlorpyrifos. The "Issue" and "Timeline" sections of the document are withheld pursuant to Exemption 5, deliberative process privilege. The withheld information is pre-decisional because it was generated prior to arriving at a final decision concerning EPA's actions regarding the registration review for the pesticide Chlorpyrifos. At the time, EPA was still deliberating about the then-ongoing pesticide registration review, and the ESA consultation with the National Marine Fisheries Service (NMFS) was part of that registration review process.

The withheld information is deliberative because it reflects internal Agency discussion and deliberation relating to the Agency's work, including tentative plans and estimated timelines, on the continued coordination with the NMFS that is required as part of the pesticide registration review. The information does not reflect an official Agency decision or policy, instead it reflects analysis, opinions, and tentative plans and estimated timelines on actions still in development. The document was used to brief Administrator Wheeler, and other relevant senior Agency leaders, before making a final decision on the Agency's approach to this topic.

The foreseeable harm associated with release of the withheld information is that disclosure would impair agency staff's ability to brief issues with candor and provide advice and options to senior level decisionmakers. If the withheld information were released, staff would be more circumspect in providing their views and opinions, which would impair the Agency's ability to foster forthright,

internal discussions necessary for efficient and proper decision-making. Furthermore, release could cause public confusion by disclosure of tentative plans, and estimated timelines that were not adopted by the Agency as part of its decision-making concerning the pesticide registration review for chlorpyrifos and the interagency coordination with the NMFS.

The "Background" section of this briefing document was released in full, while the "Issue" and "Timeline" sections of the record were withheld. The Agency has released all reasonably segregable information. The withheld information does not contain reasonably segregable factual information. To the extent any of the withheld information contains facts, they are inextricably intertwined with the deliberative discussions concerning coordination with the NMFS and the ongoing pesticide registration review. In addition, any factual information contained in the document reflects the author's selection of facts from a broad range of available information to advise the Administrator, and other relevant Agency leaders, during the deliberative process described above. The selection of those facts was an integral part of the deliberations, and the factual information contained therein is inextricably intertwined with the deliberative discussion surrounding the ongoing pesticide registration review.

| ED_004712_00005438 | LCR Status and Next Steps_080618.docx | Ex. 5 - Deliberative Process (DP) |
|---|---|---|

The withheld information is internal to EPA and was provided as a briefing document to Administrator Wheeler and other relevant senior Agency leaders. The three-page document is titled, "Lead and Copper Rule Revisions Status and Next Steps." The document is dated, August 6, 2018. The document is withheld in its entirety, pursuant to Exemption 5, deliberative process privilege, except for the title and footers. The document contains footers that read, "Internal Deliberative." EPA staff used the document to brief the Administrator, and other relevant senior leaders, in order to facilitate decision-making related to revisions to the Lead and Copper Rule and the next steps in the process that were identified by staff. The withheld information is pre-decisional because it was generated prior to arriving at a final decision concerning EPA's actions with regards to the Rule. At the time, EPA was still deliberating about the best approach to revising the Rule and the withheld information reflects staff's framing of the issue and options available to the Agency.

The withheld information is deliberative because it reflects only the thoughts and opinions of Agency staff engaged in framing the issue and weighing options for how to approach revisions to the Lead and Copper Rule. The information does not reflect an official Agency decision or policy, instead it reflects analysis, opinions, and suggestions on revisions still in development. The document was used to brief Administrator Wheeler and other senior leaders before making a final decision on the identified options and proposed next steps in the process.

The foreseeable harm associated with release of the withheld information is that disclosure would hamper EPA's ability to perform its basic functions, as staff would no longer feel free to brief issues with candor and provide advice to decisionmakers on rulemaking activity. If the withheld information were released staff would be much more circumspect in providing their views and opinions, which would seriously impair the Agency's ability to foster forthright, internal discussions necessary for rulemaking. Release would also interfere with staff's ability to brief

senior officials on rulemaking, which includes the weighing of options for how to approach possible revisions. Furthermore, release could cause public confusion by disclosing the thoughts and analysis expressed in the briefing document and the action taken by EPA on the Lead and Copper Rule.

The Agency has released all reasonably segregable information. The withheld information does not contain reasonably segregable factual information. To the extent any of the withheld information contains facts, they are inextricably intertwined with the deliberative discussions concerning options for approaching revisions to the Lead and Copper Rule. In addition, any factual information contained in the document reflects the author's selection of facts from a broad range of available information to advise the Administrator, and other relevant senior leaders, during the deliberative process described above. The selection of those facts was an integral part of the deliberations, and the factual information contained therein is inextricably intertwined with the deliberative discussion surrounding possible revisions to the Lead and Copper Rule and proposed next steps in the process.

| ED_004712_00017459 | Bilateral with Minister Frydenberg July 12 2018 final.docx | Ex. 5 - Deliberative Process (DP) |
|---|---|---|

The withheld information is internal to EPA and was provided as a briefing document to Administrator Wheeler and other relevant senior leaders. The document is nine pages and is titled, "Bilateral Meeting and MOU Signing with Minister for the Environment and Energy Josh Frydenberg." The document is organized into several sections, and portions of the "Key Messages," "Background," and "Talking Points" sections are withheld pursuant to Exemption 5, deliberative process privilege. EPA staff used the document to brief the Administrator, and other senior leaders, on the upcoming meeting and to facilitate decision-making on the content of remarks the Administrator may offer while participating in the bilateral meeting and MOU signing. The withheld information is pre-decisional because it was generated to brief the Agency's senior leaders on the details of the meeting and, further, to provide Administrator Wheeler with suggested talking points related to the event.

