# EXHIBIT A

**ENVIRONMENTAL ADVOCATES**
ATTORNEYS AT LAW

5135 ANZA STREET
SAN FRANCISCO, CA 94121
(415) 533-3375
Fax: (415) 358-5695
E-mails: csproul@enviroadvocates.com, heather@enviroadvocates.com,
mcoyne@enviroadvocates.com

August 30, 2018

*Submitted via FOIA Online (https://foiaonline.regulations.gov)*

National Freedom of Information Officer
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW (2822T)
Washington, DC 20460

**Re: Request Under Freedom of Information Act (Fee Waiver/Limitation &
Expedited Processing Requested)**

Dear Freedom of Information Officer:

Ecological Rights Foundation ("EcoRights"), via their public interest counsel at
Environmental Advocates, requests all documents constituting, memorializing,
explaining or commenting upon the following:

(1) All documents created by the U.S. Environmental Protection Agency or any
employee or official of the U.S. Environmental Protection Agency (collectively
"EPA") constituting or memorializing any instructions, directives, requests,
memorandums, orders, or communications issued since July 5, 2018 by former
Administrator Scott Pruitt or his aides, Acting Administrator Andrew Wheeler or
his aides, any member of the Office of the Administrator, or any member of the
Office of Public Affairs related to changes in policy, practice, or procedure at the
Agency following the resignation of former Administrator Scott Pruitt and/or the
transition of Andrew Wheeler to Acting Administrator concerning any of the
following:

public posting or release of the Acting Administrator's schedule, communications
from EPA to the press or in response to public inquiries, what constitutes
acceptable travel by the Acting Administrator or any EPA staff who qualify as
Senior Executive Service on official EPA business and what costs of such travel
are reimbursable by EPA, provision of security to the EPA Acting Administrator,
use of sirens in vehicles used to transport the EPA Acting Administrator,

1

procurement of housing or temporary lodging by the Acting Administrator from persons or by relatives of persons who have business pending before EPA, review of EPA employee complaints concerning reassignments to new positions or new responsibilities or demotions that such reassignments or demotions were retaliatory for disagreements with actions or decisions made by the EPA Administrator or others within the Office of Administrator, or review of complaints that EPA staff had been given improper promotions or raises by the EPA Administrator or others within the Office of Administrator ("Transition Memos").

(2) All documents created by EPA since July 5, 2018 constituting or memorializing any directive, instructions, request, memorandum, plans, intentions, or communications related to the use or disposal of the soundproof phone booth installed in the office of former Administrator Pruitt.

(3) All documents created by the EPA since July 5, 2018 constituting, memorializing, or describing any directive, request, memorandum, plans, intentions, or communications by anyone in the Office of Administrator for reassigning EPA staff who had been previously reassigned to new positions while working at EPA under former Administrator Pruitt. For instance, such request shall include documents related to EPA's reassignment of staff including Kevin Chmielewski, Reginald E. Allen, Eric Weese, John E. Reeder, and John C. Martin, who were reassigned under former Administrator Pruitt after questioning his practices. *See* Eric Lipton, Kenneth P. Vogel and Lisa Friedman, *E.P.A. Officials Sidelined After Questioning Scott Pruitt*, New York Times, (Apr. 5, 2018), *available at*: https://www.nytimes.com/2018/04/05/business/epa-officials-questioned-scott-pruitt.html.

(4) All documents created by the EPA since July 5, 2018 constituting, memorializing, or describing any directive, request, memorandum, plans, intentions, or communications by anyone in the Office of Administrator related to evaluating the ability of an employee to perform his or her duties, or demoting, firing, lowering their salary, or reassigning an employee, where that employee was hired, promoted, reassigned, or received a raise as a result from a request by former Administrator Pruitt. This request shall include any documents related to employees who received raises under provisions of the Safe Drinking Water Act, and employees that the former Administrator had a pre-existing personal relationship with before hiring, promoting, or advocating for his / her raise.

(5) All documents created by EPA since July 5, 2018 constituting, memorializing, describing, or commenting upon any plan, directive, instructions, policy, or practice to reverse or change course from any EPA practice during Administrator Pruitt's tenure of encouraging EPA employees to quit or retire. This request shall also include all documents related to any policy to continue or change course

2

Ecological Rights Foundation
Freedom of Information Act Request
August 30, 2018

from former Administrator Pruitt's intention not to fill vacant EPA staff positions in order to downsize the agency ("hiring freeze").

(6) All documents created by EPA constituting or memorializing Acting Administrator Andrew Wheeler's full calendar, meeting schedule, and notes from meetings from July 5, 2018 to the present. This request shall include all items on Acting Administrator Wheeler's calendar, including those that have not been published or that are not publicly available online. This request shall also include all memos, communications, e-mails, and other documents created by Acting Administrator Wheeler, his aides, any member of the Office of the Administrator, or any member of the Office of Public Affairs, related to any advice, policy, practice, or intentions to publish or to not publish any portions of Acting Administrator Wheeler's schedule online.

(7) All documents created by EPA since July 5, 2018 constituting, memorializing, describing, or commenting upon the EPA Inspector General's Office's investigations of former Administrator Pruitt, including documents related to whether the investigations are closed or continuing, any results from the investigations, and any disciplinary action planned or taken against former Administrator Pruitt. The investigations referred to in this paragraph are described in Attachment 3.

(8) All documents created by EPA since July 5, 2018 constituting or memorializing any instructions, directive, plan, policy, practice, or memorandum to EPA staff concerning how to review and/or respond to Freedom of Information Act ("FOIA") requests.

(9) All documents created by EPA since July 5, 2018 constituting or memorializing any instructions, directive, plan, policy, practice, or memorandum to EPA staff concerning procedures or protocols that EPA staff must follow prior to speaking with the press, including any guidance on what EPA staff may or may not say to the press, and which EPA staff are authorized to speak with the press, issued by the Office of the Administrator or the Office of Public Affairs.

(10)    Documents showing the steps taken by EPA to search for documents responsive to EcoRights' FOIA request dated February 1, 2017 (EPA-HQ-2017-003479), as described by the Fourth Declaration of Elizabeth White dated July 26, 2018 (Attachment 4). In particular, this request shall include the following:

   a.  In paragraph 6 of the declaration, Ms. White indicates that Julia Valentine identified five pages of records that she believed to be responsive to EcoRights' FOIA request, but that EPA staff later determined that these documents were not responsive to the request. EcoRights requests copies of those 5 pages of records.

3

Ecological Rights Foundation
Freedom of Information Act Request
August 30, 2018

b. In paragraph 7, Ms. White indicates that its centralized search of electronically stored information of Catherine McCabe and Robert Kavlock resulted in 19 pages of potentially responsive records, that EPA staff later determined were not responsive to the FOIA request. EcoRights requests copies of those 19 records.

c. In paragraphs 4-8, Ms. White indicates that employees conducted electronic searches for and manual reviews of responsive documents. EcoRights requests all documents constituting, memorializing, or describing the instructions that were given to employees to conduct these searches and/or reviews of documents, and which employees reviewed the records.

d. In Exhibit 2 of the declaration, Ms. White states that "The potentially responsive records will be reviewed by the Office of General Counsel, the Office of the Executive Secretariat, and the Office of Public Affairs prior to any release." Please provide documents explaining any review that the Office of the Executive Secretariat and the Office of Public Affairs generally undertakes prior to releasing FOIA records, including any memo or communications describing the review created since January 20, 2017, and any documents (including emails) explaining any review by the Office of the Executive Secretariat and/or the Office of Public Affairs that was undertaken prior to release of documents responsive to EcoRights' February 1, 2017 FOIA request.

We trust that the government will reach a determination on this request within FOIA's twenty working day deadline and will limit any possible withholding to those documents that the government can meet its burden to show are truly exempt from disclosure and the release of which would cause foreseeable harm.

For purposes of this request "documents" means "all written, typewritten, drawn or printed material or record of any type or description and all information kept or recorded on magnetic or electronic media, including, without limitation, correspondence, letters, agreements, contracts, memoranda of agreement or understanding, electronic mail (including both messages sent and received from government personnel), telegrams, inter- and intra-office communications, forms, reports, studies, working papers, handwritten or other notes, phone records, logs, diaries, minutes, spreadsheets, computation sheets, data sheets, transcripts, drawings, sketches, plans, leases, invoices, index cards, checks, check registers, maps, charts, graphs, bulletins, circulars, pamphlets, notices, summaries, books, photographs, sound recordings, videotapes, rules, photocopied or computer-related materials, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations of them, and all forms of written or recorded matter to which [the government has] access or of which [the government has] any knowledge").

Ecological Rights Foundation
Freedom of Information Act Request
August 30, 2018

FOIA requires that an agency disclose documents to any person except where the document falls under a specifically enumerated exemption. 5 U.S.C. § 552 (2002). "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act"; "[c]onsistent with the Act's goal of broad disclosure, these exemptions have been consistently given a narrow compass." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7-8 (U.S. 2001) (internal citations omitted). The courts have emphasized the narrow scope of these exemptions and "the strong policy of the FOIA that the public is entitled to know what its government is doing and why." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980). Further, under the recent amendments, 5 U.S.C § 552(a)(8)(A) now provides that (1) an agency shall withhold information only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b) or disclosure is prohibited by law; (2) the agency shall consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible; and (3) the agency shall take reasonable steps necessary to segregate and release nonexempt information.

Thus, the government has a duty in preparing responses to EcoRights' FOIA request not to withhold documents unless foreseeable harm exists, to consider partial disclosure, and to take reasonable steps to segregate nonexempt information. Exemptions are read narrowly and the government bears the burden of proving exemptions apply. 5 U.S.C. § 552(a)(4)(b); *see Milner v. Dep't of the Navy*, 562 U.S. 562, 563 (U.S. 2011). Agencies "should not withhold information simply because [they] may do so legally. . . For every request, for every record reviewed, agencies should be asking 'Can this be released?' rather than asking 'How can this be withheld?'" *See also Mobil Oil Corp. v. U.S. E.P.A.*, 879 F.2d 698, 700 (9th Cir. 1989) ("The exemptions are permissive, and an agency may voluntarily release information that it would be permitted to withhold under the FOIA exemptions.")

