# EXHIBIT J

Hello Derek,

Thank you for the update.  I have discussed with my client and we think the best way to move forward is for us to provide some clarification about what we are looking for and what we think is the best way to search for the records we are requesting.  We hope that this clarification will significantly reduce the number of records at issue, saving EPA time and getting us more relevant records in a much more timely manner.

To begin with, we do not think EPA's current process of carrying out Boolean searches and then narrowing them is an efficient way to process this request.  Delegating the task of searching for records to people with no knowledge of the records is guaranteed to be inefficient.  It is our position that subject matter experts and employees with knowledge of the requested items should be tasked with searching for and producing responsive records.  EPA's current use of Boolean searches is bound to be both over- and under-inclusive of the records we are looking for.  It is over-inclusive because, as here, it locates many records, most of which have no relevance to what the requester is actually looking for.  It is also under-inclusive because it is bound to miss relevant records that do not include the keywords that EPA chooses to rely on as search terms.  Therefore, EPA's search will produce many records, a significant number of which are irrelevant, and will miss many relevant records that anyone familiar with the issue would be able to easily identify.  This means that EPA will have to search many records, here currently estimated at 212,609 pages, but that many of those records will be irrelevant and many relevant records will be absent.  This does not comply with FOIA.

In addition to being an unreasonable approach to locating responsive records, it also results in unreasonable delay in production.  Gathering these large collections of records creates delay when EPA must then subsequently review the records before producing them.  This delay is exacerbated by EPA's new policy creating a presumptive date-of-request search cut-off date.  *See* 40 C.F.R. § 2.103(a) ("To determine which records are within the scope of a request, an office will ordinarily include only those records in the Agency's possession as of the date the request was received…").  Here EPA proposes to complete production three full years after it begins.  Even assuming that production began at the end of this month (August), a year after EcoRights submitted the request at issue, that would mean that any records produced would be a minimum of one year old at the first production and a minimum of four years old at the last production.  This ensures that requesters receive stale information, never able to form an up-to-date picture of what the agency is doing.  This is contrary to FOIA's transparency goals.

In sum, EPA's approach to searching for and producing records is broken as a general matter and is unacceptable to EcoRights here.  EPA's search is not "reasonably calculated to uncover all relevant documents," *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), and EPA's search and production process constitutes a withholding of records because "its net effect is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them." *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983).

Our proposal is that we provide further guidance on the records we are looking for and that this guidance be given to management-level staff and/or subject matter experts who will know whether responsive records exist and/or will know who would have that information.  We propose that this new search be completed within one month.  We then propose that EPA produce all responsive records, which we anticipate will be significantly less than the estimated number EPA has identified through its search to date and which we anticipate will contain more relevant and less irrelevant records, within six months from the end of the new search.

Our suggestions for narrowing the requested records are below (additions to the original request are in bold, deletions are in strikethrough). EPA may regard the FOIA request narrowed as indicated by EcoRights' comments below. Except as otherwise indicated, EcoRights is not agreeing to modify its FOIA request at this time:

(1) All documents created by the U.S. Environmental Protection Agency or any employee or official of the U.S. Environmental Protection Agency (collectively "EPA") **(this includes former Administrator Scott Pruitt, Administrator Andrew Wheeler, and/or any employee or official responsible for creating or maintaining the following types of records and/or their aides)** constituting or memorializing any instructions, directives, requests, memorandums, orders, or communications issued since July 5, 2018 ~~by former Administrator Scott Pruitt or his aides, Acting Administrator Andrew Wheeler or his aides, any member of the Office of the Administrator, or any member of the Office of Public Affairs~~ related to changes in policy, practice, or procedure at **EPA** ~~the Agency following the resignation of former Administrator Scott Pruitt and/or the transition of Andrew Wheeler to Acting Administrator~~ concerning any of the following:

