# EXHIBIT K

**Bermes, Peter**

---

| | |
|---|---|
| **From:** | Hammond, Derek (USADC) <Derek.Hammond@usdoj.gov> |
| **Sent:** | Wednesday, August 14, 2019 11:31 AM |
| **To:** | Bermes, Peter; Levine, Brandon |
| **Subject:** | FW: EcoRights v. EPA, 19-0980 |
| **Attachments:** | DRAFT JSR (8.14.2019) SW Edits.docx |

Peter and Brandon,

Please see Plaintiff's email below.

Thanks,

**Derek S. Hammond**
Assistant United States Attorney
United States Attorney's Office
District of Columbia
555 Fourth Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-2511
Email: Derek.Hammond@usdoj.gov

**From:** Stuart Wilcox <stuart.wilcox5@gmail.com>
**Sent:** Wednesday, August 14, 2019 12:26 PM
**To:** Hammond, Derek (USADC) <DHammond@usa.doj.gov>
**Subject:** Re: EcoRights v. EPA, 19-0980

Hello Derek,

Thank you for getting back to me and for providing a draft of the JSR. I have had a chance to discuss with my client and our minor edits to the draft JSR are attached. If you have no further changes then you have our permission to file.

We had intended our clarifications in the proposal we sent to you to be the "further guidance" we had referenced, but we are happy to assist more to the extent we are able. However, please recognize that we do not yet have all of the information necessary to answer all of your questions, hence our belief that it is most effective and efficient to task the people within EPA that would have the answers to complete a search.

Please see below for my feedback on your requests for further clarification.

Stuart

Part 3

We are glad that the list of people we provided is a helpful starting point in EPA's search for records. We do not believe that the list we provided is comprehensive. However, we presently do not know the names of any additional employees that have been subject to these types of reassignments. We anticipate that this is

1

information that would be within the possession of the Office of Personnel and Management and/or any other office and/or individual at EPA that works on human resources issues, which may include the Office of Ethics or Office of Inspector General given the nature of these actions. Consultation with these offices is thus likely necessary to complete this part of the request.

Part 4

Again, as with Part 3, we do not have further names of individuals and anticipate that EPA is in a better position to locate those individuals than we are. With respect to the type of records we are seeking, we emphasize that our request is intended to target and will be satisfied by whatever documents in EPA's possession are sufficient to explain any *discretionary* decisions by former Administrator Pruitt or other high officials within the Office of the Administrator to increase or decrease the pay of particular members of EPA staff, to change the assignments of members of EPA staff to new positions or new duties, and to hire or terminate particular members of EPA staff. We emphasize that we are not requesting routine personnel files or tracking of personnel matters other than those relating to discretionary decisions by former Administrator Pruitt or other high officials within the Office of the Administrator. Furthermore, if any single document or set of documents thoroughly explains the nature of and rationale for former Administrator Pruitt's or other high official's decisions in this respect, we do not need each and every document referring to the related personnel action. Thus, if a memorandum or email message memorialized former Administrator Pruitt's decision to increase the salary of a given individual and by how much, we would not need the companion routine personnel records noting the change in compensation. As a personnel matter, we anticipate that, as with Part 3, those records would be within the possession of the Office of Personnel and Management and/or any other office and/or individual at EPA that works on human resources issues, which may include the Office of Ethics or Office of Inspector General given the nature of these actions. Consultation with these offices is thus likely necessary to complete this part of the request.

Part 6

We continue to request Administrator Wheeler's calendar, meeting schedule, meeting notes, and attachments to these items. We are not requesting correspondence related to individual decisions to redact portions of the calendar in response to FOIA requests. What we are seeking is more general advice, policy, practice, or intentions to completely remove mention of any item(s) from Administrator Wheeler's calendar such that there would be no evidence the meeting or activity had ever occurred. For example, we are not requesting communications about whether to black out an entry or part of an entry under (b)(5), but we are requesting any records related to entirely omitting anything such that it would not be obvious that anything was ever there or that a meeting, action, or other item ever occurred.