The withheld information is deliberative because EPA staff and leadership were internally considering how to prepare for this bilateral meeting and MOU signing as well as what remarks the Administrator should provide at the event. The information does not reflect an official Agency decision or policy, instead it reflects opinions and suggestions from staff on what Agency leaders should consider in preparing for the meeting and, additionally, talking points that the Administrator could use as part of his remarks. The document was used to brief senior leadership so that they could be adequately prepared for the event and to provide Administrator Wheeler with suggested talking points for this bilateral meeting and MOU signing.

The foreseeable harm associated with release of the withheld information is that disclosure would have a chilling effect on the Agency's ability to foster the open and forthright exchange of ideas and advice among its staff necessary to adequately prepare senior leaders for high level meetings with representatives of foreign governments. Release would therefore interfere with Agency decision-making processes related to preparing EPA's senior leaders for participation in these meetings and in advising senior leaders on talking points to consider. Lastly, release would cause public confusion by disclosing options and recommendations that staff provided the Administrator in this

record, including the recommended talking points, which may differ from what ultimately later occurred at the meeting and what was communicated by Administrator Wheeler.

Three pages of the document were released in full, including the following sections: (1) "Purpose," (4) "Participants," (5) "Run of Show," (6) "Press." Additionally, Minister Frydenberg and Ambassador Hockey's biographies were released in full. The Agency withheld portions of the "Key Messages" and "Background" sections and withheld in full the "Talking Points" section. The Agency has released all reasonably segregable information. The withheld information does not contain reasonably segregable factual information. To the extent any of the withheld information contains facts, they are inextricably intertwined with the deliberative framing of certain briefing information, suggested points of messaging, and draft talking points for Administrator Wheeler. In addition, any factual information contained in the document reflects the author's selection of facts from a broad range of available information to advise the Agency's senior leaders, including Administrator Wheeler, during the deliberative process described above. The selection of those facts was an integral part of the deliberations, and the factual information contained therein is inextricably intertwined with the deliberative discussion surrounding providing senior leaders with information related to the scheduled bilateral meeting and MOU signing with Minister Frydenberg, as well as providing the Administrator with suggested talking points.

| ED_004712_00017471 | 7.11.18-NEC Deputies Meeting Agenda.docx | Ex. 5 - Deliberative Process (DP) |
|---|---|---|

This document is withheld in full pursuant to Exemption 5, deliberative process privilege. It is an agenda is internal to the federal government and was used to prepare for an upcoming meeting with the National Economic Council (NEC) and representatives of several agencies. The agenda contains a list of the topics to be discussed at the upcoming meeting.

The withheld material is predecisional because of its roll in preparing meeting participants for the decisions to be made at the upcoming meeting. The document is deliberative because it is part of the interagency process of collaborating to solve a number of issues important to the federal government. The NEC's function is to advise the President on U.S. and global economic policy. Materials used to coordinate with agency partners help to support the overall deliberations of the NEC.

The foreseeable harm associated with the release of the withheld information is that disclosure would impair the NEC's ability to effectively coordinate with agencies when preparing for meetings involving decision making. Disclosure of this type of record would chill the NEC and federal agencies' ability to candidly develop plans for meetings and facilitate decision-making. Where the NEC and agencies have made decisions that appear to differ from what information is reflected on meeting agendas, then disclosure of the withheld material will create public confusion. Finally, where agenda items represent ongoing decision-making, disclosure of the agenda may prematurely disclose federal decisions.

There is not segregable material in this agenda document. The agenda does not contain reasonably segregable factual information. To the extent any of the withheld information contains facts, they are inextricably intertwined with the deliberative process described above.

| ED_004712_00017552 | Administrator Wheeler call with TC 7-9-18.docx | Ex. 5 - Deliberative Process (DP) |
|---|---|---|

The withheld document is an internal briefing document for Administrator Wheeler. The document is titled, "Administrator Wheeler Call with Senator Tom Carper (D-DE), July 9, 2018, 3:00PM." The document is organized into three sections: (1) "Potential Areas of Concern," (2) "Main Requests in Carper Letter," and (3) "Proposed Talking Points." The "Potential Areas of Concern" and "Proposed Talking Points" sections are withheld pursuant to Exemption 5, deliberative process privilege. The document is a briefing on a scheduled call with Senator Tom Carper (DE). EPA staff provided this document to the Administrator to review in order to facilitate his decision-making on how to respond to potential topics and/or questions that could be raised during his scheduled call with Senator Carper. The withheld information is pre-decisional because it was generated to brief the Administrator on the scheduled telephone call and provide talking points for potential topics of discussion.

The withheld information is deliberative because it reflects the personal opinions and thoughts of staff working on and preparing Administrator Wheeler for his scheduled call with Senator Carper. The information does not reflect an official Agency decision or policy, instead it reflects the process by which EPA staff crafted a strategy for how Administrator Wheeler could respond to inquiries or potential topics of discussion raised during the call by the Senator. The draft document was provided to the Administrator so that he could review the information before making final decisions as to how he would respond to inquiries or potential topics of discussion with Senator Carper.