We request that the government provide electronic copies of its response to this request – as well as any responsive documents that may be transmitted via e-mail – to me at the following e-mail addresses:

Christopher Sproul: csproul@enviroadvocates.com
Heather Kryczka: heather@enviroadvocates.com
Molly Coyne: mcoyne@enviroadvocates.com

Please send any documents that must be sent via regular mail to the following address:

Christopher Sproul
Environmental Advocates
5135 Anza St.
San Francisco, California, 94121

Ecological Rights Foundation
Freedom of Information Act Request
August 30, 2018

Your staff may contact me at (630) 544-9977 or heather@enviroadvocates.com to further discuss your response to this request. Thank you for your prompt attention to this matter.

Sincerely,

Heather Kryczka
Counsel for Ecological Rights Foundation

6

Ecological Rights Foundation
Freedom of Information Act Request
August 30, 2018

# Attachment 1
# Fee Waiver Request

Ecological Rights Foundation
Freedom of Information Act Request
August 30, 2018

**Attachment to Freedom of Information Act (FOIA) Request Letter: Fee Waiver Request**

Pursuant to 40 C.F.R. section 2.120(d), the U.S. Environmental Protection Agency (EPA) applies a six factor test in determining whether to grant a fee waiver for FOIA requests. Ecological Rights Foundation ("EcoRights") addresses each of these six factors below. As demonstrated below, EcoRights should be granted a fee waiver.

1. *The subject matter of the requested records must specifically concern identifiable operations or activities of the government. A request for access to records for their informational content alone does not satisfy this factor.*

EcoRights' Response: EcoRights' FOIA request seeks several specific categories of documents relating to the policies and practices of the Environmental Protection Agency (EPA) since the resignation of former Administrator Scott Pruitt on July 5, 2018, particularly related to ethical issues that came to light during the former Administrator's tenure at the Agency, and documents that shed light on whether Mr. Pruitt's questionable practices and policies continue under Acting Administrator Andrew Wheeler. First, EcoRights seeks transition memos issued by EPA since July 5, 2018. Second, EcoRights seeks documents created since July 5, 2018 related to EPA's use of the $43,000 soundproof phone booth that former Administrator Pruitt had installed in his office. Third, the request includes documents related to EPA's approach to staffing under Acting Administrator Wheeler, including: a) documents related to reinstalling EPA employees in their former positions, who had been demoted by former Administrator Pruitt for questioning his ethics or practices; b) documents related to demoting, removing or re-evaluating employees who had been promoted by former Administrator Pruitt; c) documents related to EPA's policy to continue or change course from EPA's hiring freeze under former Administrator Pruitt. Fourth, the request includes documents since July 5, 2018 related to the EPA Inspector General Office's investigation of former Administrator Pruitt. Fifth, the request includes Acting Administrator Wheeler's full calendar, meeting schedule, and meeting notes since July 5, 2018. Sixth, the request includes policies related to any changes in FOIA request processing since July 5, 2018. Seventh, the request includes specific documents referenced by the Fourth Declaration of Elizabeth White provided to EcoRights (Attachment 4). For each of these categories of documents, EcoRights has identified the relevant time period as July 5, 2018 to present (except for the documents referenced by the White declaration). Accordingly, EcoRights' request meets this criterion.

2. *For the disclosure to be likely to contribute to an understanding of specific government operations or activities, the releasable material must be meaningfully informative in relation to the subject matter of the request.*

EcoRights' Response: The documents EcoRights request constitute the best available evidence of the EPA's changes in policies following the departure of former Administrator Pruitt, as well as documents describing the outcome of the ethics

8

Ecological Rights Foundation
Freedom of Information Act Request
August 30, 2018

investigations of former Administrator Pruitt. The documents EcoRights requests also constitute the best available evidence of how EPA plans to reallocate personnel and fill vacant positions at the Agency, thus shedding light on which programs will be staffed or not. These documents will reveal any areas of underenforcement and potential public health risks, and thus highlighting any gaps for citizens to intervene with citizen suits. The documents will also reveal whether Acting Administrator Wheeler is continuing the secretive policies of his predecessor or whether he is being transparent with the public: whether Acting Administrator's full calendar is publicly available, whether he is meeting with people with whom he has conflicts of interest, whether he is using the soundproof phone booth. The documents requested will also shed light on whether the agency has changed its policies and practices with regard to responding to FOIA requests. The documents requested that specifically relate to EcoRights' February 1, 2017 FOIA request will also shed light on the EPA's policies and practices in responding to FOIA requests under the supervision of former Administrator Pruitt, including what instructions were given to EPA employees when searching for responsive documents, and documents shedding light on how the Office of the Executive Secretariat and Office of Public Affairs evaluated potentially responsive documents.

3. *The disclosure must contribute to the understanding of the public at large, as opposed to the understanding of the requester or a narrow segment of interested persons. One's status as a representative of the news media alone is not enough*.

EcoRights' Response: Disclosure of the documents will promote the understanding of the general public in a significant way because EcoRights will analyze the information and make its conclusions known to our members, other environmental groups nationwide, and the public at large via press releases and by posting our analyses of the information on one or more internet web sites or citizen group email broadcast "systems," such as the Clean Water Action Network. There has been significant environmental group and media focus on former Administrator Pruitt's ethics scandals, and his implementation of policies that have intimidated EPA employees and hindered the EPA's ability to fulfill its statutory mandates. The documents requested are expected to shed light on whether Mr. Pruitt's actions will be punished and reversed, and the extent to which corruption continues under new leadership. The transition memos will show whether the EPA is continuing Mr. Pruitt's practices and policies under Acting Administrator Wheeler, or whether the agency is changing course. These documents are expected to show whether Acting Administrator Wheeler is continuing former Administrator Pruitt's practices of conducting secret meetings, doing favors for people and personnel with whom he has personal connections, and demoting EPA employees who speak out against the Agency's practices. The documents are also expected to reveal whether Acting Administrator Wheeler intends to fill the vacancies at the EPA, and thus whether EPA will have the personnel power to run vital public health and environmental programs. In addition, the specific documents requested by EcoRights related to EPA's search for documents responsive to its February 1, 2017 FOIA Request will reveal the Agency's approach to answering FOIA requests under former Administrator Pruitt. These documents, including the instructions given to EPA employees in response to the request, and the procedures of

9

Ecological Rights Foundation
Freedom of Information Act Request
August 30, 2018

the Office of Executive Secretariat and the Office of Public Affairs conducting reviews of potentially responsive documents will provide an example to the public as to whether EPA was conducting full searches for responsive documents, and whether it was censoring release of documents, under the former Administrator's regime. The public has a strong interest in finding out how the EPA has approached public transparency under the leadership of former Administrator Pruitt, and how its approach may or may not change under Acting Administrator Wheeler.

4. *The disclosure must contribute "significantly" to public understanding of government operations or activities*.

EcoRights' Response: Disclosure of the requested information will significantly contribute to public understanding of government operations. Specifically, the information will demonstrate whether EPA is continuing unethical and/or nontransparent practices that it engaged in under former Administrator Pruitt since his resignation on July 5, 2018.  This will further enhance public understanding of the policies and procedures under Acting Administrator Wheeler, including whether staff are being placed in positions based on merit, EPA's policies and practices related to responding to FOIA requests, and whether Mr. Wheeler is conducting secret meetings or phone calls. These documents will empower the public to assess the capacity of the EPA as an agency overall, and its ability to fulfill its obligations to abide by ethical standards, and to enforce and implement federal environmental laws.

In addition, disclosure of the requested information will enhance public understanding of whether or not the EPA intends to fully investigate and prosecute former Administrator Pruitt for his unethical actions. Bringing to light these activities will enhance public understanding of whether the agency is holding its leaders accountable for wrongdoing. This will enhance the ability of the public to hold the agency accountable for any improper actions.

Threats to our environment such as water and air pollution adversely affect millions of people throughout the United States, and adequate, efficient implementation and enforcement of environmental laws is critical for the public health of millions. EcoRights has a demonstrated ability to disseminate the problematic features of government activities to a wider public audience, by litigation as well as the other means. Factors indicating an ability to disseminate information to the public include publication on an organization's website and the ability to obtain media coverage. *Judicial Watch v. Rossotti*, No. 02-5154, 2003 WL 2003805 (D.C. Cir. May 2, 2003).

EcoRights' analyses will be disseminated via press releases as well as posted on EcoRights' web sites (http://www.ecorights.org) and likely the web sites of other environmental groups. EcoRights has a proven track record of obtaining press coverage of the environmental issues it publicizes. Generally, EcoRights obtains press coverage in the local and national media, including newspapers and radio stories. For example, EcoRights' recent filing of an ESA citizen suit concerning Stanford University's

10

Ecological Rights Foundation
Freedom of Information Act Request
August 30, 2018

operations in the San Francisquito Creek watershed was covered by several San Francisco Bay Area newspapers, KQED radio, and a local television station. EcoRights regularly issues press releases and includes them on its website. EcoRights has demonstrated its ability to disseminate information to the public, as evidenced by its upkeep of its website and social media, its mention on other environmental groups' websites, and its ability to attract press coverage for its various lawsuits.

5. *The extent to which disclosure will serve the requester's commercial interest, if any*.

EcoRights' Response: EcoRights is a community-based educational nonprofit corporation committed to the protection, preservation, and restoration of the environment and endangered and threatened species. For over 15 years, EcoRights has been devoted to furthering the rights of all people to a clean, healthful, and biologically diverse environment. To further EcoRights' environmental advocacy goals, EcoRights actively seeks federal and state agency implementation of state and federal water quality and wildlife laws, and as necessary, directly initiates enforcement actions on behalf of itself and its members. Accordingly, EcoRights has no commercial interest in the information requested. EcoRights seeks the information solely to determine the effect of the current EPA's policies related to inducing a reduction in staff size, adapting to a reduction in staff size, and the relationship to a downsized staff to EPA's ability to implement its statutory duties. This information will therefore aid in EcoRights' efforts to advocate that the appropriate state, federal, or private entities take needed actions to protect our environment and natural resources.

EcoRights has no financial interest in the information sought or any enforcement actions that may result. EcoRights' goal in urging enforcement of environmental laws is not private financial gain, but rather vindication of the larger public interest in ensuring that the EPA is operating in such a way that it can achieve compliance with environmental laws designed to protect our environment, wildlife, health, and natural resources.