public posting or release of the ~~Acting~~ Administrator's schedule **(what we are looking for is policies, guidelines, and similar statements that would apply often, generally, presumptively, or always and not to individual decisions or actions)**, communications from EPA to the press or in response to public inquiries **(what we are looking for is information about who needs to approve these communications, and this is limited to policies, guidelines, and similar statements addressing EPA's communications to the press or the public that would apply often, generally, presumptively, or always and not to individual decisions or actions)**, what constitutes acceptable travel by the ~~Acting~~ Administrator or any EPA staff who qualify as Senior Executive Service on official EPA business and what costs of such travel are reimbursable by EPA **(what we are looking for is policies, guidelines, and similar statements addressing acceptable travel by the above officials that would apply often, generally, presumptively, or always and not to individual decisions or actions. EcoRights is particularly seeking any documents reflecting policies or guidelines to reform use of EPA travel funds by the Administrator or EPA staff in response to allegations or information suggesting that former Administrator Pruitt or others during former Administrator Pruitt's tenure may have used EPA travel funds inappropriately)**, provision of security to the

EPA ~~Acting~~ Administrator **(what we are looking for here is records related to policies, guidelines, and similar statements about assigning EPA personnel who had previously been assigned to enforcement or criminal investigation work to provide security to Administrator Wheeler)**, use of sirens in vehicles used to transport the EPA ~~Acting~~ Administrator **(what we are looking for is records related to policies, guidelines, and similar statements about use of sirens in non-emergency situations)**, procurement of housing or temporary lodging by the ~~Acting~~ Administrator from persons or by relatives of persons who have business pending before EPA **(as was widely reported in the press, former Administrator Pruitt was alleged to have engaged in unethical practices procuring and paying for housing, and what we would like are records related to steps EPA may have taken to avoid the potential for unethical actions related to housing and/or lodging in the future)**, review of EPA employee complaints concerning reassignments to new positions or new responsibilities or demotions that such reassignments or demotions were retaliatory for disagreements with actions**, statements,** or decisions made by the EPA Administrator**, former Administrator Pruitt,** or others within the Office of Administrator**, whether presently employed by EPA or not**, or review of **employee** complaints that EPA staff had been given ~~improper~~ promotions or raises **that were not fully justified based on merit or qualifications** by the EPA Administrator or others within the Office of Administrator ~~("Transition Memos")~~.

(2) All documents created by EPA since July 5, 2018 constituting or memorializing any directive, instructions, request, memorandum, plans, intentions, or communications related to the use or disposal of the soundproof phone booth installed in the office of former Administrator Pruitt **(what we are looking for here are records related to the disposition, or planned disposition, of the phone booth)**.

(3) All documents created by the EPA since July 5, 2018 constituting, memorializing, or describing any directive, request, memorandum, plans, intentions, or communications by anyone in the Office of Administrator for reassigning EPA staff who had been previously reassigned to new positions while working at EPA under former Administrator Pruitt. For instance, such request shall include documents related to EPA's reassignment of staff including Kevin Chmielewski, Reginald E. Allen, Eric Weese, John E. Reeder, and John C. Martin, who were reassigned under former Administrator Pruitt after questioning his practices. See Eric Lipton, Kenneth P. Vogel and Lisa Friedman, E.P.A. Officials Sidelined After Questioning Scott Pruitt, New York Times, (Apr. 5, 2018), available at: https://www.nytimes.com/2018/04/05/business/epa-officials-questioned-scott-pruitt.html.

(4) All documents created by the EPA since July 5, 2018 constituting, memorializing, or describing any directive, request, memorandum, plans, intentions, or communications by anyone in the Office of Administrator related to evaluating the ability of an employee to perform his or her duties, or demoting, firing,

lowering their salary, or reassigning an employee, where that employee was hired, promoted, reassigned, or received a raise as a result from a request by former Administrator Pruitt. This request shall include any documents related to employees who received raises under provisions of the Safe Drinking Water Act, and employees that the former Administrator had a pre-existing personal relationship with before hiring, promoting, or advocating for his / her raise.