Part 7

What we are looking for is records that would lay out the evidence gathered with regard to the investigations, conclusions based on that evidence, and the current status of the investigations (i.e. whether they are ongoing or have been concluded, and, if concluded, the results and any decisions or actions required, recommended, or otherwise flowing from the conclusions). We anticipate that this could be accomplished by asking the people in charge of the investigation to provide these categories of records and that this would actually be a rather discrete set of records.

Part 8

We disagree that unpublished internal drafts of these regulations would not be responsive to this request because they were not circulated to or directed to EPA staff prior to publishing. Unpublished internal drafts would of course necessarily be circulated to and/or written by EPA staff. EcoRights does request that EPA produce unpublished internal drafts of these regulations as well as memoranda and discussion accompanying or

recommending draft regulatory provisions.  We note that EPA asserts that such drafts "are generally privileged."  However, even if a draft were arguably or conceivably within a FOIA exemption, the FOIA Improvement Act of 2016 makes it plain that EPA cannot withhold documents simply because they are within an exemption, it must also show that releasing them would cause "foreseeable harm."  Should EPA wish to withhold these records, it would thus have to show that they were both within a FOIA exemption and that their release would cause foreseeable harm.  A blanket foreseeable harm claim, or a failure to consider the foreseeable harm requirement before withholding information, would be improper, as it would render the FOIA Improvement Act of 2016 a nullity.  Additionally, any segregable factual information must be released.  If EPA elects to withhold any material responsive to this request pursuant to a FOIA exemption, we intend to scrutinize its basis for doing so on these grounds.

Part 10

We think the instructions provided in the four subparts to Part 10 are quite specific and prescriptive and we do not see any way to further explain these very specific instructions.  For example, there should be no ambiguity in subparagraph a.'s request for the five pages of records that Elizabeth White referred to in paragraph 6 of her declaration.  Similarly, there should be no ambiguity in subparagraph c.'s request for all documents constituting, memorializing, or describing instructions given to employees on how to conduct the searches referred to in paragraphs 4-8 of the White declaration.  Provided that EPA follows these four directions, it may deem the request satisfied.  If EPA has any specific questions about these instructions, we will be happy to attempt to answer them.

On Wed, Aug 14, 2019 at 7:04 AM Hammond, Derek (USADC) <Derek.Hammond@usdoj.gov> wrote:

Hi Stuart,

I just wanted to touch base to see where things stand on today's JSR.

Thanks,

**Derek S. Hammond**

Assistant United States Attorney

United States Attorney's Office

District of Columbia

555 Fourth Street, N.W.

Washington, D.C. 20530

Phone: (202) 252-2511

Email: Derek.Hammond@usdoj.gov

**From:** Hammond, Derek (USADC)
**Sent:** Tuesday, August 13, 2019 10:42 AM
**To:** 'Stuart Wilcox' <stuart.wilcox5@gmail.com>
**Subject:** RE: EcoRights v. EPA, 19-0980

Hello Stuart,

Thank you for your proposal. In the interest of moving forward, the Agency is generally ready accept your proposed path forward as reflected in the attached draft JSR. I am not addressing the arguments made in your proposal because it is not necessary at this time.

When you propose that you will "provide further guidance on the records" you are seeking, to be provided to management level-staff and/or subject matter experts, do you propose providing guidance beyond the clarifications made in your last message? Or do those clarifications constitute the further guidance?

In either case, the Agency requests additional clarification on some portions of the request:

Part 3

Part 3 seeks records related to "reassigning" EPA staff. The request helpfully identifies particular individuals who would be the subject of a search. Can you please identify any current or former EPA staff beyond those listed in the request who would be the subject of a search, or confirm that the list you provided is comprehensive?

Part 4

For Part 4, the Agency also seeks clarification as to which current or former EPA staff are the subject of this part of your request. The request helpfully identifies a category of individuals, those who received raises under provisions of the Safe Drinking Water Act, that can help Agency staff search for records. Beyond this category of individuals, can you clarify whom else would be the subject of a search?

4

Additionally, EPA seeks clarification as to the types of records sought in this part of the request. Are you seeking routine HR records such as annual performance assessments or forms reflecting changes in positions that are added to personnel files? If not, can you please explain what types of records you are seeking?