The foreseeable harm associated with release of the withheld information is that disclosure would have a chilling effect on the Agency's ability to foster the open and forthright exchange of ideas and advice among its staff necessary to adequately prepare senior leaders for meetings or calls with members of Congress. Communicating with members of Congress involves careful decision-making that the deliberative material in this document supports. Release would therefore interfere with Agency decision-making processes related to preparing EPA's senior leaders for participation in meetings with members of Congress. Lastly, release would cause public confusion by disclosing the opinions of staff related to identifying potential topics of discussion and recommended talking points that staff provided to the Administrator, which may differ from what was ultimately later communicated by Administrator Wheeler.

EPA released in full the "Main Requests in Carper Letter" section of the document, while withholding the "Potential Areas of Concern" and "Proposed Talking Points" sections of the briefing document. The Agency has released all reasonably segregable information. The withheld information does not contain reasonably segregable factual information. To the extent any of the withheld information contains facts, they are inextricably intertwined with the deliberative discussions concerning preparing the Administrator for potential topics that could be raised during his call with Senator Carper and providing him with suggested talking points. In addition, any factual information contained in the document reflects the author's selection of facts from a broad range of available information to advise the Administrator during the deliberative process described above. The selection of those facts was an integral part of the deliberations, and the factual

information contained therein is inextricably intertwined with the deliberative discussion surrounding preparing Administrator Wheeler for this telephone call.

| ED_004712_00017566 | 2015 O3 Designation San Antonio Briefing 7-9-18.docx | Ex. 5 - Deliberative Process (DP) |
| --- | --- | --- |

This is a briefing document that was developed to provide staff recommendations and opinions concerning how to make decisions concerning ozone designations for counties in the San Antonio Area. The briefing was developed for senior leadership in the Office of Air and Radiation, and Administrator Wheeler was scheduled to attend the meeting. The "purpose" and "decisions needed" portions of the document are withheld pursuant to Exemption 5, deliberative process privilege, as are portions of the background section, the analysis section, and the appendix. The portion of the background section that is withheld contains the staff level characterization of other Texas air related priorities for the Agency. The withheld portions of the analysis section contain staff responses to comments made by the state of Texas. The withheld portion of the appendix contains the staff level review of the meteorology of the relevant counties and opinions concerning how the meteorology affects the contributions of particular sources. The deliberations in this document are pre-decisional to the final Agency decision on ozone designations for the San Antonio area which were issued later that month.

The withheld portions of the document are deliberative because they are composed of staff recommendations and advice on how to approach the decision of designating the San Antonio area counties. The "purpose" and "decisions needed" portions are composed of staff's framing of the issue which reflects the recommendations that are being made. The background portion of the document that is withheld contains staff characterizations of what other Texas air-related issues should be considered contextually when making the decision of how to apply ozone designations for the San Antonio area. The withheld portions of the analysis section contain staff recommendations as to how best to respond to comments provided by the state of Texas including what factual information would be most relevant in responding to those comments. Finally, the portion of the appendix that is withheld contains a staff assessment of how meteorology affects the impact of particular sources of emissions.

The foreseeable harm associated with release of the withheld information is that disclosure would constrain the Agency's ability to provide decision-makers with candid advice. If the withheld information were released, staff would be more circumspect in providing their views and opinions when making recommendations on attainment designations like the one at issue here. This would impair the Agency's ability to foster forthright, internal discussions necessary for air policy decision-making. Where staff recommendations and analysis differ from what is reflected in the Agency's final decision on issues such as attainment designations, disclosure of these deliberations can create public confusion concerning the basis for final agency decision.

Significant portions of this document have been produced. The withheld material does not contain segregable information. As discussed above, portions of what is withheld include facts that are selected by staff in their analysis of particular questions or comments. The selection of these facts from a broad range of available information reflects the opinions and advice of staff, and the factual information that is withheld is inextricably intertwined with the deliberative analysis.

| ED_004712_00017637 | Andrew Wheeler citizen science briefing material 7-13-18.docx | Ex. 5 - Deliberative Process (DP) |
|---|---|---|

The withheld document is an internal draft briefing document for Administrator Wheeler and other EPA senior leaders. The two-page document is titled, "Citizen Science at EPA Briefing for Acting Administrator Andrew Wheeler, July 16 Draft July 12, 2018." EPA staff provided this document to the Administrator, and other EPA senior leaders, to review in order to facilitate decision-making on certain citizen science-related issues and plans. The document is organized in a format that identifies a citizen science-related issue and is then followed by a "proposed response" or proposed Agency action related to the identified issue. The proposed responses or proposed Agency action are withheld pursuant to Exemption 5, deliberative process privilege. The withheld information is pre-decisional because it was generated to brief Administrator Wheeler and other senior leaders on these near-term citizen science-related issues and plans so as to facilitate decision-making on staff's proposed responses to the identified issues and tentative plans.

The withheld information is deliberative because it reflects the recommendations of staff concerning how the Agency should respond to certain citizen science issues. The information does not reflect an official Agency decision or policy, instead it reflects analysis, suggestions and proposals on the identified citizen science issues. The draft document was provided to Administrator Wheeler, and other relevant senior leaders, so that they could review the information before making final decisions concerning the identified citizen science issues and plans.