6. *The extent to which the identified public interest in the disclosure outweighs the requester's commercial interest*.

EcoRights' Response: EcoRights has no commercial interest in the requested information, as discussed above. Accordingly, the identified public interest in the disclosure of the requested information discussed above necessarily outweighs any commercial interest in this request. For the above reasons, EcoRights respectfully requests a fee waiver pursuant to 5 U.S.C. section 552(a)(4)(A)(iii) and 15 C.F.R. § 4.11(k) for all copying costs, mailing costs, and other costs related to locating and tendering the documents.

We also base our request for a fee waiver on the following additional authorities.

The law **requires** that records be furnished without charge or at a reduced charge when requesters are able to demonstrate that (1) disclosure of the requested information

11

Ecological Rights Foundation
Freedom of Information Act Request
August 30, 2018

is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government, and (2) is not primarily in the commercial interest of the requester. 5 U.S.C. § 552(4)(a)(iii); 40 C.F.R. 2.107(l)(1); *Judicial Watch, Inc. v. Rossotti*, No. 02-5154, 2003 WL 2003805 (D.C. Cir. May 2, 2003) [emphasis added].

(a) **Rule of liberal construction**. FOIA's fee waiver provision is to be liberally construed in favor of noncommercial requesters. *Judicial Watch, Inc. v. Rossotti*, No. 02-5154, 2003 WL 2003805 (D.C. Cir. May 2, 2003); *McClellen Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987). The major purpose of the 1986 amendments was to remove roadblocks and technicalities that agencies have used to deny fee waivers. *McClellen*, 835 F.2d at 1284. A request for fee waiver need only be reasonably specific and nonconclusory. *Judicial Watch, Inc. v. Rossotti*, No. 02-5154, 2003 WL 2003805 (D.C. Cir. May 2, 2003).

Requesters make a prima facie case for a fee waiver when they specify why they want the administrative record, what they intend to do with the information, and to whom they will distribute the information. *Friends of the Coast Fork v. U.S. Dept. of Interior*, 110 F.3d 53, 55 (9th Cir. 1997). The burden then shifts to the agency to establish that the denial is warranted. *Id*. In denying a fee waiver request, the agency may not "hang [its] hat on a single factor" but must assess all of the pertinent factors. *Id*. Moreover, a reviewing court owes no particular deference to an agency's restrictive interpretation of FOIA. *See Tax Analysts v. Commissioner*, 117 F.3d 607, 613 (D.C. Cir. 1997).

(b) **Public interest purpose**. EcoRights falls squarely within the category of "public interest" requesters intended to benefit from the 1986 amendments of FOIA, which expanded FOIA fee waiver provisions. This amendment was intended precisely to facilitate informational access by citizen watchdog groups that will monitor and challenge government activities. *See Better Govt. Ass'n v. Department of State*, 780 F.2d 86, 88-89 (D.C. Cir. 1986). Indeed, this provision should be construed as a presumption that such requesters are entitled to a fee waiver, especially if the requesters will publish the information or otherwise make it available to the general public. *See Ettlinger v. Fed. Bureau of Investigation*, 596 F.Supp. 867, 873 (D. Mass. 1984).

The legislative history of the fee waiver provision indicates that "A requester is likely to contribute significantly to public understanding if the information is new; supports public oversight of agency operations; or otherwise confirms or clarifies data on past or present operations of the government." 132 Cong. Rec. H94646 (Reps. English and Kindness). Courts have cited this legislative intent as a standard for determining that a requester qualifies for a fee waiver. *See McClellen*, 835 F.2d at 1284-86.

For the above reasons, EcoRights respectfully requests pursuant to 5 U.S.C. section 552(a)(4)(A)(iii) and 40 C.F.R. section 2.120(d) a fee waiver for all copying costs, mailing costs, and other costs related to locating and tendering the documents.

12

Ecological Rights Foundation
Freedom of Information Act Request
August 30, 2018

# Attachment 2
# Request for Expedited Processing

13

Ecological Rights Foundation
Freedom of Information Act Request
August 30, 2018

**Attachment to FOIA Request Letter: Expedited Processing Request**

Ecological Rights Foundation ("EcoRights") submits this request for expedited processing pursuant to 40 C.F.R. § 2.104(e)(1)(ii), which states that a FOIA request may be given expedited treatment whenever EPA determines that such a request involves a compelling need, including "[a]n urgency to inform the public about an actual or alleged Federal government activity, if the information is requested by a person primarily engaged in disseminating information to the public." The following letter demonstrates how Ecological Rights Foundation's request fulfills the requirements of 40 C.F.R. § 2.104(e)(1)(ii).

1) *EcoRights Is Focused on Promoting Public Accountability & Accessibility to Government Records.*

EPA's regulations require that requestors seeking expedited processing who are not a full-time member of the news media submit an explanation establishing that they are "a person whose primary professional activity or occupation is information dissemination." 40 C.F.R. § 2.104(e)(3). Ecological Rights Foundation is a community-based educational nonprofit corporation committed to the protection, preservation, and restoration of the environment and endangered and threatened species. For over 15 years, EcoRights has been devoted to furthering the rights of all people to a clean, healthful, and biologically diverse environment. One of EcoRights' missions is furthering transparency and accessibility in government and public institutions. To effectuate that mission, EcoRights frequently uses the Freedom of Information Act and comparable state laws, such as California's Public Records Act and Florida's Sunshine Law to gain access to public records, to ensure that citizens continue to have access to critical information.

After obtaining public records, EcoRights disseminates press releases, shares information with other environmental and public accountability groups, and publishes public records obtained on its website (http://www.ecorights.org). EcoRights has a proven track record of obtaining press coverage of the environmental issues it publicizes. Generally, EcoRights obtains press coverage in the local and national media, including newspapers and radio stories. For example, EcoRights' recent filing of an ESA citizen suit concerning Stanford University's operations in the San Francisquito Creek watershed was covered by several San Francisco Bay Area newspapers, KQED radio, and a local television station.

2) *The Documents Requested Are Critical to Inform the Public About the Acting Administrator's Activities.*

EPA's regulations also require that requestors seeking expedited processing submit an explanation establishing "a particular urgency to inform the public about the government activity involved in the request, beyond the public's right to know about government activity generally." 40 C.F.R. § 2.104(e)(3). The documents requested by Ecological Rights Foundation will inform the public of Acting Administrator Wheeler's

14

Ecological Rights Foundation
Freedom of Information Act Request
August 30, 2018

approach to running the agency, and whether he is continuing the problematic policies that former Administrator Pruitt engaged in, such as thwarting public transparency through added layers of political review in response to FOIA requests, demoting employees who question ethical practices of the agency, utilizing a soundproof phone booth for calls, making exorbitant expenditures on travel and a security detail, understaffing the agency, and/or conducting meetings in secret.

Release of this information is urgently needed given that the Acting Administrator is currently running the Agency, and that he may be nominated as the Administrator and face confirmation hearings in the upcoming months. The public needs to know the Acting Administrator's policies immediately so that they know what kind of advocacy is necessary hold the agency accountable, ensure that it is fulfilling its statutory mandates in the interim, and to advocate with their respective Senators regarding his potential nomination and confirmation votes.

In response to a FOIA request that EcoRights submitted in April 2018 (EPA-HQ-2018-006474) EPA wrote that due its backlog of requests, its estimate for providing a response to EcoRights was October 4, 2019—well over a year past the 20 working day statutory deadline. If EPA's response time is over a year from the time this request is submitted, the agency will severely curtail the ability of EcoRights and the public to hold the agency accountable for the actions of the Acting Administrator. By that time, the Acting Administrator could be already confirmed as the Administrator. EcoRights and the public need to secure these documents immediately in order to gain a window into the policies and procedures being put in place under Acting Administrator Wheeler.

15

Ecological Rights Foundation
Freedom of Information Act Request
August 30, 2018

**Attachment 3**

# The New York Times

# The Investigations That Led to Scott Pruitt's Resignation

**By Lisa Friedman**

April 18, 2018

*Want the latest climate and environment news in your inbox? Sign up here to receive **Climate Fwd:, our email newsletter.***

UPDATED JULY 13, 2018

At least a half-dozen investigations into Scott Pruitt's conduct will proceed against the former Environmental Protection Agency administrator, despite his July 5 resignation.

The E.P.A. inspector general's office announced in early July that five of its inquiries will continue. They are examining Mr. Pruitt's frequent travel to Oklahoma and first-class flights; the management of and payment for his 24-hour security detail; a series of hiring and pay-raise decisions affecting political appointees; and the preservation of Mr. Pruitt's emails and text messages.

An agency spokeswoman also said investigators would compile a "factual record" of a meeting that Mr. Pruitt held with the National Mining Association in April 2017.

In addition, the House Oversight and Government Reform Committee is moving forward with a broad investigation into Mr. Pruitt's spending, management and use of federal resources.

Here is a guide to the investigations Mr. Pruitt has faced, including those that are continuing.



## The $50-a-Night Condo

2 investigations

**You have 3 free articles remaining.**
**Subscribe to The Times**

The E.P.A. has acknowledged that Mr. Pruitt paid $50 per night last year to live in a Washington condo co-owned by the wife of an energy lobbyist who has had business in front of the agency.

The E.P.A.'s inspector general, which is an independent investigating unit within the agency, and the House Oversight Committee are looking into those living arrangements.

Initially, the E.P.A. produced a memo from the agency's ethics office saying that the arrangement did not violate federal gift rules because the rate was within "reasonable market value." However, the ethics office later walked back that assessment with a new memo saying that its staff did not have all the facts before issuing its ethics clearance.

The E.P.A. has said that Mr. Pruitt's decisions were not based on his connection to the lobbyist, J. Steven Hart, who retired in April as chairman of the firm Williams & Jensen. The E.P.A. has also said that Mr. Hart did not lobby the agency while Mr. Pruitt was living in the condo.

But federal lobbying disclosures show that Mr. Hart did seek assistance from the agency in 2017, during the period when Mr. Pruitt was renting from Mr. Hart's wife. Mr. Hart had approached the E.P.A. on behalf of the philanthropic arm of Smithfield Foods regarding a program to restore the Chesapeake Bay.