(5) All documents created by EPA since July 5, 2018 constituting, memorializing, describing, or commenting upon any plan, directive, instructions, policy, or practice to reverse or change course from any EPA practice during **former** Administrator Pruitt's tenure of encouraging EPA employees to quit or retire. This request shall also include all documents related to any policy to continue or change course from former Administrator Pruitt's intention not to fill vacant EPA staff positions in order to downsize the agency ~~("hiring freeze").~~**(what we are looking for here are records related to whether the "hiring freeze" is continuing or not and any stated basis for the continuation or cessation of the freeze).**

(6) All documents created by EPA constituting or memorializing ~~Acting~~ Administrator Andrew Wheeler's full calendar, meeting schedule, and notes from meetings from July 5, 2018 to the present**, including attachments thereto**. This request shall include all items on ~~Acting~~ Administrator Wheeler's calendar, including those that have not been published or that are not publicly available online. This request shall also include all memos, communications, e-mails, and other documents created by ~~Acting~~ Administrator Wheeler, his aides, any member of the Office of the Administrator, or any member of the Office of Public Affairs, related to any advice, policy, practice, or intentions to ~~publish or to not publish any portions of Acting Administrator Wheeler's schedule online~~ **omit or redact any portion of Administrator Wheeler's calendar from FOIA requests or to omit any events, meetings, activities, or occurrences from Administrator Wheeler's calendar despite that item being something Administrator Wheeler plans to attend, whether in person, by phone, or otherwise.**

(7) All documents created by EPA since July 5, 2018 constituting, memorializing, describing, or commenting upon the EPA Inspector General's Office's investigations of former Administrator Pruitt, including documents related to whether the investigations are closed or continuing, any results from the investigations, and any disciplinary action planned or taken against former Administrator Pruitt. The investigations referred to in this paragraph are described in Attachment 3 **(we believe this could be fairly limited to records in the Inspector General's Office, including incoming and outgoing email messages)**.

(8) All documents created by EPA since July 5, 2018 constituting or memorializing any instructions, directive, plan, policy, practice, or memorandum to EPA staff concerning how to review and/or respond to Freedom of Information Act

("FOIA") requests **(this is limited to policies, guidelines, and similar statements concerning review and response to FOIA requests that would apply often, generally, presumptively, or always and not to individual decisions or actions. This would include any draft and/or final EPA regulations implementing FOIA and any records related thereto)**.

(9) All documents created by EPA since July 5, 2018 constituting or memorializing any instructions, directive, plan, policy, practice, or memorandum to EPA staff concerning procedures or protocols that EPA staff must follow prior to speaking with the press, including any guidance on what EPA staff may or may not say to the press, and which EPA staff are authorized to speak with the press, issued by the Office of the Administrator or the Office of Public Affairs **(what we are looking for is limited to policies, guidelines, and similar statements addressing EPA's communications to the press or the public that would apply often, generally, presumptively, or always and not to individual decisions or actions)**.

(10)    Documents showing the steps taken by EPA to search for documents responsive to EcoRights' FOIA request dated February 1, 2017 (EPA-HQ-2017-003479), as described by the Fourth Declaration of Elizabeth White dated July 26, 2018 (Attachment 4). In particular, this request shall include the following:

    a.  In paragraph 6 of the declaration, Ms. White indicates that Julia Valentine identified five pages of records that she believed to be responsive to EcoRights' FOIA request, but that EPA staff later determined that these documents were not responsive to the request. EcoRights requests copies of those 5 pages of records.

    b.  In paragraph 7, Ms. White indicates that its centralized search of electronically stored information of Catherine McCabe and Robert Kavlock resulted in 19 pages of potentially responsive records, that EPA staff later determined were not responsive to the FOIA request. EcoRights requests copies of those 19 records.

    c.  In paragraphs 4-8, Ms. White indicates that employees conducted electronic searches for and manual reviews of responsive documents. EcoRights requests all documents constituting, memorializing, or describing the instructions that were given to employees to conduct these searches and/or reviews of documents, and which employees reviewed the records **(these instructions are limited to instructions related to this particular request and not to general manuals or directives that apply more broadly to EPA's processing of FOIA requests generally)**.

    d.  In Exhibit 2 of the declaration, Ms. White states that "The potentially responsive records will be reviewed by the Office of General Counsel, the Office of the Executive Secretariat, and the Office of Public Affairs prior to any release." Please provide documents explaining any review that the Office of the Executive Secretariat and the Office of Public Affairs generally undertakes prior to releasing FOIA records, including any memo

or communications describing the review created since January 20, 2017, and any documents (including emails) explaining any review by the Office of the Executive Secretariat and/or the Office of Public Affairs that was undertaken prior to release of documents responsive to EcoRights' February 1, 2017 FOIA request.

I look forward to discussing this with you soon.

Sincerely,
Stuart Wilcox