Part 6

As written, Part 6 seeks records associated with processing FOIA requests related to Administrator Wheeler's calendar. The Administrator's calendar is a compilation of records that is the subject of many FOIA requests, as well as FOIA litigation. Searching for these records would be difficult and would likely result in an exceptionally voluminous collection. Furthermore, most records reflecting discussion concerning the application of particular FOIA exemptions to the Administrator's calendar is likely privileged. Given this context, could you further clarify the extent to which Part 6 seeks records related to the processing of the calendar as opposed to your request for the calendar itself?

Part 7

The Inspector General's office keeps files concerning its investigations and audits that can be searched to respond to this portion of your request. To expand the search to include email correspondence would require Boolean searching and likely result in the overcollection issues that you are seeking to avoid with your proposal. Could you offer some clarification as to the types of emails that you would consider to be responsive to this part of the request?

Part 8

The Agency would like to confirm its understanding of your clarification to Part 8. The clarified request seeks "draft and/or final EPA regulations." The Agency has recently published draft and final FOIA regulations. Unpublished internal drafts of these regulations that were used to develop the published publicly available draft and final regulations would not be responsive to this portion of the request because they were not circulated to or directed to EPA staff prior to publishing. Beyond not being responsive to the request as written, internal drafts of proposed regulatory language are generally privileged.

Part 10

Part 10 of the request seeks in part, "any documents (including emails) explaining any review by the Office of the Executive Secretariat and/or the Office of Public Affairs that was undertaken prior to release of documents responsive to EcoRights' February 1, 2017 FOIA request." The Agency would like clarification concerning the term "explaining." There is likely a large volume of emails concerning the processing of potentially responsive records, many of which, that are likely to be privileged given the litigation context. Could you provide some clarification as to what types of emails "explaining" review you would consider to be responsive, or could you narrow this portion of the request?

Next Steps

The Agency appreciates your clarifications and your proposal to move forward on processing this request. Please review the attached draft JSR and let me know if you have any edits. The Agency requests your clarification on the above portions of the request before filing the JSR. Please let me know if you would like to discuss.

**Derek S. Hammond**

Assistant United States Attorney

United States Attorney's Office

District of Columbia

555 Fourth Street, N.W.

Washington, D.C. 20530

Phone: (202) 252-2511

Email: Derek.Hammond@usdoj.gov

**From:** Stuart Wilcox <stuart.wilcox5@gmail.com>
**Sent:** Thursday, August 8, 2019 4:31 PM
**To:** Hammond, Derek (USADC) <DHammond@usa.doj.gov>
**Subject:** Re: EcoRights v. EPA, 19-0980

Hello Derek,

6

Thank you for the update.  Please see the attached file for our response as I wanted to preserve the formatting in that document.

Sincerely,

Stuart Wilcox

On Wed, Jul 31, 2019 at 4:17 PM Hammond, Derek (USADC) <Derek.Hammond@usdoj.gov> wrote:

Hi Stuart,

Below is an update on the volume of potentially responsive records and production schedule.

**Update on Volume of Potentially Responsive Records**

Parts 1-6, 9, 10

The Agency has located approximately 7,400 records potentially responsive to these portions of the request. The Agency expects that a significant portion of these records are not responsive but have been captured by various electronic searches. This is a total of 93,325 pages of records.

Part 7
Part 7 of the request seeks records from the Office of Inspector General. This Office has identified approximately 1500 pages of potentially responsive records.

Part 8

The Agency has located approximately 10,431 records potentially responsive to Part 8 of the request. This is a total of 117,784 pages of records.

This is a higher volume of records than expected, and the Agency has used tools such as email threading and deduplication to reduce what was a more voluminous initial collection. If EcoRights is able to narrow any portion of its multi-part request, the Agency may be able to reduce the review set and thus the response time. Please let me know if you think there may be any areas where we could narrow the request or if you would otherwise like to discuss the request generally.

7

**Production Schedule and Estimated Time of Completion**


The Agency plans to process the request at a rate of approximately 500 records per month.  In light of the volume of potentially responsive records, EPA expects to complete processing this request within 36 months.


Thanks,


**Derek S. Hammond**

Assistant United States Attorney

United States Attorney's Office

District of Columbia

555 Fourth Street, N.W.

Washington, D.C. 20530

Phone: (202) 252-2511

Email: Derek.Hammond@usdoj.gov