The foreseeable harm associated with release of the withheld information is that disclosure would constrain EPA's ability to perform its basic functions, as staff would no longer feel free to identify issues and propose to senior decision-makers solutions to address those issues. If the withheld information were released staff would be more circumspect in providing analysis and proposals to Agency leadership, which would seriously impair the Agency's ability to generate fulsome internal discussions necessary for rigorous decision-making. Release would also interfere with staff's ability to brief senior officials on Agency issues, which includes proposing solutions to those identified issues. Furthermore, release could cause public confusion by disclosing the thoughts and analysis expressed in the briefing document and the action taken by EPA on these citizen science-related issues.

EPA released in full most portions of this draft briefing document, while only withholding the "Proposed Response(s)" portions of the document. The Agency has released all reasonably segregable information. The withheld information does not contain reasonably segregable factual information. To the extent any of the withheld information contains facts, they are inextricably intertwined with the deliberative proposals to respond to the identified citizen science issues and plans. In addition, any factual information contained in the document reflects the author's selection of facts from a broad range of available information to advise the Administrator, and other senior leadership, during the deliberative process described above. The selection of those facts was an integral part of the deliberations, and the factual information contained therein is inextricably

intertwined with the deliberative discussion concerning how the Agency could respond to certain near-term citizen science issues and plans.

| ED_004712_00017727 | Admin Wheeler Call w Sen Cornyn.docx | Ex. 5 - Deliberative Process (DP) |
|---|---|---|

The withheld document is an internal memorandum for Administrator Wheeler. The two-page memorandum's subject line ("re line'") reads, "Call with Senator John Cornyn (R-TX)." The memorandum is from Christian Palich to Administrator Wheeler, and carbon copies (Cc) Troy Lyons. The memorandum is dated July 12, 2018. Christian Palich, a former senior adviser, provided this document to the Administrator to review in order to prepare him for a telephone call with Senator Cornyn. The briefing document is organized into three sections: (1) "Purpose," (2) "Biography," and (3) "Topics for Discussion." The "Topics for Discussion section is withheld pursuant to Exemption 5, deliberative process privilege. The withheld information is pre-decisional because it was generated to brief Administrator Wheeler on the scheduled telephone call, to prepare him for potential topics of discussion, and to provide him with talking points on those potential points of discussion.

The withheld information is deliberative because it reflects the personal opinions and thoughts of staff working on and preparing Administrator Wheeler for his scheduled call with Senator Cornyn. The information does not reflect an official Agency decision or policy, instead it reflects the process by which EPA staff crafted a strategy for how Administrator Wheeler could respond to inquiries or potential topics of discussion raised during the call by the Senator. The memorandum was provided to the Administrator so that he could review the information before making final decisions as to how he would respond to inquiries or potential topics of discussion with Senator Cornyn.

The foreseeable harm associated with release of the withheld information is that disclosure would have a chilling effect on the Agency's ability to foster the open and forthright exchange of ideas and advice among its staff necessary to adequately prepare senior leaders for meetings and calls with members of Congress. Communicating with members of Congress involves careful decision-making that the deliberative material in this memorandum supports. Release would therefore interfere with Agency decision-making processes related to preparing EPA's senior leaders for participation in meetings with members of Congress. Lastly, release would cause public confusion by disclosing the opinions of staff related to identifying potential topics of discussion and recommended talking points that staff provided to the Administrator, which may differ from what was ultimately later communicated by Administrator Wheeler.

EPA released in full the "Purpose" and "Biography" sections of the briefing document, while withholding the "Topics for Discussion" section of the document. The Agency has released all reasonably segregable information. The withheld information does not contain reasonably segregable factual information. To the extent any of the withheld information contains facts, they are inextricably intertwined with the deliberative analysis regarding potential topics that could be raised during the call and suggestions for how Administrator Wheeler could respond to those topics. In addition, any factual information contained in the document reflects the author's selection of facts from a broad range of available information to advise the Administrator during the deliberative

process described above. The selection of those facts was an integral part of the deliberations, and the factual information contained therein is inextricably intertwined with the deliberative discussion concerning topics that could be raised during the Administrator's telephone call with Senator Cornyn and suggestions related to how the Administrator may discuss those topics.

| ED_004712_00017816 | Admin Wheeler Call w Tom Udall.docx | Ex. 5 - Deliberative Process (DP) |
|---|---|---|

The withheld document is an internal memorandum for Administrator Wheeler. The two-page memorandum's subject line ("re line'") reads, "Call with Senator Tom Udall (D-NM)." The memorandum is from Christian Palich to Administrator Wheeler, and carbon copies (Cc) Troy Lyons. The memorandum is dated July 12, 2018. Christian Palich, a former senior adviser, provided this document to the Administrator to review in order to prepare him for a telephone call with Senator Udall. The briefing document is organized into three sections: (1) "Purpose," (2) "Biography," and (3) "Topics for Discussion." The "Topics for Discussion" portion is withheld pursuant to Exemption 5, deliberative process privilege. The withheld information is pre-decisional because it was generated to brief Administrator Wheeler on the scheduled telephone call, to prepare him for potential topics of discussion, and to provide him with talking points on those potential points of discussion.

The withheld information is deliberative because it reflects the personal opinions and thoughts of staff working on and preparing Administrator Wheeler for his scheduled call with Senator Udall. The information does not reflect an official Agency decision or policy, instead it reflects the process by which EPA staff crafted a strategy for how Administrator Wheeler could respond to inquiries or potential topics of discussion raised during the call by the Senator. The memorandum was provided to the Administrator so that he could review the information before making final decisions as to how he would respond to inquiries or potential topics of discussion with Senator Udall.