## The $43,000 Phone Booth

2 investigations

The Government Accountability Office, the congressional watchdog, has already ruled that Mr. Pruitt's purchase of a $43,000 secure phone booth broke the law because the E.P.A. is required to inform Congress of spending that exceeds a $5,000 limit for office refurnishing, but in this case did not.

Auditors also found that the agency violated the Antideficiency Act, which is designed to prevent unbudgeted spending.

But the inquiries aren't over. Congressional Democrats have charged that Mr. Pruitt was never authorized to have the phone booth in the first place. They also noted the E.P.A. already has two other areas, known as Sensitive Compartmented Information Facilities, for receiving classified

Case 1:19-cv-00980-BAH Document 19-6 Filed 08/17/20 Page 20 of 64

information. The White House Office of Management and Budget said it was also looking into the phone booth expense.

Mr. Pruitt, testifying to a Senate committee in May, said there had not been a legal process at the agency to inform Congress of the office spending, and that he had since instituted one.



## Spending on Security

4 investigations

Mr. Pruitt's 24-hour security detail of at least 20 people was more than three times as large as ones for previous E.P.A. administrators. Agency officials have confirmed that the E.P.A. spent about $3.5 million in taxpayer money on salary, overtime and travel expenses for the security team during Mr. Pruitt's first year in office. That is nearly double what his predecessors spent each year on average.

Three inspector general investigations have been launched into Mr. Pruitt's security expenses. In addition, there is a House Oversight Committee investigation.

The most recent allegations being taken up by investigators are whether Mr. Pruitt improperly used his security detail for personal travel to Disneyland and to a Rose Bowl game, as well as other destinations. Senator Sheldon Whitehouse, a Rhode Island Democrat, told the E.P.A. inspector general that he had been made aware of the trips "after obtaining six weeks of schedules and other documents" that detailed the travel.

Among other things, investigators are examining the role that Pasquale Perrotta, who headed Mr. Pruitt's security until May, played in agency spending. Mr. Perrotta, who is widely known as Nino, has not responded to requests for comment. Investigators are also looking into E.P.A. purchases of thousands of dollars in bulletproof vests and weapons.



## Travel Expenses

2 investigations

The E.P.A.'s inspector general is looking into Mr. Pruitt's frequent travel home to Oklahoma last year at taxpayer expense; his use of private, first-class and military flights; and trips he took to Italy and Morocco.

Mr. Pruitt regularly flew first class at taxpayer expense in his first year in office. Records obtained by the Environmental Integrity Project and reviewed by The New York Times showed that two weeks of travel in June 2017 for the administrator and his aides cost taxpayers more than $120,000.

Mr. Pruitt also had charter flights approved after they were already taken, public records show. One 40-minute charter flight out of Denver to tour the Gold King Mine near Silverton, Colo., cost $5,719, the records show.

Mr. Pruitt told Congress this year that he had started flying coach.

Lawmakers have argued that the Morocco trip, during which Mr. Pruitt promoted natural gas exports, was inappropriate since the E.P.A. plays no formal role in overseeing gas exports. The trip cost about $40,000, according to agency records, with the flights alone costing $17,000.



## Pay Raises and Personnel Matters

3 investigations

The E.P.A. inspector general is investigating the use of a provision of a clean drinking water law to hire ex-lobbyists and give raises to political aides.

Two aides who previously worked for Mr. Pruitt in Oklahoma, Millan Hupp and Sarah Greenwalt, received substantial raises that bypassed the usual White House procedures. They were reappointed with higher salaries under a provision of the Safe Drinking Water Act after the White House did not approve the raises. Mr. Pruitt told Congress he had been unaware of the raises and blocked them after learning about them.

Two Democratic senators have asked the G.A.O. to investigate the raises as well, though that inquiry is pending the full outcome of the inspector general's report, aides said.

Ms. Hupp was Mr. Pruitt's scheduling director but essentially served as a personal assistant, helping him search for an apartment and obtain tickets to the Rose Bowl game. She also sought a used mattress for him from the Trump International Hotel. Federal ethics standards prohibit such personal assistance by a subordinate.

Ms. Hupp and Ms. Greenwalt, a senior counsel to the administrator, both resigned in June.

The Office of Special Counsel, an independent federal investigative and prosecutorial agency, is also examining Mr. Pruitt's personnel practices and allegations that he may have used his office for political purposes, according to people with knowledge of the investigation. Mr. Pruitt, who was known to harbor political ambitions beyond the E.P.A., met numerous times with Republican political donors, an unusual step for an E.P.A. administrator.

**???@epa.gov**

## Undisclosed Email Addresses

1 investigation

When he took the helm of the E.P.A., it was understood that Mr. Pruitt had two official email accounts: pruitt.scott@epa.gov and adm14pruitt@epa.gov. However, two other email addresses later emerged: sooner7@epa.gov (the mascot of the University of Oklahoma's sports teams) and esp7@epa.gov (the initials of his full name, Edward Scott Pruitt).

In May, the E.P.A.'s inspector general said his office would review whether Mr. Pruitt circumvented public records laws by using several email addresses. One issue is whether all four email addresses were being properly searched for public records requests.

Mr. Wilcox, the E.P.A. spokesman, defended Mr. Pruitt's use of several addresses as "standard practice." He said all of Mr. Pruitt's emails were searched before responding to public records requests.

Both Lisa P. Jackson and Gina McCarthy, E.P.A. administrators who served under President Barack Obama, were also criticized for using more than one email address.



# Meetings With Industry

2 investigations

The E.P.A. inspector general has taken up an inquiry into a meeting Mr. Pruitt held with the National Mining Association.

Representative Frank Pallone Jr., the top Democrat on the House Energy and Commerce Committee, requested the investigation after a report that Mr. Pruitt had encouraged the coal mining industry group to urge Mr. Trump to withdraw from the Paris climate change agreement. Critics of the meeting said the discussion violated anti-lobbying laws for government officials.

Both the E.P.A. and the industry group have denied that Mr. Pruitt did anything improper.

Meanwhile, the G.A.O. is investigating Mr. Pallone's complaint about Mr. Pruitt appearing in a National Cattlemen's Beef Association video. In the video, produced by the lobbying organization last year, Mr. Pruitt described his opposition to an Obama-era clean water rule.

Mr. Pallone and others asked auditors to investigate whether the promotional video involved an inappropriate use of taxpayer dollars.

# Science Advisory Boards

1 investigation

Amid the questions surrounding Mr. Pruitt's travel and spending decisions, there is one investigation on an entirely different issue: His selection process for members of a science advisory committee.

Specifically, the G.A.O. accepted a request from two Democratic senators to look into the E.P.A.'s dismissal of scientists from agency boards that advise on health and scientific matters. The G.A.O. has said it will look into the role that political appointees at the E.P.A. had in choosing a new roster of advisers, which drew largely from industry and state regulatory bodies rather than university researchers.

# Other E.P.A. Investigations

8/9/2018     Case 1:19-cv-00980-BAH   Document 19-6   Filed 08/17/20   Page 24 of 64
The Investigations That Led to Scott Pruitt's Resignation - The New York Times

3 investigations

In addition to the investigations of Mr. Pruitt's actions, there have been inquiries into other accusations of wrongdoing at the E.P.A.

- The E.P.A. inspector general is looking into an allegation that Samantha Dravis, Mr. Pruitt's former policy chief, did not attend work or perform her duties for most of November, December and January while continuing to draw a salary. The E.P.A. and Mr. Pruitt have disputed the allegation.

- A tweet from the E.P.A.'s official Twitter account that appeared to mock Democrats is the subject of a G.A.O. investigation into whether it violated a law banning agencies from using taxpayer dollars on propaganda. The Office of Special Counsel, an independent ethics agency, conducted a separate inquiry and found that the tweet did not violate the Hatch Act, which bars federal employees from political campaign activity while on duty.

## Other Issues

Mr. Pruitt faced questions about a number of other actions he took at the helm of the E.P.A., but these are not known to be the subjects of any federal inquiries.

- Mr. Pruitt gave a political aide the task of helping him seek a "business opportunity" for his wife with the fast-food chain Chick-fil-A. Mr. Pruitt reportedly spoke with Chick-fil-A representatives about the possibility of his wife opening a franchise, though she never did. Senate Democrats have asked the E.P.A.'s inspector general to investigate Mr. Pruitt's efforts.

- At least five E.P.A. officials, four of them high-ranking, were reassigned, demoted or requested new jobs after they raised concerns about Mr. Pruitt's spending and management practices.

- Officials said Mr. Pruitt wanted to use flashing lights and sirens in his motorcade to expedite local trips in Washington, a perk more commonly associated with the presidency.

- Lobbyists and influential Republican donors played key roles in planning Mr. Pruitt's foreign trips, according to interviews with officials and E.P.A. documents.

- House and Senate Democrats have asked Mr. Pruitt to respond to allegations that he exceeded the spending limit for office decorating with art on loan from the Smithsonian Institution and the framing of an American flag.

- On his trip to Italy, Mr. Pruitt dined with Cardinal George Pell, a prominent climate-science denialist and Vatican leader who was also facing sexual abuse allegations. E.P.A. descriptions of the dinner intentionally omitted the cardinal's presence, officials said.

- Mr. Pruitt enjoyed a superfan experience at a University of Kentucky basketball game in seats belonging to Joseph W. Craft III, a billionaire coal executive who has lobbied the E.P.A. on issues important to his company.

Coral Davenport contributed reporting.

*Correction: April 17, 2018*
*An earlier version of this article used an incorrect given name for a New Mexico senator who is a sponsor of a resolution calling for Mr. Pruitt to resign. He is Tom Udall, not Mark.*

Lisa Friedman reports on climate and environmental policy in Washington. A former editor at Climatewire, she has covered nine international climate talks.  @LFFriedman

A version of this article appears in print on April 21, 2018, on Page A19 of the New York edition with the headline: The Pruitt Inquiries: Expenses, Emails and a Phone Booth

**Attachment 4**

ALEX G. TSE (CABN 152348)
Acting United States Attorney
SARA WINSLOW (DCBN 457643)
Chief, Civil Division
STEVEN J. SALTIEL (CABN 202292)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
Telephone: (415) 436-6996
FAX: (415) 436-6748
steven.saltiel@usdoj.gov

Attorneys for United States
Environmental Protection Agency

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ECOLOGICAL RIGHTS FOUNDATION, a non-profit corporation, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, <br><br> Defendant. | Case No.: 4:18-cv-00394 DMR <br><br> **FOURTH DECLARATION OF ELIZABETH WHITE** |

FOURTH WHITE DECLARATION
CASE NO. 4:18-CV-00394 DMR

I, ELIZABETH WHITE, declare that the following statements are true and correct to the best of my knowledge and are based on my own personal knowledge, on information contained in the records of the United States Environmental Protection Agency ("EPA" or "Agency"), or on information supplied to me by employees under my supervision or employees in other EPA offices.