The foreseeable harm associated with release of the withheld information is that disclosure would have a chilling effect on the Agency's ability to foster the open and forthright exchange of ideas and advice among its staff necessary to adequately prepare senior leaders for meetings and calls with members of Congress. Communicating with members of Congress involves careful decision-making that the deliberative material in this memorandum supports. Release would therefore interfere with Agency decision-making processes related to preparing EPA's senior leaders for participation in meetings with members of Congress. Lastly, release would cause public confusion by disclosing the opinions of staff related to identifying potential topics of discussion and recommended talking points that staff provided to the Administrator, which may differ from what was ultimately later communicated by Administrator Wheeler.

EPA released in full the "Purpose" and "Biography" sections of the briefing document, while withholding the "Topics for Discussion" section of the document. The Agency has released all reasonably segregable information. The withheld information does not contain reasonably segregable factual information. To the extent any of the withheld information contains facts, they are inextricably intertwined with the deliberative analysis regarding potential topics that could be raised during the call and suggestions for how Administrator Wheeler could respond to those topics.

In addition, any factual information contained in the document reflects the author's selection of facts from a broad range of available information to advise the Administrator during the deliberative process described above. The selection of those facts was an integral part of the deliberations, and the factual information contained therein is inextricably intertwined with the deliberative discussion concerning topics that could be raised during the Administrator's telephone call with Senator Udall and suggestions related to how the Administrator may discuss those topics.

| ED_004712_00017838 | Administrator Wheeler call w Gov Kim Reynolds 7-12-18.docx | Ex. 5 - Deliberative Process (DP) |
|---|---|---|

The withheld document is an internal memorandum for Administrator Wheeler. The two-page memorandum's subject line ("re line'") reads, "CALL with Governor Reynolds (R-IA)." The memorandum is from Preston Cory to Administrator Wheeler, and carbon copies (Cc) Troy Lyons. The memorandum is undated. Preston Cory, a special adviser, provided this document to the Administrator to review in order to prepare him for a telephone call with Governor Reynolds. The briefing document is organized into three sections: (1) "Purpose," (2) "Biography," and (3) "Topics for Discussion." Portions of the "Purpose" and "Topics for Discussion" sections are withheld pursuant to Exemption 5, deliberative process privilege. The withheld information is pre-decisional because it was generated to brief Administrator Wheeler on the scheduled telephone call, to prepare him for potential topics of discussion, and to provide him with talking points on those potential points of discussion.

The withheld information is deliberative because it reflects the personal opinions and thoughts of staff working on and preparing Administrator Wheeler for his scheduled call with Governor Reynolds. The information does not reflect an official Agency decision or policy, instead it reflects the process by which EPA staff crafted a strategy for how Administrator Wheeler could respond to inquiries or potential topics of discussion raised during the call by the Governor. The memorandum was provided to the Administrator so that he could review the information before making final decisions as to how he would respond to inquiries or potential topics of discussion with Governor Reynolds.

The foreseeable harm associated with release of the withheld information is that disclosure would have a chilling effect on the Agency's ability to foster the open and forthright exchange of ideas and advice among its staff necessary to adequately prepare senior leaders for meetings with state governors and other high-level state officials. Communicating with state governors involves careful decision-making that the deliberative material in this memorandum supports. Release would therefore interfere with Agency decision-making processes related to preparing EPA's senior leaders for participation in meetings with state governors. Lastly, release would cause public confusion by disclosing the opinions of staff related to identifying potential topics of discussion and recommended talking points that staff provided to the Administrator, which may differ from what was ultimately later communicated by Administrator Wheeler.

EPA released in full the "Biography" section of the briefing document, while withholding a portion of the "Purpose" section and withholding the "Topics for Discussion" section of the document. The Agency has released all reasonably segregable information. The withheld information does not

21

contain reasonably segregable factual information. To the extent any of the withheld information contains facts, they are inextricably intertwined with the deliberative analysis regarding potential topics that could be raised during the call and suggestions for how Administrator Wheeler could respond to those topics. In addition, any factual information contained in the document reflects the author's selection of facts from a broad range of available information to advise the Administrator during the deliberative process described above. The selection of those facts was an integral part of the deliberations, and the factual information contained therein is inextricably intertwined with the deliberative discussion concerning topics that could be raised during the Administrator's telephone call with Governor Reynolds and suggestions related to how the Administrator may discuss those topics.

| ED_004712_00017919 | Washington Examiner Brief 7.11.18.docx | Ex. 5 - Deliberative Process (DP) |
|---|---|---|

The withheld document is an internal draft briefing document for Administrator Wheeler. The document is a briefing on a scheduled interview with the Washington Examiner. The document includes details related to the interview, a short biography of the journalist that was scheduled to be conducting the interview, and EPA staff's outline of potential topics that may be covered and suggested talking points. The document includes the header, "DRAFT AND DELIBERATIVE [*sic*]." EPA withheld only the outline of potential topics and talking points pursuant to Exemption 5, deliberative process privilege. EPA staff provided this document to the Administrator to review in order to facilitate his decision-making on how to respond to potential topics and/or questions that could be raised during the scheduled interview. The withheld information is pre-decisional because it was generated to brief Administrator Wheeler on the scheduled interview, to prepare him for potential topics of discussion, and to provide him with talking points on those potential points of discussion.