1.    I am the Director of the Office of Executive Secretariat ("OEX") within the Office of the Administrator of EPA. I have held this position since September 2017. My office handles four business lines: overseeing Freedom of Information Act ("FOIA") request processing in the Office of the Administrator; managing the records management program for the Office of the Administrator; managing the Administrator's and Deputy Administrator's executive correspondence; and administering EPA's Correspondence Management System. This is the fourth declaration that I have prepared in connection with this FOIA litigation.

2.    I make this Declaration in response to the Court's June 14, 2018 amended civil conference minute order, which provided that "Defendant shall provide Plaintiff with an updated declaration by Elizabeth White regarding EPA's search for documents responsive to [FOIA] Request 1 by 7/26/2018." Docket # 33.

3.    As I explained in my previous declarations, EPA received FOIA Request 1 on February 1, 2017, and agreed with Plaintiff to clarify the scope of the request on March 11, 2017. The clarified request sought the following: "1) Any memo, email or other document received by the Acting Administrator, the Administrator, the Acting Associate Administrator for Public Affairs or the Senior Press Advisor for Public Affairs from 1/1/2017 to the present from anyone with an '@who.eop.gov' email address or from any of the temporary employees who joined the Agency as part of what is referred to as the 'beachhead team' directing EPA staff to cease communications with the public and 2) any subsequent memo, email or other document issued to staff by the Acting Administrator, the Administrator, the Acting Associate Administrator for Public Affairs or the Senior Press Advisor for

FOURTH WHITE DECLARATION
CASE NO. 4:18-CV-00394 DMR                      1

Public Affairs to effectuate any direction from the beachhead team regarding the subject in Part 1 of your request. This portion of your request is limited to the memo, email or other document issued by the most senior career staff member of EPA in the Office of Public Affairs; you do not seek memos, emails, or other documents further disseminating this information throughout the Agency; and 3) Any memo, email or other document received by the Acting Administrator, the Administrator, or the Acting Assistant Administrator for Research and Development from 1/1/2017 to the present from anyone with an '@who.eop.gov' email address or from any of the temporary employees who joined the Agency as part of what is referred to as the 'beachhead team' halting or otherwise restricting the publication of scientific research or data by EPA staff and 4)[1] any subsequent memo, email or other document issued to staff by the Acting Administrator, the Administrator, the Acting Associate Administrator for Public Affairs or the Senior Press Advisor for Public Affairs to effectuate any direction from the beachhead team regarding the subject in Part 1 of your request. This portion of your request is limited to the memo, email or other document issued by the most senior career staff member of EPA in the Office of Public Affairs; you do not seek memos, emails, or other documents further disseminating this information throughout the Agency." Plaintiff's FOIA Request 1, as clarified and confirmed in an email dated March 11, 2017, from Becky Dolph, Director, FOIA Expert Assistance Team Office, to Christopher Sproul, is attached hereto as Exhibit 1.

4.      Prior to Plaintiff's lawsuit, EPA processed Plaintiff's request in part, but did not complete the search. Specifically, in summer 2017, Nancy Grantham, then-Senior Advisor for Crisis Communications within the Office of Public Affairs, conducted a manual search of her Outlook email for responsive records. Ms. Grantham focused on correspondence with members of the beachhead team

[1] The fourth part of the clarified request is an inadvertent copy-and-paste of the second part of the clarified request. The correct text should read "any subsequent memo, email or other document issued to staff by the Acting Administrator, the Administrator, the Acting Assistant Administrator for Research and Development to effectuate any direction from the beachhead team regarding the subject in Part 3 of your request."

FOURTH WHITE DECLARATION
CASE NO. 4:18-CV-00394 DMR                    2

and former Acting Administrator Catherine McCabe. She identified seven pages of records that she believed were responsive to the clarified request. In August 2017, EPA uploaded these seven pages of records to FOIAonline, the Agency's online FOIA portal, with the intent of producing the records to Plaintiff. However, EPA mistakenly failed to publish the records, resulting in Plaintiff's inability to access them. EPA published the records and made them available to Plaintiff via FOIAonline on February 20, 2018.

5. To complete the search, on March 19, 2018, EPA submitted a centralized search request for Outlook email to EPA's eDiscovery Division within the Office of Environmental Information. The search request included search terms agreed upon with Plaintiff by email on March 13, 2018,[2] and the list of custodians identified in the March 11, 2017 clarified request: former Administrator Scott Pruitt; former Acting Administrator Catherine McCabe; then Acting Associate Administrator for Public Affairs George Hull; then Acting Director of the Office Media Relations Julia Valentine[3]; and former Acting

---

[2] The search terms are:

- (("climate change" or "global warming") AND (communicat* or inform* or engag* or publish* or publicat* or release* or press* or blog* or "website" or "twitter" or "tweet" or "public") AND (cease* or pause* or halt* or restrict* or stop* or don't or "do not" or review* or control* or screen* or refer* or central* or delet*)) OR

- (("account" or "social media" or "twitter" or "website" or "media" or "press") AND (restrict* or control* or review* or screen* or central*)) OR

- (("Beach Team" or "beachhead") AND (review* or screen* or refer*)) OR

- "ungaggedEPA" OR

- "altUSEPA" OR

- ((cease* or pause* or halt* or restrict* or stop* or don't or "do not") AND (communicat* or inform* or engag*) AND (media or press or public* or external*)) OR

- ((cease* or pause* or halt* or restrict* or stop* or don't or "do not") AND (publish* or publicat* or release*) AND (scien* or research* or data or stud* or report*)) OR

- "gag order" OR

- "political review order"

[3] The clarified request refers to the "Senior Press Advisor for Public Affairs." Prior to submitting the March 19, 2018 centralized search request, EPA staff mistakenly identified this individual as Ms. Valentine. More recently, EPA staff realized that "Senior Press Advisor for Public Affairs" is not an official EPA position. Rather, the term was likely meant to refer to then Senior Advisor for Crisis Communications (within the Office of Public Affairs) Nancy Grantham. To correct the mistake, EPA

FOURTH WHITE DECLARATION
CASE NO. 4:18-CV-00394 DMR                    3

Assistant Administrator for Research and Development Robert Kavlock. The search resulted in 16,124 potentially responsive records. EPA staff next identified categories of non-responsive records: (1) duplicates; (2) emails to or from a non-.gov domain; (3) emails from anyone without an "@who.eop.gov" email address, who was not a member of the beachhead team[4], and was not on the list of custodians identified in the clarified request; and (4) attachments of such non-responsive records. EPA staff then manually reviewed the remaining potentially responsive records to determine whether they were responsive. EPA staff identified 17 pages of records that were responsive to Plaintiff's clarified FOIA Request 1. EPA produced the records to Plaintiff on April 24, 2018.

6.    On April 4, 2018, EPA instructed Mr. Hull, Ms. Valentine, and two assistants for former Administrator Pruitt (Hayley Ford and Lincoln Ferguson) to conduct searches for potentially responsive records, including but not limited to Outlook email, paper documents, and non-email electronically stored information. A copy of the April 4, 2018 search instructions are attached hereto as Exhibit 2. Mr. Hull indicated that his search revealed no responsive records. Ms. Ford indicated that her search on behalf of former Administrator Pruitt revealed no responsive records. Ms. Valentine indicated that her search revealed five pages of records that she thought were potentially responsive. EPA staff reviewed Ms. Valentine's records and determined that none of them were responsive to Plaintiff's clarified FOIA Request 1.

7.    On April 19, 2018, EPA submitted a second centralized search request for the non-email electronically stored information of Ms. McCabe and Mr. Kavlock, who had since departed the Agency.

submitted a centralized search request for Ms. Grantham's Outlook email on June 4, 2018 (described below in Paragraph 6).

[4] Members of the beachhead team include Layne Bangerter, Donald Benton, Patrick Davis, Douglas Ericksen, Holly Greaves, John Konkus, David Kreutzer, Charles Munoz, David Schnare, Justin Schwab, and George Sugiyama.

FOURTH WHITE DECLARATION
CASE NO. 4:18-CV-00394 DMR                    4

The search resulted in 19 potentially responsive records. EPA staff reviewed the records and determined that none of them were responsive to Plaintiff's clarified FOIA Request 1.

8.      On June 4, 2018, EPA submitted a third centralized search request for Ms. Grantham's Outlook email. The search resulted in 4,715 potentially responsive records. EPA staff identified the same categories of non-responsive records described above in Paragraph 5. EPA staff then manually reviewed the remaining potentially responsive records to determine whether they were responsive. EPA staff identified 22 pages of records that were responsive to Plaintiff's clarified FOIA Request 1. A copy of these records is attached hereto as Exhibit 3.

Pursuant to 28 U.S.C. § 1746, I hereby affirm under penalty of perjury that the forgoing Declaration is true and correct.

Executed this 26th day of July, 2018.