The withheld information is deliberative because it reflects the personal opinions and thoughts of staff working on and preparing Administrator Wheeler for this interview with the Washington Examiner. The information does not reflect an official Agency decision or policy, instead it reflects the process by which EPA staff crafted a strategy for how Administrator Wheeler could respond to questions or potential topics of discussion raised during the interview. The document was provided to the Administrator so that he could review the information before making final decisions as to how he would respond to questions or potential topics of discussion that could be raised during the interview.

The foreseeable harm associated with release of the withheld information is that disclosure would have a chilling effect on the Agency's ability to foster the open and forthright exchange of ideas and advice among its staff necessary to adequately prepare senior leaders for interviews with news media organizations. Discussions with news media is an important means for the Agency to communicate to the public key messages, explain issues, and advance the public interest. Release would therefore interfere with Agency decision-making processes related to preparing EPA's senior leaders for interviews with news media organizations. Lastly, release would cause public confusion by disclosing the opinions of staff related to identifying potential topics of discussion and recommended talking points that staff provided to the Administrator, which may differ from what

was ultimately later communicated by Administrator Wheeler in his interview with the Washington Examiner.

EPA released in full the details of the scheduled interview and the short biography of the journalist who was scheduled to be conducting the interview, while withholding EPA staff's outline of potential topics that may be covered and suggested talking points. The Agency has released all reasonably segregable information. The withheld information does not contain reasonably segregable factual information. To the extent any of the withheld information contains facts, they are inextricably intertwined with the deliberative discussions concerning preparing the Administrator for potential topics that could be raised during the interview and providing him with suggested talking points. In addition, any factual information contained in the document reflects the author's selection of facts from a broad range of available information to advise the Administrator during the deliberative process described above. The selection of those facts was an integral part of the deliberations, and the factual information contained therein is inextricably intertwined with the deliberative discussion surrounding preparing Administrator Wheeler for the scheduled interview with the Washington Examiner.

| ED_004712_00017961 | Admin Wheeler Call w Lisa Murkowski 7-12-18.docx | Ex. 5 - Deliberative Process (DP) |
|---|---|---|

The withheld document is an internal memorandum for Administrator Wheeler. The two-page memorandum's subject line ("re line'") reads, "Call with Senator Lisa Murkowski (R-AK)." The memorandum is from Christian Palich to Administrator Wheeler, and carbon copies (Cc) Troy Lyons. The memorandum is dated July 12, 2018. Christian Palich, a former senior adviser, provided this document to the Administrator to review in order to prepare him for a telephone call with Senator Murkowski. The briefing document is organized into three sections: (1) "Purpose," (2) "Biography," and (3) "Topics for Discussion." The "Topics for Discussion" section is withheld pursuant to Exemption 5, deliberative process privilege. The withheld information is pre-decisional because it was generated to brief Administrator Wheeler on the scheduled telephone call, to prepare him for potential topics of discussion, and to provide him with talking points on those potential points of discussion.

The withheld information is deliberative because it reflects the personal opinions and thoughts of staff working on and preparing Administrator Wheeler for his scheduled call with Senator Murkowski. The information does not reflect an official Agency decision or policy, instead it reflects the process by which EPA staff crafted a strategy for how Administrator Wheeler could respond to inquiries or potential topics of discussion raised during the call by the Senator. The memorandum was provided to the Administrator so that he could review the information before making final decisions as to how he would respond to inquiries or potential topics of discussion with Senator Murkowski.

The foreseeable harm associated with release of the withheld information is that disclosure would have a chilling effect on the Agency's ability to foster the open and forthright exchange of ideas and advice among its staff necessary to adequately prepare senior leaders for meetings or calls with members of Congress. Communicating with members of Congress involves thoughtful decision-

making that the deliberative material in this memorandum reveals. Release would therefore interfere with Agency decision-making processes related to preparing EPA's senior leaders for participation in meetings with Congressional officials. Lastly, release would cause public confusion by disclosing the opinions of staff related to identifying potential topics of discussion and recommended talking points that staff provided to the Administrator, which may differ from what was ultimately later communicated by Administrator Wheeler.

EPA released in full the "Purpose" and "Biography" sections of the briefing document, while withholding the "Topics for Discussion" section of the document. The Agency has released all reasonably segregable information. The withheld information does not contain reasonably segregable factual information. To the extent any of the withheld information contains facts, they are inextricably intertwined with the deliberative analysis regarding potential topics that could be raised during the call and suggestions for how Administrator Wheeler could respond to those topics. In addition, any factual information contained in the document reflects the author's selection of facts from a broad range of available information to advise the Administrator during the deliberative process described above. The selection of those facts was an integral part of the deliberations, and the factual information contained therein is inextricably intertwined with the deliberative discussion concerning topics that could be raised during the Administrator's telephone call with Senator Murkowski and suggestions related to how the Administrator may discuss those topics.

| | | |
|---|---|---|
| | | |
| ED_004712_00018082 and ED_004712_00018071 | Proposed Hurricane Florence National Management Objectives 091718.docx and Management Objective Progress Report - 10-1 PCC Call.docx | Ex. 5 - Deliberative Process (DP) |

ED_004712_00018082 is a document that is composed of draft management objectives for the Agency's response to Hurricane Florence as of September 17, 2018. EPA released the title and some introductory language, but the Agency withheld the draft management objectives pursuant to Exemption 5, deliberative process privilege. The final version of the management objectives is produced in document ED_004712_00018071.