Elizabeth White
Director, Office of the Executive Secretariat
Office of the Administrator
U.S. Environmental Protection Agency

FOURTH WHITE DECLARATION
CASE NO. 4:18-CV-00394 DMR                 5

# EXHIBIT 1

| | |
|---|---|
| **From:** | Dolph, Becky |
| **To:** | csproul@enviroadvocates.com |
| **Cc:** | christopherwhudak@gmail.com; White, Candace; Newton, Jonathan; Hope, Brian; Clarke, Victoria |
| **Subject:** | FOIA Request EPA-HQ-2017-003479 |
| **Date:** | Saturday, March 11, 2017 3:06:37 PM |

Mr. Sproul:  Thank you for taking the time to talk with me this afternoon regarding your FOIA Request EPA-HQ-2017-003479 in which you sought the following:

(1) Instructions, directives, requests or orders issued since the inauguration of President
Trump by any Trump administration official to employees of the Environmental
Protection Agency (EPA) to not speak publicly about work at EPA, including but not
limited to instructions to not speak with media, and to not publish upon social media
("Gag Order Directive(s)"). This request includes but is not limited to all such documents
posted on or discussing posts related to the Gag Order using the Twitter handles
@ungaggedEPA, @altUSEPA, or @EPA. This request also includes but is not limited to
any and all draft or final orders, memorandums, or guidance, from the Office of the
President, his staff, the Environmental Protection Agency, Environmental Protection
Agency personnel and/or staff, or other executive agencies, related to how the EPA
should, must, or must not carry out its work, duties, and communications with the public,
including documents regarding the use of funds or funding for the same. This request also
includes any and all documents related to whether further orders, memorandums,
guidance, regulations, statutes, or other documents will be drafted or issued regarding the
Gag Order Directive(s) and the reasons or explanations for implementing or not
implementing such actions.

(2) All documents directives, requests or orders issued since the inauguration of President

Trump by any Trump administration official to EPA employees concerning whether EPA
information, reports, studies, and/or data must undergo review by a political appointee
prior to publication by EPA outside the agency ("Political Review Order"). This includes
but is not limited to any and all draft or final orders, memorandums, or guidance, from
the Office of the President, his staff, the Environmental Protection Agency,
Environmental Protection Agency personnel and/or staff, or other executive agencies,
related to how the Environmental Protection Agency should, must, or must not carry out
its work, duties, and communications with the public, including documents regarding the
use of funds or funding for the same, and any documents related to the same. This request
also includes any and all documents related to whether further orders, memorandums,
guidance, regulations, statutes, or other documents will be drafted or issued regarding the
Political Review Order and the reasons or explanations for implementing or not
implementing such actions."

In our conversation we were able to clarify your request so that we are now able to proceed with processing. You have agreed to clarify your request to seek the following:

**1)** Any memo, email or other document received by the Acting Administrator, the Administrator, the Acting Associate Administrator for Public Affairs or the Senior Press Advisor for Public Affairs from 1/1/2017 to the present from anyone with an "@who.eop.gov" email address or from any of the temporary employees who joined the Agency as part of what is referred to as the "beachhead team" directing EPA staff to cease communications with the public and **2)** any subsequent memo, email or other document issued to staff by the Acting Administrator, the Administrator, the Acting Associate Administrator for Public Affairs or the Senior Press Advisor for Public Affairs to effectuate any direction from the beachhead team regarding the subject in Part 1 of your request.  This

portion of your request is limited to the memo, email or other document issued by the most senior career staff member of EPA  in the Office of Public Affairs; you do not seek memos, emails, or other documents further disseminating this information throughout the Agency; and

**3)** Any memo, email or other document received by the Acting Administrator, the Administrator, or the Acting Assistant Administrator for Research and Development from 1/1/2017 to the present from anyone with an "@who.eop.gov" email address or from any of the temporary employees who joined the Agency as part of what is referred to as the "beachhead team" halting or otherwise restricting the publication of scientific research or data by EPA staff and **4)** any subsequent memo, email or other document issued to staff by the Acting Administrator, the Administrator, the  Acting Associate Administrator for Public Affairs or the Senior Press Advisor for Public Affairs to effectuate any direction from the beachhead team regarding the subject in Part 1 of your request.  This portion of your request is limited to the memo, email or other document issued by the most senior career staff member of EPA  in the Office of Public Affairs; you do not seek memos, emails, or other documents further disseminating this information throughout the Agency.

We appreciate cooperation and your interest in the EPA.

Becky Dolph

Becky Dolph | Director, FOIA Expert Assistance Team Office
U.S Environmental Protection Agency
Office of General Counsel | 7309B WJCN | 202-564-5771

# EXHIBIT 2

| | |
|---|---|
| **From:** | Marks, Matthew |
| **To:** | Hull, George; Valentine, Julia |
| **Subject:** | FOIA Litigation Search Instructions - Ecological Rights Foundation v. EPA, No. 4:18-CV-00394 DMR (N.D. Cal.) - Due April 11 |
| **Date:** | Wednesday, April 04, 2018 1:50:00 PM |

Search Instructions: Ecological Rights Foundation v. EPA, No. 4:18-CV-00394 DMR (N.D. Cal.)

Hello,

You are receiving this email because you may have records responsive to a FOIA litigation from Ecological Rights Foundation seeking documents that constitute a directive to (1) cease communications with the public or (2) halt or restrict the publication of scientific research or data by EPA staff. The search instructions are below. Please complete your search and provide any responsive records by no later than **April 11, 2018.**

**Instructions**
We would like you to review your e-mails, paper documents (including phone logs and schedules), and non-email electronically stored information (ESI) (meaning documents or information that are stored electronically, but are not contained in emails) that you possess. Specifically, we would like you to search your paper, e-mail, and non-email ESI files for documents that are responsive to the criteria below:

Custodians:
- Scott Pruitt
- Catherine McCabe
- George Hull
- Julia Valentine
- Robert Kavlock

Date Range:
- January 1, 2017 to March, 11 2017

Subject Matter:
- Any memo, email or other document from anyone with an "@who.eop.gov" email address or from any of the temporary employees who joined the Agency as part of what is referred to as the "beachhead team" directing EPA staff to cease communications with the public;
- Any subsequent memo, email or other document issued to staff to effectuate any direction from the beachhead team to cease communications with the public.
- Any memo, email or other document from anyone with an "@who.eop.gov" email address or from any of the temporary employees who joined the Agency as part of what is referred to as the "beachhead team" halting or otherwise restricting the publication of scientific research or data by EPA staff;
- Any subsequent memo, email or other document issued to staff to effectuate any direction from the beachhead team to halt or otherwise restrict the publication of scientific research or data by EPA staff.

If you find potentially responsive documents, please **scan them and email them to Matthew Marks.** The potentially responsive records will be reviewed by the Office of General Counsel, the Office of the Executive Secretariat, and the Office of Public Affairs prior to any release.

In addition, please consider whether you have ever used personal email or text messaging to conduct Agency business related to any of the topics identified above. If you have a message that is potentially responsive and has yet to be transferred to an epa.gov account, the employee must forward that message to his/her epa.gov account and provide a copy of the forwarded message to Matthew Marks.

Again, your task due date is **April 11, 2018**. Please direct any questions concerning the clarification letter or the instructions above to Matthew Marks, Office of General Counsel, at (202) 564-3276.

Matthew C. Marks
U.S. Environmental Protection Agency
Office of General Counsel
Air and Radiation Law Office
1200 Pennsylvania Avenue, NW
Washington, DC  20460
T:  202-564-3276
E:  marks.matthew@epa.gov

| | |
|---|---|
| **From:** | Marks, Matthew |
| **To:** | Ferguson, Lincoln; Ford, Hayley |
| **Subject:** | FOIA Litigation Search Instructions - Ecological Rights Foundation v. EPA, No. 4:18-CV-00394 DMR (N.D. Cal.) - Due April 11 |
| **Date:** | Wednesday, April 04, 2018 1:58:00 PM |

Hello Hayley and Lincoln,

It is my understanding that you are the contacts for conducting FOIA searches for the Administrator. Please review the instructions below for a litigation-related FOIA search. The primary focus of the search should be hard-copy records and loose ESI. We have already conducted a centralized search of the Administrator's outlook accounts using search terms and did not find any responsive records. The only reason you would need to do any additional searching of the Administrator's email is if you have reason to believe that a responsive record exists. Let me know if you have any questions Thank you for your assistance with this matter.

Matt

_____

Matthew C. Marks
U.S. Environmental Protection Agency
Office of General Counsel
Air and Radiation Law Office
1200 Pennsylvania Avenue, NW
Washington, DC  20460
T:  202-564-3276
E:  marks.matthew@epa.gov

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Search Instructions: Ecological Rights Foundation v. EPA, No. 4:18-CV-00394 DMR (N.D. Cal.)

Hello,

You are receiving this email because you may have records responsive to a FOIA litigation from Ecological Rights Foundation seeking documents that constitute a directive to (1) cease communications with the public or (2) halt or restrict the publication of scientific research or data by EPA staff. The search instructions are below. Please complete your search and provide any responsive records by no later than **April 11, 2018.**

**Instructions**
We would like you to review your e-mails, paper documents (including phone logs and schedules), and non-email electronically stored information (ESI) (meaning documents or information that are stored electronically, but are not contained in emails) that you possess. Specifically, we would like you to search your paper, e-mail, and non-email ESI files for documents that are responsive to the criteria below:

Custodians:

Scott Pruitt
- Catherine McCabe
- George Hull
- Julia Valentine
- Robert Kavlock

Date Range:
- January 1, 2017 to March, 11 2017

Subject Matter:
- Any memo, email or other document from anyone with an "@who.eop.gov" email address or from any of the temporary employees who joined the Agency as part of what is referred to as the "beachhead team" directing EPA staff to cease communications with the public;
- Any subsequent memo, email or other document issued to staff to effectuate any direction from the beachhead team to cease communications with the public.
- Any memo, email or other document from anyone with an "@who.eop.gov" email address or from any of the temporary employees who joined the Agency as part of what is referred to as the "beachhead team" halting or otherwise restricting the publication of scientific research or data by EPA staff;
- Any subsequent memo, email or other document issued to staff to effectuate any direction from the beachhead team to halt or otherwise restrict the publication of scientific research or data by EPA staff.

If you find potentially responsive documents, please **scan them and email them to Matthew Marks.** The potentially responsive records will be reviewed by the Office of General Counsel, the Office of the Executive Secretariat, and the Office of Public Affairs prior to any release.

In addition, please consider whether you have ever used personal email or text messaging to conduct Agency business related to any of the topics identified above. If you have a message that is potentially responsive and has yet to be transferred to an epa.gov account, the employee must forward that message to his/her epa.gov account and provide a copy of the forwarded message to Matthew Marks.

Again, your task due date is **April 11, 2018**. Please direct any questions concerning the clarification letter or the instructions above to Matthew Marks, Office of General Counsel, at (202) 564-3276.