ED_004712_00018071 is a document that is titled "Summary of Activities Under the Management Objectives for Hurricane Florence as of October 1, 2018." The document is composed of the Agency's final management objectives for its Hurricane Florence response, which are produced in full, followed by draft language concerning the status of the Agency's response with respect to the management objectives. The draft language contains strikethroughs and highlights. The draft language is withheld pursuant to Exemption 5, deliberative process privilege.

The draft management objectives contained in ED_004712_00018082 were pre-decisional to the final management objectives that are contained in ED_004712_00018071 and produced in full. The draft language concerning the status of the Agency's response with respect to particular management objectives that is contained in ED_004712_00018071 is pre-decisional to the

Agency's final understanding of the status of the Agency's response and the decision on whether that management objective is being met or needs to be addressed in some way.

The draft management objectives contained in ED_004712_00018082 are deliberative because they represent the response team and management's thoughts and recommendations on how best to evaluate the Agency's hurricane response going forward. These thoughts and recommendations, contained in the draft language, were refined and ultimately finalized in the language that is produced in document ED_004712_00018071. The draft language concerning the status of the Agency's response with respect to particular management objectives that is contained in ED_004712_00018071 is deliberative because it contains members of the response team's assessments of each of the nine managment objectives prior to a finalized team understanding of the status of the response at that time. The notations in the draft language including strikethroughs and highlights represent back and forth concerning the status of the response with respect to the various management objectives. The team deliberation concerning the status of the response is an important part of the Agency's decision on whether particular managment objectives are met and how to act if not.

The foreseeable harm from disclosure of the draft management objectives contained in ED_004712_00018082 is that disclosure would chill the response team and EPA management's ability to candidly develop the high-level goals concerning the Agency's hurricane response efforts. Where team members are not free to openly provide opinions and recommendations, development of the most robust management objectives will be diminished. Additionally, these draft management objectives differ from what was finalized and produced in ED_004712_00018071. Disclosure of the draft objectives will result in public confusion concerning management of the Agency's response efforts. The foreseeable harm from disclosure of the draft language concerning the status of the Agency's response with respect to particular management objectives that is contained in ED_004712_00018071 is that disclosure will similarly chill the response team's ability to compile the current status of an emergency response effort with the best information available at the time. When drafting a status update, staff are relying on fact gathering and teamwork to best understand the situation at a given time. This requires consulting with colleagues and correcting one another where there are misunderstandings, gaps in information, or new developments in a quickly changing response. If draft status update language is routinely produced and the response team's non-final recommendations or proposals are scrutinized, this will chill the candid discussion that is required for the team to effectively deliberate to understand how the Agency's response is or is not meeting management objectives, and if not, how best to change course.

In both documents, the only withheld material is draft language. While ED_004712_00018071 contains some factual information, those facts are inextricably intertwined with the deliberative discussion of whether or not management objectives are being met. In addition, any factual information contained in the document reflects the author's selection of facts from a broad range of available information for the purpose of collaborating with the response team to identify what is and is not relevant or current. No further information can be segregated and produced from either document.

25

| ED_004712_00018000 | Final Draft ST Yutu Management Objectives 11.07.18.docx | Ex. 5 - Deliberative Process (DP) |
|---|---|---|

This document contains draft management objectives for the Agency's response to Super Typhoon Yutu. The title and some introductory language are produced, but the draft management objectives themselves are withheld pursuant to Exemption 5, deliberative process privilege. The draft management objectives are pre-decisional to the finalized management objectives.

The draft management objectives are deliberative because they represent the response team and management's thoughts and recommendations on how best to evaluate the Agency's emergency response going forward. At the time, staff was weighing what goals management should establish for the Agency in responding to the typhoon. The draft language reflects the state of those deliberations at that moment in time.

The foreseeable harm from disclosure of the draft management objectives contained in is that disclosure would chill the response team and EPA management's ability to candidly develop high-level goals concerning the Agency's typhoon response efforts. Where team members are not free to openly provide opinions and recommendations, development of the most robust management objectives will be diminished. Additionally, these draft management objectives differ from the final management objectives, therefore disclosure of the draft objectives will result in public confusion concerning management of the Agency's response efforts.

The only withheld information is the draft management objectives. These draft management objectives do not contain factual material or segregable information.

| ED_004712_00018087 | Andrew Wheeler Briefing July 5 2018 .pptx | Ex. 5 - Deliberative Process (DP) |
|---|---|---|

This document is a PowerPoint briefing for Administrator Andrew Wheeler concerning the Enterprise Lab Priority Kaizen Project. This briefing was delivered by the Office of Research and Development (ORD) staff to Administrator Wheeler. The last six slides of the fourteen-slide presentation contain options for restructuring EPA's laboratories and program recommendations for implementing a new framework for laboratory management. EPA withheld information within the last six slides pursuant to Exemption 5, deliberative process privilege. The withheld information is pre-decisional because it was generated to brief Administrator Wheeler so he could consider whether and how to re-structure management of EPA's laboratory system.

The withheld information is deliberative because it is composed of options and recommendations developed by ORD staff for Administrator Wheeler's consideration. The information does not reflect an official Agency decision or policy. The withheld material was provided for the purpose of reaching a decision as to how to improve management of EPA laboratories.