# EXHIBIT 3

**To:**      Grantham, Nancy[Grantham.Nancy@epa.gov]
**Cc:**      Ericksen, Doug[ericksen.doug@epa.gov]
**From:**    Konkus, John
**Sent:**    Sun 2/5/2017 1:09:51 PM
**Subject:** Re: Wall Street Journal comment request, re: science directives

I am fine with the very short and direct draft answers in bold below.

Sent from my iPhone

On Feb 4, 2017, at 10:16 PM, Grantham, Nancy <Grantham.Nancy@epa.gov> wrote:


Hi Doug  and John,


Please see my suggested replies below .


Thanks ng


**Nancy Grantham**

**Office of Public Affairs**

**US Environmental Protection Agency**

**202-564-6879 (desk)**

Ex. 6 - Personal Privacy   **(mobile)**


Daniela Hernandez

Digital Science Editor

The Wall Street Journal

o: 212 416 3886

C:  Ex. 6 - Personal Privacy

e: daniela.hernandez@wsj.com

Julia P. Valentine

Assoc. Dir./Acting Dir.
U.S. EPA, Ofc of Media Relations

202.564.2663 direct

Ex. 6 - Personal Privacy m/txt

**From:** Hernandez, Daniela [mailto:daniela.hernandez@wsj.com]
**Sent:** Friday, February 03, 2017 11:34 AM
**To:** Press <Press@epa.gov>
**Subject:** URGENT: Wall Street Journal comment request

Hi,

I'm a reporter and editor at the Wall Street Journal. I'm working on a story about groups of scientists, librarians and engineers organizing events to download data from federal databases, as there is some concern these public resources could be targeted under the new administration. The story focuses on their efforts and uses of the data.

Could you please comment on the following:

* Have there been any new directives from the Trump administration about what information on the EPA website will remain and which will go?

**No**

* Have there been any directives from the Trump administration to stop making EPA databases publicly available?

**No**

* Have there been any indications from the Trump administration that funding to design, build, maintain, utilize or provide access to new or existing EPA databases will be cut?

**No**

* Are EPA employees free to participate in organized data archiving events like the ones put on by EDGI or the Data Refuge project from the University of Pennsylvania?

**Presume yes – in their personal capacity.**

Best,

Daniela Hernandez

Digital Science Editor

The Wall Street Journal

o: 212 416 3886

c: [Ex. 6 - Personal Privacy]

e: daniela.hernandez@wsj.com

**To:**      Grantham, Nancy[Grantham.Nancy@epa.gov]
**From:**    Ericksen, Doug
**Sent:**    Mon 1/30/2017 2:29:30 PM
**Subject:** Statement on Science vetting

Response to media requests on science at the EPA

Several articles last week reported that political appointees at the EPA would be vetting all scientific research and data before it is made public.   These articles are inaccurate.

The context of the discussion that lead to the articles was about changes to the EPA web page and the process that is currently under way to refresh the web page.

As most people can understand, the new Administration will make changes to the EPA web page just as previous administrations have done.

At this point we cannot say what the final changes will look like because we are currently going through the review.

Claims that science and research will deleted are simply not true.  Federal law prohibits these types of mass activities.

Please contact EPA Transition Team Communications Lead Doug Ericksen if you have additional questions about this issue.

ED_001702B_00001311

**To:**      Grantham, Nancy[Grantham.Nancy@epa.gov]
**From:**    Ericksen, Doug
**Sent:**    Mon 1/30/2017 12:52:17 PM
**Subject:** RE: Monday Morning

I am in my office here in DC.

Don' t leave for the West Coast until Tuesday night after work.

ericksen

**From:** Grantham, Nancy
**Sent:** Monday, January 30, 2017 7:42 AM
**To:** Ericksen, Doug <ericksen.doug@epa.gov>
**Cc:** Benton, Donald <benton.donald@epa.gov>; Munoz, Charles <munoz.charles@epa.gov>
**Subject:** RE: Monday Morning

Good morning to you as well – and hope your travels and weekend went well.

I have not heard about the comms with Members of Congress issue – in fact our HQ intergovernmental and regional staff were been talking with Members and Governors' office all last week – in coordination with HQ .. and Layne – as would be our usual practice.

I think you are still in WA – Region 10 this week – so just let me know a good time to call you – have a couple of other questions/issues to discuss.

Thanks ng

**Nancy Grantham**

ED_001702B_00001499

**Office of Public Affairs**

**US Environmental Protection Agency**

**202-564-6879 (desk)**

Ex. 6 - Personal Privacy (mobile)

**From:** Ericksen, Doug
**Sent:** Monday, January 30, 2017 7:39 AM
**To:** Grantham, Nancy <Grantham.Nancy@epa.gov>
**Cc:** Benton, Donald <benton.donald@epa.gov>; Munoz, Charles <munoz.charles@epa.gov>
**Subject:** Monday Morning

Nancy,

Good morning.

I hope you had a weekend and a good weekend at that.

I have received a couple of reports that Members of Congress have been told that EPA officials cannot communicate with them.   Have you heard this?

If you have we need to make sure that it is clear that the temporary pause on communication with the media and through social media does not apply to members of Congress, Governors, etc.

Lets talk about this one this morning.

ericksen

ED_001702B_00001499

**To:**      Grantham, Nancy[Grantham.Nancy@epa.gov]
**Cc:**      Benton, Donald[benton.donald@epa.gov]; Munoz, Charles[munoz.charles@epa.gov]
**From:**    Ericksen, Doug
**Sent:**    Mon 1/30/2017 12:38:31 PM
**Subject:** Monday Morning

Nancy,

Good morning.

I hope you had a weekend and a good weekend at that.

I have received a couple of reports that Members of Congress have been told that EPA officials cannot communicate with them.   Have you heard this?

If you have we need to make sure that it is clear that the temporary pause on communication with the media and through social media does not apply to members of Congress, Governors, etc.

Lets talk about this one this morning.

ericksen

**To:**      Grantham, Nancy[Grantham.Nancy@epa.gov]
**From:**    Ericksen, Doug
**Sent:**    Tue 1/24/2017 8:16:30 PM
**Subject:** RE: POLITICO: EPA memo calls for communications lockdown

Nancy,

Your response looks good to me.   Please use as necessary.

Doug Ericksen

**From:** Grantham, Nancy
**Sent:** Tuesday, January 24, 2017 3:02 PM
**To:** Mccabe, Catherine <McCabe.Catherine@epa.gov>; Ericksen, Doug
<ericksen.doug@epa.gov>
**Cc:** Grantham, Nancy <Grantham.Nancy@epa.gov>
**Subject:** FW: POLITICO: EPA memo calls for communications lockdown

Below, highlighted, Politico, is the story that is prompting all of the inquiries.   The memo
that is being discussed, is one sent by the comms person in oarm, rather than an
agency-wide email.

We should discuss the proposed statement below.

Suggested response:

The EPA fully intends to continue to provide information to the public. A fresh look at
public affairs and communications processes is common practice for any new
Administration, and a short pause in activities allows for this assessment.

ED_001702B_00002591

Thanks ng

**Nancy Grantham**

**Office of Public Affairs**

**US Environmental Protection Agency**

**202-564-6879 (desk)**

Ex. 6 - Personal Privacy (mobile)

**From:** Valentine, Julia
**Sent:** Tuesday, January 24, 2017 11:15 AM
**To:** Grantham, Nancy <Grantham.Nancy@epa.gov>; Hull, George <Hull.George@epa.gov>
**Subject:** Fwd: POLITICO: EPA memo calls for communications lockdown

This article claims that Joanne Amorosi sent the email following the mtg w CDs yesterday.

Julia P. Valentine

Office of Media Relations

202.564.2663

Sent from USEPA iPhone

Begin forwarded message:

**From:** "Jones, Enesta" <Jones.Enesta@epa.gov>
**Date:** January 24, 2017 at 11:09:04 AM EST
**To:** AO OPA Media Relations <AO_OPA_Media_Relations@epa.gov>
**Subject: POLITICO: EPA memo calls for communications lockdown**

**EPA memo calls for communications lockdown**

By Alex Guillén and Andrew Restuccia

The Trump administration has temporarily restricted press releases, social media and other communications functions at EPA, according to an internal memo obtained by POLITICO.

The memo was sent Monday morning to various staffers by Joanne Amorosi, the communications director for EPA's Office of Resources, Operations, and Management, the agency's central administrative branch.

It warns against virtually all public, external communications by EPA employees: No press releases, no blog posts, and no social media until a new "digital strategist" is hired. Trump's beachhead team will review EPA's previously planned public webinars "and decide which ones will go forward."

Any staff planning on speaking at conferences or other public venues for the next month and a half must clear it with Trump's people. Requests from the media "will be carefully screened." And employees are asked not to send emails via listserv unless "essential," since those messages "can be shared broadly and end up in the press."

The memo was first reported by The Huffington Post.

ED_001702B_00002591

**To:**      Grantham, Nancy[Grantham.Nancy@epa.gov]
**From:**    Ericksen, Doug
**Sent:**    Tue 1/24/2017 8:15:52 PM
**Subject:** RE: POLITICO: EPA memo calls for communications lockdown


**From:** Grantham, Nancy
**Sent:** Tuesday, January 24, 2017 3:02 PM
**To:** Mccabe, Catherine <McCabe.Catherine@epa.gov>; Ericksen, Doug
<ericksen.doug@epa.gov>
**Cc:** Grantham, Nancy <Grantham.Nancy@epa.gov>
**Subject:** FW: POLITICO: EPA memo calls for communications lockdown


Below, highlighted, Politico, is the story that is prompting all of the inquiries.   The memo
that is being discussed, is one sent by the comms person in oarm, rather than an
agency-wide email.


We should discuss the proposed statement below.



Suggested response:


The EPA fully intends to continue to provide information to the public. A fresh look at
public affairs and communications processes is common practice for any new
Administration, and a short pause in activities allows for this assessment.


Thanks ng


**Nancy Grantham**

ED_001702B_00002611

**Office of Public Affairs**

**US Environmental Protection Agency**

**202-564-6879 (desk)**

Ex. 6 - Personal Privacy **(mobile)**

**From:** Valentine, Julia
**Sent:** Tuesday, January 24, 2017 11:15 AM
**To:** Grantham, Nancy <Grantham.Nancy@epa.gov>; Hull, George <Hull.George@epa.gov>
**Subject:** Fwd: POLITICO: EPA memo calls for communications lockdown

This article claims that Joanne Amorosi sent the email following the mtg w CDs yesterday.