The foreseeable harm associated with release of the withheld information is that disclosure would have a chilling effect on the Agency's ability to effectively and openly brief decision-makers with options and recommendations for important decisions, in this case, restructuring of laboratory management. Staff must be able to frankly and candidly develop recommendations and explain their

proposals so that Agency leadership, including Administrator Wheeler, have the necessary information to make fully informed decisions.  Release would interfere with Agency decision-making processes related to briefing EPA's senior leaders on staff proposals related to improving Agency processes and systems. Lastly, disclosure of non-final options and recommendations risks creating public confusion concerning the Agency's current and ongoing efforts to improve management of its labs.

The Agency has released the first eight slides of the presentation in full and is only withholding the content of the last six slides. The withheld information does not contain reasonably segregable factual information. To the extent any of the withheld information contains facts, they are inextricably intertwined with the deliberative discussion of how to improve management of the Agency's laboratories. In addition, any factual information contained in the document reflects the author's selection of facts from a broad range of available information to advise the Administrator. The selection of those facts was an integral part of the deliberations, and the factual information contained therein is inextricably intertwined with the deliberative discussion surrounding improving management of EPA's laboratories.

| | | |
|---|---|---|
| ED_004712_00018089 | ORD - National Program Manager Recommendation - June 25.docx | Ex. 5 - Deliberative Process (DP) |

This document is an unsigned decision memorandum from Henry Darwin, Chief Operating Officer, to former Administrator Scott Pruitt. The memorandum was developed by the EPA workgroup tasked with improving management of EPA's laboratory enterprise. The purpose of the memorandum was to recommend the establishment of a new operating framework for management of EPA's laboratories. There is a portion of the memorandum that contains the fields, "approved" or "disapproved," and both fields are unsigned. The memorandum is withheld in its entirety pursuant to Exemption 5, deliberative process privilege. The withheld information is pre-decisional because it was generated to brief Administrator Wheeler so he could consider staff's recommendation related to a new operating framework for management of EPA's laboratory system.

The withheld information is deliberative because it is composed of options and recommendations developed by the Agency's workgroup for the Administrator's consideration. The information does not reflect an official Agency decision or policy. The withheld material was provided to Administrator Wheeler for the purpose of reaching a decision as to how to improve management of EPA laboratories.

The foreseeable harm associated with release of the withheld information is that disclosure would have a chilling effect on the Agency's ability to effectively and openly brief decision-makers with options and recommendations for important decisions, in this case, restructuring of laboratory management. Staff must be able to frankly and candidly develop recommendations and explain their proposals so that Agency leadership, including Administrator Wheeler, have the necessary information to make fully informed decisions.  Release would interfere with Agency decision-making processes related to briefing EPA's senior leaders on staff proposals related to improving Agency processes and systems. Lastly, disclosure of non-final options and recommendations risks

creating public confusion concerning the Agency's current and ongoing efforts to improve management of its labs.

This memo does not contain reasonably segregable non-exempt information. To the extent any of the withheld information contains facts, they are inextricably intertwined with the deliberative discussion of how to improve management of the Agency's laboratories. In addition, any factual information contained in the document reflects the author's selection of facts from a broad range of available information to advise the Administrator. The selection of those facts was an integral part of the deliberations, and the factual information contained therein is inextricably intertwined with the deliberative discussion surrounding improving management of EPA's laboratories.

### PART III: "ORD Response to OW Phase 2 request DRAFT 03-07-17."

This is a four-page draft internal document with the file name, "ORD response to OW Phase 2 request DRAFT 03-07-17." The document contains a header that reads, "DRAFT 3/7/17." There are footers on every page of the document that read, "Draft – For Internal Deliberations Only." The draft document was prepared by staff scientists in the Office of Research and Development (ORD) and was sent to staff in the Office of Water (OW). The document was drafted by ORD as a proposed response to OW's request that ORD provide support to OW on certain aspects of Lead and Copper Rule analysis. This draft document was never finalized. This draft document is withheld in its entirety pursuant to Exemption 5, deliberative process privilege.

The withheld information is deliberative because it is composed of draft responses to certain OW requests, suggestions for actions and estimated timelines developed by ORD staff scientists. The information does not reflect an official Agency decision or policy, rather, it reflects deliberations between and among staff in the offices of Water and Research and Development. This document was never finalized by ORD. The withheld material was intended to provide management with an analysis of proposed responses to OW and suggestions for support that ORD could provide as part of the Lead and Copper Rule analysis.

The foreseeable harm associated with release of the withheld information is that disclosure would have a chilling effect on Agency staff's ability to draft internal scientific documents that contain proposed responses and suggestions for possible actions, including estimated timelines. Staff must be able to openly propose responses to other program office requests and explain suggested actions that could be taken as part of a larger collaborative scientific analysis, so that decision-makers have access to necessary information. Therefore, release would interfere with Agency decision-making processes related to collaborative engagement across program offices. Lastly, disclosure of a never-finalized draft document risks creating public confusion concerning the Agency's decision on the Lead and Copper Rule.

This draft document does not contain reasonably segregable non-exempt information. To the extent any of the withheld information contains facts, they are inextricably intertwined with the deliberative discussion of how ORD could provide support to OW on certain aspects of Lead and Copper Rule analysis. In addition, any factual information contained in the document reflects the author's selection of facts from a broad range of available information to draft proposed responses, including detailed scientific analysis, to advise ORD management. The selection of those facts was an integral part of the deliberations, and the factual information contained therein is inextricably intertwined with the deliberative discussion surrounding suggestions for support that ORD could provide as part of the Lead and Copper Rule analysis.