Julia P. Valentine

Office of Media Relations

202.564.2663

Sent from USEPA iPhone

Begin forwarded message:

**From:** "Jones, Enesta" <Jones.Enesta@epa.gov>
**Date:** January 24, 2017 at 11:09:04 AM EST
**To:** AO OPA Media Relations <AO_OPA_Media_Relations@epa.gov>
**Subject: POLITICO: EPA memo calls for communications lockdown**

**EPA memo calls for communications lockdown**

By Alex Guillén and Andrew Restuccia

The Trump administration has temporarily restricted press releases, social media and other communications functions at EPA, according to an internal memo obtained by POLITICO.

The memo was sent Monday morning to various staffers by Joanne Amorosi, the communications director for EPA's Office of Resources, Operations, and Management, the agency's central administrative branch.

It warns against virtually all public, external communications by EPA employees: No press releases, no blog posts, and no social media until a new "digital strategist" is hired. Trump's

ED_001702B_00002611

beachhead team will review EPA's previously planned public webinars "and decide which ones will go forward."

Any staff planning on speaking at conferences or other public venues for the next month and a half must clear it with Trump's people. Requests from the media "will be carefully screened." And employees are asked not to send emails via listserv unless "essential," since those messages "can be shared broadly and end up in the press."

The memo was first reported by The Huffington Post.

ED_001702B_00002611

**To:**      Grantham, Nancy[Grantham.Nancy@epa.gov]
**From:**    Ericksen, Doug
**Sent:**    Wed 1/25/2017 4:06:55 PM
**Subject:** standard reply to inquires about media pause


*Lets send this reply on my behalf to media questions on media pause:*


*This is the first presidential transition of the social media era. According to EPA's Website, the Agency has nine blogs, three discussion forums, 34 Facebook pages, 37 Twitter accounts, more than 50 widgets – such as Act on Climate and Count down to Earth Day, YouTube channel, Pinterest, Instagram, Flickr, Storify, Medium, and the Web site. The digital media strategist left last year, and, remember, just a year ago, the GAO ruled the agency violated federal law and engaged in "covert propaganda" using social media. Until we get a new digital media strategist, it's more effective to have it media and messages coordinated through the Beachhead Team. There is nothing unreasonable nor unusual about that.*

ED_001702B_00002712

**To:** Ericksen, Doug[ericksen.doug@epa.gov]
**From:** Grantham, Nancy
**Sent:** Wed 1/25/2017 4:25:45 PM
**Subject:** RE: standard reply to inquires about media pause

Got it ..

**Nancy Grantham**

**Office of Public Affairs**

**US Environmental Protection Agency**

**202-564-6879 (desk)**

Ex. 6 - Personal Privacy  **(mobile)**

**From:** Ericksen, Doug
**Sent:** Wednesday, January 25, 2017 11:07 AM
**To:** Grantham, Nancy <Grantham.Nancy@epa.gov>
**Subject:** standard reply to inquires about media pause

*Lets send this reply on my behalf to media questions on media pause:*

*This is the first presidential transition of the social media era. According to EPA's Website, the Agency has nine blogs, three discussion forums, 34 Facebook pages, 37 Twitter accounts, more than 50 widgets – such as Act on Climate and Count down to Earth Day, YouTube channel, Pinterest, Instagram, Flickr, Storify, Medium, and the Web site. The digital media strategist left last year, and, remember, just a year ago, the GAO ruled the agency violated federal law and engaged in "covert propaganda" using social media. Until we get a new digital media strategist, it's more effective to have it media and messages coordinated through the Beachhead Team. There is nothing unreasonable nor unusual about that.*

**To:**      Dierker, Carl[Dierker.Carl@epa.gov]
**From:**    Grantham, Nancy
**Sent:**    Thur 2/2/2017 1:17:52 PM
**Subject:** media statement ..thanks ng

The EPA fully intends to continue to provide information to the public. A fresh look at public affairs and communications processes is common practice for any new Administration, and a short pause in activities allows for this assessment

**Nancy Grantham**

**Office of Public Affairs**

**US Environmental Protection Agency**

**202-564-6879 (desk)**

Ex. 6 - Personal Privacy **(mobile)**

**To:**      Regional Public Affairs Directors[Regional_Public_Affairs_Directors@epa.gov]
**Cc:**      Hubbard, Carolyn[Hubbard.Carolyn@epa.gov]; Grantham, Nancy[Grantham.Nancy@epa.gov]
**From:**    Grantham, Nancy
**Sent:**    Tue 1/31/2017 10:21:56 PM
**Subject:** Science Statement -- see below for what we are using ..thanks ng

**Response to media requests on science at the EPA**

Several articles last week reported that political appointees at the EPA would be vetting all scientific research and data before it is made public.   These articles are inaccurate.

The context of the discussion that led to the articles was about changes to the EPA web page and the process that will happen to refresh the web page.

As most people can understand, the new Administration will make changes to the EPA web page just as previous administrations have done.

At this point we cannot say what the final changes will look like until there is a thorough review of the website.

Claims that science and research will be deleted are simply not true. **Because there are Federal record keeping requirements, there is a process in place for archiving Federal website information so it remains available to the public if it is removed from the active pages.**

Attribute to EPA Transition Team Communications Lead Doug Ericksen.

**Nancy Grantham**

**Office of Public Affairs**

**US Environmental Protection Agency**

**202-564-6879 (desk)**

Ex. 6 - Personal Privacy **(mobile)**

ED_001702B_00003572

**To:**     Ericksen, Doug[ericksen.doug@epa.gov]
**From:**   Grantham, Nancy
**Sent:**   Mon 1/30/2017 2:43:46 PM
**Subject:** RE: Statement on Science vetting

Thanks


**Nancy Grantham**

**Office of Public Affairs**

**US Environmental Protection Agency**

**202-564-6879 (desk)**

Ex. 6 - Personal Privacy  **(mobile)**


**From:** Ericksen, Doug
**Sent:** Monday, January 30, 2017 9:30 AM
**To:** Grantham, Nancy <Grantham.Nancy@epa.gov>
**Subject:** Statement on Science vetting


Response to media requests on science at the EPA



Several articles last week reported that political appointees at the EPA would be vetting all scientific research and data before it is made public.   These articles are inaccurate.

The context of the discussion that lead to the articles was about changes to the EPA web page and the process that is currently under way to refresh the web page.

As most people can understand, the new Administration will make changes to the EPA web page just as previous administrations have done.

At this point we cannot say what the final changes will look like because we are currently going through the review.

ED_001702B_00003654

Claims that science and research will deleted are simply not true.  Federal law prohibits these types of mass activities.

Please contact EPA Transition Team Communications Lead Doug Ericksen if you have additional questions about this issue.

ED_001702B_00003654

**To:**      Ericksen, Doug[ericksen.doug@epa.gov]
**From:**    Grantham, Nancy
**Sent:**    Tue 1/24/2017 8:17:55 PM
**Subject:** RE: POLITICO: EPA memo calls for communications lockdown

Thanks ng

**Nancy Grantham**

**Office of Public Affairs**

**US Environmental Protection Agency**

**202-564-6879 (desk)**

Ex. 6 - Personal Privacy  **(mobile)**

**From:** Ericksen, Doug
**Sent:** Tuesday, January 24, 2017 3:17 PM
**To:** Grantham, Nancy <Grantham.Nancy@epa.gov>
**Subject:** RE: POLITICO: EPA memo calls for communications lockdown

Nancy,

Your response looks good to me.   Please use as necessary.

Doug Ericksen

**From:** Grantham, Nancy
**Sent:** Tuesday, January 24, 2017 3:02 PM
**To:** Mccabe, Catherine <McCabe.Catherine@epa.gov>; Ericksen, Doug
<ericksen.doug@epa.gov>
**Cc:** Grantham, Nancy <Grantham.Nancy@epa.gov>
**Subject:** FW: POLITICO: EPA memo calls for communications lockdown

ED_001702B_00004473

Below, highlighted, Politico, is the story that is prompting all of the inquiries.   The memo that is being discussed, is one sent by the comms person in oarm, rather than an agency-wide email.

We should discuss the proposed statement below.

Suggested response:

The EPA fully intends to continue to provide information to the public. A fresh look at public affairs and communications processes is common practice for any new Administration, and a short pause in activities allows for this assessment.

Thanks ng

**Nancy Grantham**

**Office of Public Affairs**

**US Environmental Protection Agency**

**202-564-6879 (desk)**

| Ex. 6 - Personal Privacy | **(mobile)**

**From:** Valentine, Julia
**Sent:** Tuesday, January 24, 2017 11:15 AM
**To:** Grantham, Nancy <Grantham.Nancy@epa.gov>; Hull, George <Hull.George@epa.gov>
**Subject:** Fwd: POLITICO: EPA memo calls for communications lockdown

ED_001702B_00004473

This article claims that Joanne Amorosi sent the email following the mtg w CDs yesterday.

Julia P. Valentine

Office of Media Relations

202.564.2663

Sent from USEPA iPhone

Begin forwarded message:

**From:** "Jones, Enesta" <Jones.Enesta@epa.gov>
**Date:** January 24, 2017 at 11:09:04 AM EST
**To:** AO OPA Media Relations <AO_OPA_Media_Relations@epa.gov>
**Subject: POLITICO: EPA memo calls for communications lockdown**

**EPA memo calls for communications lockdown**

By Alex Guillén and Andrew Restuccia

The Trump administration has temporarily restricted press releases, social media and other communications functions at EPA, according to an internal memo obtained by POLITICO.

The memo was sent Monday morning to various staffers by Joanne Amorosi, the communications director for EPA's Office of Resources, Operations, and Management, the agency's central administrative branch.

It warns against virtually all public, external communications by EPA employees: No press releases, no blog posts, and no social media until a new "digital strategist" is hired. Trump's beachhead team will review EPA's previously planned public webinars "and decide which ones will go forward."

Any staff planning on speaking at conferences or other public venues for the next month and a half must clear it with Trump's people. Requests from the media "will be carefully screened." And employees are asked not to send emails via listserv unless "essential," since those messages "can be shared broadly and end up in the press."

The memo was first reported by The Huffington Post.

ED_001702B_00004473