UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ECOLOGICAL RIGHTS FOUNDATION, **)** | |
| **)** | |
| Plaintiff, **)** | |
| **)** | |
| v. **)** | Civil Action No. 19-0980 (BAH) |
| **)** | |
| U.S. ENVIRONMENTAL PROTECTION **)** | |
| AGENCY, **)** | |
| **)** | |
| Defendant. **)** | |
| **)** | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORTS OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.   FACTUAL BACKGROUND ................................................................................1

II.  LEGAL BACKGROUND .................................................................................4

III. STANDARD OF REVIEW ...............................................................................6

IV.  ARGUMENT ....................................................................................................7

    A.   EPA entirely failed to address its redactions to dozens of records, thereby conceding they are improperly withheld....................................................7

    B.   EPA must produce the drafts of the "Awareness Review Memo" as well as the allegedly "non-responsive" information it has withheld from admittedly responsive records.........................................................................7

        1.   EcoRights' FOIA Request included drafts of the Awareness Review Memo and EPA has provided no basis on which to withhold those drafts .......................................................................................8

        2.   EPA wrongfully withheld allegedly non-responsive information from admittedly responsive records.................................................12

    C.   EPA has wrongfully invoked FOIA's exemptions to withhold information and records that are not exempt from disclosure .........................................15

        1.   EPA has wrongfully redacted many records under the deliberative process privilege that are neither predecisional nor deliberative...........................16

            a.   EPA has improperly redacted certain talking points and briefing materials under the deliberative process privilege........................17

            b.   EPA has improperly redacted certain additional attachments to Administrator Wheeler's calendar under the deliberative process privilege that are merely descriptive, not deliberative................................................................22

            c.   EPA failed to produce all reasonably segregable material from files it redacted under the deliberative process privilege......................22

        2.   EPA wrongfully redacted information under Exemption 6 where the public interest in disclosure easily outweighs the privacy interest, if any, in withholding ..............................................................................25

a.  EPA overstates the privacy interest in the travel and restaurant information from Administrator Wheeler's calendar and ignores the recent controversies at EPA that highlight the public interest in the disclosure of this information ...................................................27

b.  EPA's speculative privacy interest argument regarding the identity of members of Administrator Wheeler's personal security detail must yield to the public interest in the disclosure of this information.....................................................................................29

3.  EPA's attempt to withhold the identities of members of Administrator Wheeler's personal security detail under Exemption 7(C) fails for the same reasons as its attempts to do so under Exemption 6 and for the additional reason that the records at issue are not law enforcement records.....................................................................................................31

4.  Exemption 7(E) has no application to EPA's withholding of White House meeting locations ......................................................................................33

D.  EPA failed to show producing the challenged records would cause foreseeable harm ................................................................................................................34

V.  CONCLUSION............................................................................................................38

## TABLE OF AUTHORITIES

**Cases**

*Amadis v. Dep't of State,*
> No. 19-5088, 2020 U.S. App. LEXIS 26633 (D.C. Cir. Aug. 21, 2020)................................36

*ACLU v. CIA,*
> 892 F. Supp. 2d 234 (D.D.C. 2012) ...................................................................................6

*ACLU v. DOJ,*
> 655 F.3d 1 (D.C. Cir. 2011) ...........................................................................................26

*ACLU of Mass., Inc. v. Immigration & Customs Enf't,*
> No. 19-10690, 2020 U.S. Dist. LEXIS 50703 (D. Mass. Mar. 24, 2020)........................18, 37

*ACLU of N. Cal. v. FBI,*
> No. 12-03728, 2014 U.S. Dist. LEXIS 130501 (N.D. Cal. Sep. 16, 2014) ...........................10

*Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review,*
> 830 F.3d 667 (D.C. Cir. 2016) ........................................................................................14

*Arthur Anderson & Co. v. IRS,*
> 679 F.2d 254 (D.C. Cir. 1982) ........................................................................................21

*Associated Press v. Dep't of Defense,*
> 549 F.3d 62 (2d Cir. 2008)..............................................................................................27

*Bartko v. DOJ,*
> 898 F.3d 51 (D.C. Cir. 2018) .....................................................................................31, 32

*Carter v. Dep't of Commerce,*
> 830 F.2d 388 (D.C. Cir. 1987) ........................................................................................27

*Ctr. For Investigative Reporting v. Dep't of Interior,*
> No. 18-1599, 2020 U.S. Dist. LEXIS 61201 (D.D.C. April 7, 2020)..................................36

*Ctr. for Investigative Reporting v. Dep't of Labor,*
> 424 F. Supp. 3d 771 (N.D. Cal. 2019) ..............................................................................34

*Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.,*

  No. 18-2901, 2019 U.S. Dist. LEXIS 223077 (D.D.C. Dec. 31, 2019)................34, 35, 36, 38

*Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.,*

  436 F. Supp. 3d 90 (D.D.C. 2019) ...................................................................................36

*Chattler v. United States,*

  No. 07-4040, 2009 U.S. Dist. LEXIS 43304 (N.D. Cal. May 12, 2009)................................17

*Citizens for Responsibility & Ethics in Wash. v. Dep't of Homeland Sec.,*

  648 F. Supp. 2d 152 (D.D.C. 2009) ...................................................................................21

*Citizens for Responsibility & Ethics in Wash. v. DOJ,*

  846 F.3d 1235 (D.C. Cir. 2017) ..................................................................................5, 15

*Citizens for Responsibility & Ethics in Wash., et al., v. EPA,*

  19-cv-2181 (D.D.C.) ..........................................................................................................13

*Citizens for Responsibility & Ethics in Wash. v. Fed. Elec. Comm'n,*

  711 F.3d 180 (D.C. Cir. 2013) ............................................................................................5

*Coastal States Gas Corp. v. Dep't of Energy,*

  617 F.2d 854 (D.C. Cir. 1980) .............................................................................16, 20, 23

*Columbia Riverkeeper v. U.S. Army Corps of Eng'rs,*

  38 F. Supp. 3d 1207 (D. Or. 2014) ...................................................................................17

*Competitive Enter. Inst. v. Office of Sci. & Tech. Policy,*

  161 F. Supp. 3d 120 (D.D.C. 2016) ....................................................................................6

*Conservation Force v. Ashe,*

  979 F. Supp. 2d 90 (D.D.C. 2013) ......................................................................................8

*Dep't of Interior v. Klamath Water Users Protective Ass'n*

  532 U.S. 1 (2001) ................................................................................................................5

*DOJ v. Tax Analysts*

  492 U.S. 136 (1989) .....................................................................................................5, 15

iv

*Dep't of State v. Ray*,

  502 U.S. 164 (1991) ...................................................................................................26

*Dunkelberger v. DOJ*,

  906 F.2d 779 (D.C. Cir. 1990) ..................................................................................32

*EcoRights v. EPA*,

  18-cv-394 (N.D. Cal.) ..........................................................................................13, 15

*EcoRights v. FEMA*,

  No. 16-05254, 2017 U.S. Dist. LEXIS 197451 (N.D. Cal. Nov. 30, 2017) .......................4, 35

*Elec. Frontier Found. v. DOJ*,

  826 F. Supp. 2d 157 (D.D.C. 2011) ......................................................................17, 21

*Elec. Privacy Info. Ctr. v. DOJ*,

  511 F. Supp. 2d 56 (D.D.C. 2007) ...........................................................................17

*Ethyl Corp. v. EPA*,

  25 F.3d 1241 (4th Cir. 1994) ...................................................................................16

*Fiduccia v. DOJ*,

  185 F.3d 1035 (9th Cir. 1999) ...................................................................................6

*First Resort, Inc. v. Herrera*,

  No. 11-5534, 2014 U.S. Dist. LEXIS 34077 (N.D. Cal. Mar. 10, 2014)................................17

*Goland v. CIA*,

  607 F.2d 339 (D.C. Cir. 1978) ...................................................................................6

*Hall v. CIA*,

  668 F. Supp. 2d 172 (D.D.C. 2009) ...........................................................................6

*Hamdan v. DOJ*,

  797 F.3d 759 (9th Cir. 2015) .....................................................................................6

*In re Grand Jury Subpoena*,

  912 F.3d 623 (D.C. Cir. 2019) .................................................................................10

*In re Sealed Case*,

    121 F.3d 729 (D.C. Cir. 1997) ...................................................................................18, 23

*Inst. for Justice v. IRS*,

    941 F.3d 567, 571 (D.C. Cir. 2019) ................................................................................8, 9

*Jarvik v. CIA*,

    741 F. Supp. 2d 106 (D.D.C. 2010) ..................................................................................11

*Judicial Watch v. FDA*,

    449 F.3d 141 (D.C. Cir. 2006) ..........................................................................................16

*Judicial Watch v. Dep't of Commerce*,

    375 F. Supp. 3d 93 (D.D.C. 2019) ...............................................................................34, 36

*Judicial Watch v. DOJ*,

    No. 17-832, 2019 U.S. Dist. LEXIS 163473 (D.D.C. Sept. 24, 2019) ..................................34

*Judicial Watch v. Dep't of the Navy*,

    25 F. Supp. 3d 131 (D.D.C. 2014) .....................................................................................29

*Judicial Watch, v. Dep't of the Treasury*,

    802 F. Supp. 2d 185 (D.D.C. 2011) ...................................................................................23

*Judicial Watch v. USPS*,

    297 F. Supp. 2d 252 (D.D.C. 2004 ..............................................................................20, 23

*Judge Rotenberng Educ. Ctr., Inc. v. FDA*,

    376 F. Supp. 3d 47 (D.D.C. 2019) ...............................................................................26, 27

*Jurewicz v. Dep't of Agric.*,

    741 F.3d 1326 (D.C. Cir. 2014) .............................................................................25, 26, 27

*Kenney v. DOJ*,

    603 F. Supp. 2d 184 (D.D.C. 2009) ..................................................................................11

*Khatchadourian v. Def. Intelligence Agency*,

    No. 16-311, 2020 U.S. Dist. LEXIS 48009 (D.D.C. Mar. 19, 2020) ..............................17, 19

*Kowalczyk v. DOJ,*

    73 F.3d 386 (D.C. Cir. 1996) ................................................................12

*Leopold v. DOJ,*

    130 F. Supp. 3d 32 (D.D.C. 2015) ........................................................10

*MacNamara v. City of N.Y.,*

    No. 04-9216, 2007 U.S. Dist. LEXIS 28956 (S.D.N.Y. Apr. 20, 2007) ...........................18, 22

*Mayer, Brown, Rowe & Maw LLP v. IRS,*

    537 F. Supp. 2d 128 (D.D.C. 2008) ......................................................17

*McGehee v. DOJ,*

    362 F. Supp. 3d 14 (D.D.C. 2019) .........................................................6

*Multi Ag Media LLC v. Dep't of Agric.,*

    515 F.3d 1224 (D.C. Cir. 2008) ............................................................26

*Nation Magazine v. U.S. Customs Serv.,*

    71 F.3d 885 (D.C. Cir. 1995) ........................................................8, 9, 10

*Nat'l Archives & Records Admin. v. Favish,*

    541 U.S. 157 (2004) ............................................................................26

*Nat'l Ass'n of Home Builders v. Norton,*

    309 F.3d 26 (D.C. Cir. 2002) ...............................................................25

*Nat'l Inst. of Military Justice v. Dep't of Defense,*

    512 F.3d 677 (D.C. Cir. 2008) ........................................................16, 17

*NLRB v. Robbins Tire & Rubber Co.,*

    186 F.R.D. 154 (D.D.C. 1999) ..............................................................4

*NLRB v. Sears, Roebuck & Co.,*

    421 U.S. 132 (1975) ............................................................................37

*NRDC v. EPA,*

    No. 17-5928, 2019 U.S. Dist. LEXIS 124353 (S.D.N.Y. July 25, 2019) ...............................34

*NRDC v. EPA*,

    No. 17-5928, 2019 U.S. Dist. LEXIS 207268 (S.D.N.Y. Dec. 2, 2019) ...............................17

*N.Y. Times Co. v. Dep't of Defense*,

    499 F. Supp. 2d 501 (S.D.N.Y. 2007) ...............................................................................18

*Painting & Drywall Work Pres. Fund, Inc. v. Dep't Housing & Urban Dev.*,

    936 F.2d 1300 (D.C. Cir. 1991) ........................................................................................26

*Prop. of the People, Inc. v. OMB*,

    330 F. Supp. 3d 373 (D.D.C. 2018) ...................................................................................6

*Pub. Citizen, Inc. v. OMB*,

    598 F.3d 865 (D.C. Cir. 2009) ..........................................................................................19

*Rosenberg v. Dep't of Defense*,

    342 F. Supp. 3d 62 (D.D.C. 2018) ....................................................................................37

*Salas v. Office of the Inspector General*,

    577 F. Supp. 2d 105 (D.D.C. 2008) ..................................................................................26

*Shapiro v. CIA*,

    247 F. Supp. 3d 53 (D.D.C. 2017) ..............................................................................14, 15

*Stern v. FBI*,

    737 F.2d 84 (D.C. Cir. 1984) ............................................................................................32

*Tax Analysts v. IRS*,

    294 F.3d 71 (D.C. Cir. 2002) ............................................................................................31

*Tokar v. DOJ*,

    304 F. Supp. 3d 81 (D.D.C. 2018) ....................................................................................32

*Trea Senior Citizens League v. Dep't of State*,

    923 F. Supp. 2d 55 (D.D.C. 2013) ....................................................................................17

*Trea Senior Citizens League v. Dep't of State*,

    994 F. Supp. 2d 23 (D.D.C. 2013) ................................................................17, 18, 19, 23

*Truitt v. Dep't of State,*

    897 F.2d 540 (1990) ................................................................................................9

*United States v. El-Sherif,*

    No. 17-20006-01-JAR, 2018 U.S. Dist. LEXIS 124829 (D. Kan. July 26, 2018) ..................30

*United States v. Scaccia,*

    No. 11 CR 0533, 2012 U.S. Dist. LEXIS 82753 (N.D. Ill. June 8, 2012) .............................30

*United States v. Serafini,*

    826 F.3d 146 (4th Cir. 2016) ..............................................................................10

*United States v. Woods,*

    571 U.S. 31 (2013) ..........................................................................................10

*Vaughn v. Rosen,*

    523 F.2d 1136 (D.C. Cir. 1975) ..........................................................................16

*Wilderness Soc'y v. Dep't of Interior,*

    344 F. Supp. 2d 1 (D.D.C. 2004) .............................................................21, 23, 25

*Wolf v. CIA,*

    473 F.3d 370 (D.C. Cir. 2007) ...............................................................................6

## **Statutes**

5 U.S.C. § 552(a)(3)(A) ..............................................................................................5

5 U.S.C. § 552(a)(6)(A)(i) .......................................................................................2, 5

5 U.S.C. § 552(a)(8)(A)(i) ......................................................................................5, 34

5 U.S.C. § 552(b) ...................................................................................................5, 23

5 U.S.C. § 552(b)(5) .....................................................................................................2

5 U.S.C. § 552(b)(6) ................................................................................................2, 25

5 U.S.C. § 552(b)(7)(C) ...........................................................................................2, 31

5 U.S.C. § 552(b)(7)(E) ......................................................................................2, 32, 33

**<u>Other Authorities</u>**

Fed. R. Civ. P. § 56(c) .................................................................................................6

162 Cong. Rec. H3717 (2016) ....................................................................................34

H.R. Rep. No. 114-391 ...............................................................................................35

S. Rep. No. 813 ..........................................................................................................16

S. Rep. No. 114-4.............................................................................................34, 35, 38

Despite the fact that Defendant Environmental Protection Agency's ("EPA") final determination was due nearly two years ago for Ecological Rights Foundation's ("EcoRights") Freedom of Information Act ("FOIA") request ("FOIA Request"), EcoRights has still yet to receive a full production of records responsive to that Request. Instead of promptly producing all non-exempt records, as EPA is required by law to do, EPA has instead continued its heavy handed, baseless redactions of records to which no FOIA exemption applies and production of which would cause EPA no foreseeable harm. Only after EcoRights challenged EPA's purportedly final production of records, made long after EcoRights filed this lawsuit, did EPA release hundreds of additional records and remove thousands of wrongful redactions to records it had already produced. However, EPA has continued to refuse to produce a significant amount of wrongfully withheld information, even failing to offer any support whatsoever for scores of redactions. Through this Cross-Motion for Summary Judgment, EcoRights respectfully requests that the Court order production of this wrongfully withheld information so that EcoRights will finally have a complete production of records responsive to its FOIA Request. EPA's intransigence in the face of its clear duties under FOIA, repeatedly pointed out by EcoRights during conferral both before and during litigation, should not be allowed to stand.

## I.      FACTUAL BACKGROUND

EcoRights submitted the FOIA Request to EPA on August 30, 2018. Dkt. 1-1. The FOIA Request covers several topics, which can generally be described as (1) whether certain policies, practices, and procedures have continued at EPA since former Administrator Scott Pruitt resigned in July 2018, (2) EPA Inspector General

investigations of former Administrator Pruitt, (3) current Administrator Andrew Wheeler's calendar and meeting notes since July 2018, (4) EPA's policies, practices, and procedures for processing FOIA requests generally, (5) the specific processing of a separate FOIA request EcoRights submitted to EPA that is currently in litigation in the U.S. District Court for the Northern District of California, and (6) EPA's procedures or protocols for engaging with the press media under the Trump Administration. Declaration of Stuart Wilcox ("Wilcox Decl.") ¶ 3; Dkt. 1-1; Dkt. 19-2 ¶ 1. EPA's determination on the FOIA Request was due 20 business days after submission, on September 28, 2018. 5 U.S.C. § 552(a)(6)(A)(i).

On March 13, 2019, still having received no final determination, estimated completion date, or responsive records, EcoRights' counsel reached out to EPA, stating its intention to file a lawsuit challenging EPA's actions and inactions regarding the FOIA Request in one week unless the parties could quickly provide for an efficient resolution of the FOIA Request. Wilcox Decl. ¶ 7, Ex. 3. Despite EPA's final determination on the FOIA Request being nearly 5 months overdue at that point, EPA's declaration indicates that EPA had not even begun its search for records at that time. Dkt. 19-2 ¶ 6 ("Around [March 15, 2019] I began reaching out to subject matter experts in some of the relevant program offices to begin searching for potentially responsive non-calendar records."). On March 15, 2019, EPA produced its first interim production of records; three calendar files with many redactions under claims that the material was exempt from production under 5 U.S.C. § 552(b)(5), (b)(6), (b)(7)(C), and (b)(7)(F) (FOIA Exemptions 5, 6, 7(C), and 7(F)). Wilcox Decl. ¶ 8, Ex. 4. EcoRights repeatedly disputed the propriety of these redactions and attempted to encourage EPA to agree to a production schedule and

estimated completion date for the FOIA Request. *Id.* ¶¶ 9, 10, 11, 13, 15, 17, 18, 19, 20, Exs. 5, 6, 8, 10, 12, 14, 15, 16. However, EPA continued to refuse to agree to any schedule for the resolution of the FOIA Request and continued to produce records with wrongful redactions that mirrored those that EcoRights had already objected to. *Id.* ¶¶ 12, 16, 17, 18, 19, 20, Exs. 9, 13, 14, 15, 16.

Based on the lack of progress on these crucial items, and several others, EcoRights determined that judicial intervention was necessary and filed this lawsuit on April 8, 2019 asserting five challenges: (1) that EPA had failed to timely respond to the FOIA Request and that this was a constructive denial and wrongful withholding of records, (2) that EPA wrongfully withheld records that were not subject to a FOIA exemption, (3) that EPA failed to conduct an adequate search for records, (4) that EPA failed to use a FOIA tracking system, and (5) that EPA failed to provide EcoRights with an estimated completion date for the FOIA Request. Dkt. 1. EcoRights amended its complaint on April 15, 2019 to add a sixth claim alleging that EPA has a pattern or practice of violating FOIA. Dkt. 7.

On July 31, 2019, EPA indicated that it had completed its search and located 212,609 pages of potentially responsive records. EPA proposed that it release 500 records per month for 36 months. Wilcox Decl. ¶ 25, Ex. 18. Under this schedule, EcoRights could not expect a final production of records until nearly two years from today. EcoRights rejected this proposal, stating that it was far too slow, amongst other issues. EcoRights proposed an alternative process whereby it provided further guidance regarding the FOIA Request and asked EPA to provide this guidance to subject matter experts and employees with knowledge of the requested items so that they could search

for records. EcoRights proposed that the new search be completed in one month and that EPA then produce all responsive records within six months from that date. *Id.* ¶ 26, Exs. 19, 20. The parties subsequently agreed to this proposal and informed the Court of this agreement on August 14, 2019. *See* Dkt. 13.

EPA subsequently produced records through a series of interim productions, purporting to culminate production and provide an index of records on March 25, 2020. Wilcox Decl. ¶ 28, Exs. 22, 23, 24. The parties subsequently communicated about several areas of disagreement regarding records EcoRights maintained were missing and redactions that EcoRights maintained were improper. *Id.* ¶¶ 29-36, Exs. 25-30. EPA produced supplemental productions of records, providing hundreds of additional records and removing thousands of improper redactions, on June 10, 2020, July 10, 2020, and August 13, 2020. *Id.* ¶¶ 30, 33, 36, Exs. 26, 28, 30. EPA filed its Motion for Summary Judgment on August 17, 2020, Dkt. 19, and then provided EcoRights with a fourth final supplemental production of records afterward on August 18, 2020. Wilcox Decl. ¶ 37, Ex. 31. The parties continue to dispute whether EPA's production of records to date is complete and whether the redactions that EPA claims for the records it has produced thus far are proper.

## II.    LEGAL BACKGROUND

FOIA's goal is to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). FOIA effectuates this purpose by providing citizens with a judicially enforceable right to secure information from the government. *See, e.g., EcoRights v. FEMA*, No. 16-

05254, 2017 U.S. Dist. LEXIS 197451, at *7 (N.D. Cal. Nov. 30, 2017).

To ensure that the public can timely acquire current information on the government's activities, Congress imposed a mandatory deadline whereby agencies must issue a final determination informing the requester whether requested records will be released, and of the right to appeal any decision not to provide requested records, within twenty working days. 5 U.S.C. § 552(a)(6)(A)(i); *see also Citizens for Responsibility & Ethics in Wash. v. Fed. Elec. Comm'n*, 711 F.3d 180, 186-89 (D.C. Cir. 2013). FOIA further requires agencies to produce requested records "promptly." 5 U.S.C. § 552(a)(3)(A); *CREW v. FEC*, 711 F.3d at 188 (prompt record production "typically would mean within days or a few weeks of a 'determination,' not months or years.").

FOIA requires that an agency release *all* requested records unless they fall under a specifically enumerated exemption. 5 U.S.C. § 552(b). "Consistent with the Act's goal of broad disclosure, these exemptions have been consistently given a narrow compass." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (citation omitted). The FOIA Improvement Act of 2016 ("FIA") further tightened this stringent standard with the new requirement that agencies must show, not only that withheld records fall within an exemption, but that disclosure would harm an interest protected by an exemption—what is referred to as the "foreseeable harm standard." 5 U.S.C. § 552(a)(8)(A)(i).

Agencies bear the burden to prove that any withheld records are properly exempt from disclosure and the Court reviews the agencies' withholding determinations *de novo*. *See, e.g., DOJ v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989); *Citizens for Responsibility*

*& Ethics in Wash. v. DOJ*, 846 F.3d 1235, 1240 (D.C. Cir. 2017).[1] Agencies "must

provide enough information, presented with sufficient detail, clarity, and verification, so

that the requester can fairly determine what has not been produced and why, and the court

can decide whether the exemptions claimed justify the nondisclosure." *Fiduccia v. DOJ*,

185 F.3d 1035, 1043 (9th Cir. 1999).

### III.     STANDARD OF REVIEW

Summary judgment is appropriate "if … there is no genuine issue as to any

material fact and … the moving party is entitled to a judgment as a matter of law." Fed.

R. Civ. P. § 56(c). "To prevail on a motion for summary judgment, an agency must

demonstrate that 'each document that falls within the class requested either has been

produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection

requirements.'" *Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 161 F. Supp. 3d

120, 127-28 (D.D.C. 2016) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

"This burden does not shift even when," as here, "the requester files a cross-motion for

summary judgment." *Prop. of the People, Inc. v. OMB*, 330 F. Supp. 3d 373, 380 (D.D.C.

2018) (citation omitted).

---

[1] EPA attempts to gain undue deference by saying that its declarations are entitled to
"substantial weight," and its withholdings should be deemed sufficient if "logical" or
"plausible." Dkt. 19-1 at 11. However, this is not the standard. EPA relies on *Wolf v. CIA*,
473 F.3d 370, 374 (D.C. Cir. 2007) for this proposition, but the D.C. Circuit in *Wolf*
reiterated the *de novo* standard of review and its recitation of the applicable legal
standards was limited to the national security context. *See also, e.g., Hamdan v. DOJ*,
797 F.3d 759, 769 (9th Cir. 2015) (recognizing limitation); *ACLU v. CIA*, 892 F. Supp.
2d 234, 241-42 (D.D.C. 2012); *Hall v. CIA*, 668 F. Supp. 2d 172, 188 (D.D.C. 2009);
*McGehee v. DOJ*, 362 F. Supp. 3d 14, 20 (D.D.C. 2019). This is not a national security
case.

## IV.     ARGUMENT

### A. EPA entirely failed to address its redactions to dozens of records, thereby conceding they are improperly withheld.

EPA's Vaughn index, supporting declaration, and briefing entirely failed to address dozens of records that EPA redacted. EPA does not address at least 41 attachments to Administrator Wheeler's calendar that EPA withheld in full or in part under Exemption 5, *see* Wilcox Decl. ¶ 39, Ex. 32; EPA does not support its decision to redact ED_004712_00017738 under Exemptions 5, 6, or 7(F), *see* Wilcox Decl. ¶ 40, Ex. 33; and EPA does not support its decision to redact ED_004712_00018131 under Exemption 5, *see* Wilcox Decl. ¶ 41, Ex. 34. EcoRights did not agree to forego challenging these records at any time during the conferral process with EPA and EPA has provided no basis on which it can withhold these records. As a result, EPA has failed to meet its burden to withhold this information and has effectively conceded that these disputed records are improperly withheld. EPA must produce these records.

### B. EPA must produce the drafts of the "Awareness Review Memo" as well as the allegedly "non-responsive" information it has withheld from admittedly responsive records.

EPA mischaracterizes the nature of the parties' dispute regarding EPA's failure to produce drafts of EPA's November 16, 2018 memorandum entitled Awareness Notification Process for Select Freedom of Information Act Releases ("Awareness Review Memo") and to produce allegedly non-responsive portions of admittedly responsive records in an attempt to improperly insert the more deferential standard for assessing the adequacy of an agency's search for records. Dkt. 19-1 at 4-11 (attempting to frame these as adequacy of search issues). However, try as it may, EPA cannot escape the

*de novo* standard of review properly applied to these disputes by binding D.C. Circuit precedent and must produce these improperly withheld records.

> ### 1. EcoRights' FOIA Request included drafts of the Awareness Review Memo and EPA has provided no basis on which to withhold those drafts.

EPA has improperly refused to provide drafts of the Awareness Review Memo, incorrectly stating that Subpart 8 of the FOIA Request (hereinafter "Subpart 8") only requested records widely circulated to EPA employees, not drafts. Dkt. 19-1 at 8-9. While the FOIA Request certainly included the records EPA produced—including the final Awareness Review Memo, which EPA does not dispute was properly produced under Subpart 8—it was not limited to them. The dispute is therefore properly understood as relating to whether EcoRights' FOIA Request covered these draft records—the scope of the request—not whether EPA's search failed to locate specific files—the adequacy of EPA's search.

Scope of request and adequacy of search are two distinct inquiries with two distinct standards of review, and determinations on scope of request, the dispute here, are made *de novo* with no deference to the agency. *See, e.g., Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 889-90 (D.C. Cir. 1995) (determining scope of request with no deference to agency interpretation and then subsequently, in a separate section, considering adequacy of search); *Inst. for Justice v. IRS*, 941 F.3d 567, 571, 572-73 (D.C. Cir. 2019) (directing district court on remand to determine scope of request *and only then* to determine adequacy of search); *Conservation Force v. Ashe*, 979 F. Supp. 2d 90, 97 (D.D.C. 2013) ("To evaluate the adequacy of an agency's search, a court must first review the record *de novo* to ensure that the agency properly ascertained the scope of

the FOIA request."). EcoRights' FOIA Request, as written, made clear that EcoRights' was requesting a set of records that included drafts of the Awareness Review Memo. However, even if that were not clear at the outset, which EcoRights disputes, the subsequent, extensive clarification discussions amongst the parties removed any possible doubt as to this point long ago.

Subpart 8 of EcoRights' FOIA Request explicitly sought "*all documents constituting, memorializing, explaining or commenting upon* the following:… any instructions, directive, plan, policy, practice, or memorandum to EPA staff concerning how to review and/or respond to" FOIA requests (hereinafter "Subpart 8"). Dkt. 19-6 at 2-4 (emphasis added). The Awareness Review Memo sets out EPA's policy of providing politically sensitive FOIA records to EPA political appointees before they are released to the public. *See* Wilcox Decl. ¶¶ 49-50, Exs. 44, 45. The Awareness Review Memo is clearly within the set of records covered by Subpart 8, EPA produced the Memo in response to Subpart 8, and EPA does not dispute that Subpart 8 covers the final version of the Memo. However, EPA's argument that drafts of the Awareness Review Memo were not included in EcoRights' request completely ignores the above, italicized language, which applies to all following subparts of the Request, including Subpart 8. In short, EPA's overly narrow reading of the FOIA Request is at odds with the plain language of the Request and is contrary to what has been well settled law for at least 30 years, that agencies have "a duty to construe … FOIA request[s] liberally." *See, e.g., Nation Magazine*, 71 F.3d at 890 (citing, e.g., *Truitt v. Dep't of State*, 897 F.2d 540, 545 (1990) (discussing "liberal standard for identification" of records)); *Inst. for Justice*, 941 F.3d at 572.

First, it is tautological that the word "all" means "all" and admits of no exceptions. *See, e.g., In re Grand Jury Subpoena*, 912 F.3d 623, 628 (D.C. Cir. 2019) ("'All' means 'all'; the provision contains no carve-out…"); *United States v. Serafini*, 826 F.3d 146, 150 (4th Cir. 2016) ("[T]he use of the word 'all' [as a modifier] suggests an expansive meaning because 'all' is a term of great breadth."). In addition, the word "or" is disjunctive, "that is, the words it connects are to 'be given separate meanings.'" *United States v. Woods*, 571 U.S. 31, 45-46 (2013) (citation omitted). As a result, the FOIA Request is properly read to include *every* record that constitutes, memorializes, explains, *or* comments on any of the categories of information in the subparts of the FOIA Request, including Subpart 8. EPA does not dispute that Subpart 8 includes the Awareness Review Memo, and EPA's reading eliminating drafts from the scope of the FOIA Request fails to give effect to the words that EcoRights used. The expansive, inclusive language EcoRights used was "sufficient to alert" EPA that EcoRights sought drafts of the Awareness Review Memo. *See Nation Magazine*, 71 F.3d at 890.

Second, even if the language used in Subpart 8 were not enough to alert EPA to the fact that EcoRights sought draft documents, the subsequent communications between the parties removed any basis for doubt, reasonable or otherwise. Subsequent communications between the parties to a FOIA dispute are routinely used to clarify the scope of FOIA requests, which oftentimes requires the agency to produce more records even after a purportedly final production has been made. *See, e.g., ACLU of N. Cal. v. FBI*, No. 12-03728, 2014 U.S. Dist. LEXIS 130501, at *2-3 (N.D. Cal. Sep. 16, 2014) (request clarified after complete production during litigation, resulting in production of additional records); *Leopold v. DOJ*, 130 F. Supp. 3d 32, 43 (D.D.C. 2015) (discussing

clarification); *Jarvik v. CIA*, 741 F. Supp. 2d 106, 115 (D.D.C. 2010); *Kenney v. DOJ*, 603 F. Supp. 2d 184, 188 (D.D.C. 2009). Indeed, in the course of negotiating the production schedule in this case, EcoRights provided additional guidance to EPA on August 8, 2019 relating specifically to Subpart 8 that explicitly stated that drafts were within the scope of this section. *See* Wilcox Decl. ¶ 26, Ex. 19 ("**This would include any draft and/or final EPA regulations implementing FOIA and any records related thereto.**") (emphasis in original). In subsequent communications, EcoRights continued to maintain that drafts of Subpart 8 records were within the scope of the FOIA Request. *Id.* ¶ 26, Ex. 20. However, upon receiving EPA's purported final production of records, EcoRights became aware of at least two categories of records that EPA had failed to produce. *Id.* ¶ 29, Ex. 25 at 1-2, 4. Namely that EPA had omitted attachments to Administrator Wheeler's calendars and drafts of the Awareness Review Memo. *Id.* EcoRights communicated these shortcomings, amongst other issues, to EPA on April 23, 2020. *Id.*

EPA, by searching for and producing the attachments to Administrator Wheeler's calendar after EcoRights' April 23, 2020 communication implicitly accepted that this was still a proper time to clarify the FOIA Request and have EPA produce additional records, but then inexplicably refused to produce the drafts of the Awareness Review Memo. *Id.* ¶¶ 30-31, Exs. 26, 27. EPA does not argue that it did not receive EcoRights' several gratuitous clarifications regarding drafts of Subpart 8 records, and the Awareness Review Memo in particular, or that it searched for drafts and did not locate specific files that EcoRights contends exist, its position is instead effectively that it does not want to produce these records. Dkt. 19-1 at 8-9. This is not acceptable.

EcoRights has made it abundantly clear that these Awareness Review Memo drafts are, and always have been, part of EcoRights' FOIA Request under Subpart 8. Regardless of whether EPA unreasonably misread the language of the FOIA Request when it was originally submitted to exclude these drafts or not, EPA may not now "ignore what it cannot help but know." *See Kowalczyk v. DOJ*, 73 F.3d 386, 389 (D.C. Cir. 1996). Based on the parties' extensive clarifying communications, even if EPA did not originally know drafts were within the scope of the FOIA Request, it could not "help but know" they were included no later than August 8, 2019 or, at the very latest, April 23, 2020.

Contrary to EPA's implication, EcoRights is not attempting to expand the FOIA Request. Indeed, it is clear that EcoRights has actually attempted to work with EPA to narrow the FOIA Request wherever possible. *See* Wilcox Decl. ¶ 26, Ex. 19 (narrowing several subparts of the FOIA Request, but also clarifying that Subpart 8 includes draft records). However, EcoRights did request, and continues to request, drafts of the Awareness Review Memo under Subpart 8. EPA has put no claim before the Court that these drafts are exempt from production, and EPA's failure to provide these records violates FOIA.

### 2. EPA wrongfully withheld allegedly non-responsive information from admittedly responsive records.

EPA's refusal to produce the allegedly non-responsive information in its admittedly responsive records here is inconsistent internally, is inconsistent with its recent practices, and is in violation of binding case law and DOJ guidance. EPA must produce this non-exempt information.

First, EPA's position is that the Administrator's calendar is saved in a program and that EPA's process of exporting that calendar to create a producible record is the source of the withheld, allegedly non-responsive, "header" and "footer" information. Dkt. 19-1 at 9-10. However, EPA's argument admits that this information is inextricably integrated into the record itself. As a result, EPA's explanation of the creation of the record is internally inconsistent with its position that this information is a separate record.

Second, EcoRights and EPA had a similar dispute in *EcoRights v. EPA*, 18-cv-394 (N.D. Cal.) with regard to similar headers and footers that were part of former Administrator Pruitt's calendar. *See* Wilcox Decl. ¶ 44. However, instead of digging in on this unsupported line of argument, EPA produced the wrongfully redacted information on June 4, 2020 without the need for litigation. *Compare* Wilcox Decl. Exs. 36-38 (non-responsiveness redactions in place) *with* Wilcox Decl. Exs. 39-41 (non-responsiveness redactions removed). As a result, EPA's refusal to produce this wrongfully withheld information here is inconsistent with its response to the same Plaintiff pointing out virtually identical wrongful redactions to the same type of records just three months ago.[2]

---

[2] Notably, EPA's withholding of this information is also contrary to its position in *Citizens for Responsibility & Ethics in Wash., et al., v. EPA*, 19-cv-2181 (D.D.C.). In that consolidated case, EPA has denied Plaintiffs EcoRights and Our Children's Earth Foundation's claims that EPA's 2019 FOIA regulations illegally purport to allow it to redact allegedly non-responsive information from responsive records and has also repeatedly denied any intention to ever do so. *See id.* Wilcox Decl. ¶¶ 52-53, Ex. 48 at 38-45 (PDF pages, not footer numbered pages), Ex. 49 at 19-26 (PDF pages, not footer numbered pages). In fact, EcoRights discussed the non-responsiveness withholdings at issue in here in its summary judgment briefing in *CREW v. EPA* shortly before EPA took its strained position in this litigation. *See* Wilcox Decl. Ex. 49 at 19-20 (PDF pages, not footer numbered pages. This indicates that EPA's position now is merely a *post hoc* rationale provided in an attempt to avoid admitting that its non-responsiveness withholdings here are improper so that this information is not put before the Court in *CREW v. EPA*.

Third, EPA's withholdings here are contrary to binding D.C. Circuit precedent, which prohibits agencies from withholding non-responsive information from a responsive record absent a FOIA exemption on point. *Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*, 830 F.3d 667, 677 (D.C. Cir. 2016). This information is all part of the produced records, EPA's withholdings here "cannot be squared with [FOIA's] statutory scheme," and EPA's withholding of this information is prohibited by *AILA. See id.* at 670.

Finally, DOJ guidance, cited favorably in *AILA* (*Id.* at 678), clearly states, "[f]irst and foremost, information should not be determined to be beyond the scope of a request on less than a page-by-page basis. In other words, there should be no [responsiveness redactions] within any document page. If any of the information on a page of a document falls within the subject matter of a FOIA request, then that entire page should be included as within the scope of that request." Wilcox Decl. Ex. 35 at 3. This guidance also says that "[i]n any instance in which a requester disagrees [with a responsiveness determination], the document pages involved should be included *without question* by the agency." *Id.* (emphasis added). EPA's strained attempt to define "record" here in order to withhold information on less than a page-by-page basis is inconsistent with both FOIA and this DOJ guidance, especially after EcoRights has objected to such withholding.

The only case comparison that EPA cites in support of its position is *Shapiro v. CIA*, 247 F. Supp. 3d 53, 73-75 (D.D.C. 2017). EPA states "that the FBI did not violate *AILA* [in *Shapiro*] where it withheld non-responsive portions of a multi-topic document based on the FBI's determination of what constitutes a record," but *Shapiro* is readily distinguishable. Dkt. 19-1 at 10. In *Shapiro*, the Court upheld the FBI's decision to

segregate and produce a few discrete responsive pages from much larger non-responsive manuals and reports to avoid exponentially increasing the amount of time, labor, and cost required to review records for exemptions. 247 F. Supp. 3d at 74, 75. Here, the redacted information is on the very same page as the information EPA admits is responsive. In fact, ironically, EPA's redaction of this innocuous information was actually more work than just producing the information, which EPA nowhere contends is exempt from disclosure. In *Shapiro*, the FBI's position was also based on "long-standing practices and guidance from DOJ," *id.* at 74, but here EPA's parsing of responsiveness at less than the page level is inconsistent with the above-referenced DOJ guidance and indeed is inconsistent with how EPA treated this identical issue just three months ago in *EcoRights v. EPA*, 18-cv-394 (N.D. Cal.). *Shapiro* simply does not support EPA's position here.

   **C. EPA has wrongfully invoked FOIA's exemptions to withhold information and records that are not exempt from disclosure.**

   Notably, EPA has offered no argument in its briefing, *Vaughn* index, or supporting declaration that any of the records discussed until this point are subject to a FOIA Exemption. EPA has thereby conceded that the above records are not subject to any exemption(s). This is determinative as to those files because, as discussed above, it is EPA's burden to prove, subject to the Court's *de novo* review, that an exemption properly applies. *DOJ v. Tax Analysts*, 492 U.S. at 142 n.3; *CREW v. DOJ*, 846 F.3d at 1240. However, even where EPA has offered argument that an exemption applies to the records at issue, those arguments fail. Because EPA has failed to show that the records discussed below are exempt from disclosure, EPA's withholding of these records violates FOIA. As a result, EPA should be ordered to produce these wrongfully withheld records.

### 1.  EPA has wrongfully redacted many records under the deliberative process privilege that are neither predecisional nor deliberative.

The deliberative process privilege, the only Exemption 5 privilege that EPA claims for any disputed records, only protects records that are *both* predecisional *and* deliberative. *See, e.g., Nat'l Inst. of Military Justice v. Dep't of Defense*, 512 F.3d 677, 680 n.4 (D.C. Cir. 2008). To determine whether a record is predecisional, the Court simply looks to whether it "was generated before the adoption of *an agency policy.*" *Judicial Watch v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) (emphasis added). This creates a hard temporal cutoff at the time of an agency's policy decision. Additionally, for a record to be deliberative, it "must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen,* 523 F.2d 1136, 1143-44 (D.C. Cir. 1975). In other words, "[t]he privilege does not protect a document which is merely peripheral to actual policy formation…" *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1248 (4th Cir. 1994). Furthermore, the D.C. Circuit has emphasized, time and again, "the narrow scope of Exemption 5 and the strong policy of the FOIA that the public is entitled to know what its government is doing and why." *See, e.g., Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980). Accordingly, "the exemption is to be applied 'as narrowly as consistent with efficient Government operation.'" *Id.* (quoting S. Rep. No. 813, 89th Cong., 1st Sess. 9 (1965)); *see also* Section IV.D, *infra* (discussing ongoing Congressional concern with abuse of Exemption 5 and ongoing attempts to constrain its use further).

### a. EPA has improperly redacted certain talking points and briefing materials under the deliberative process privilege.

Citing three district court cases, EPA states that talking points and briefing materials are categorically exempt from disclosure under the deliberative process privilege. Dkt. 19-1 at 16-17. However, EPA's attempt to create a blunt, bright line rule is contrary to law and should be ignored. The deliberative process privilege does not lend itself to bright line rules because it "is so dependent upon the individual document and the role it plays in the administrative process." *Elec. Frontier Found. v. DOJ*, 826 F. Supp. 2d 157, 167-68 (D.D.C. 2011). The question is not whether a record fits in some broadly defined category of records, as EPA contends, it is whether it is predecisional and deliberative. *Military Justice*, 512 F.3d at 680 n.4.[3] As a result, many courts have rejected agency invocations of the deliberative process privilege for these, and similar, types of records, whether labeled "draft" or not, where the agency has failed to prove the records meet the requirements that every record must meet in order to be withheld under the privilege.[4] EPA has failed to show that the specific records it has withheld are exempt and EPA must therefore produce these wrongfully withheld records.

---

[3] To the extent that the district court decisions EPA has identified purport to set out categorical rules regarding these, or any other, types of records, they are wrongly decided, conflict with binding precedent, are contrary to the deliberative process privilege, and should be ignored for the reasons discussed herein.

[4] *See, e.g., Trea Senior Citizens League v. Dep't of State*, 923 F. Supp. 55, 69 (D.D.C. 2013) ("*TREA I*"); *Trea Senior Citizens League v. Dep't of State*, 994 F. Supp. 2d 23, 36-38 (D.D.C. 2013) ("*Trea II*"); *Khatchadourian v. Def. Intelligence Agency*, No. 16-311, 2020 U.S. Dist. LEXIS 48009, at *85-89 (D.D.C. Mar. 19, 2020); *Mayer, Brown, Rowe & Maw LLP v. IRS*, 537 F. Supp. 2d 128, 139 (D.D.C. 2008); *Elec. Frontier Found.*, 826 F. Supp. 2d at 167-69 (D.D.C. 2011); *Elec. Privacy Info. Ctr. v. DOJ*, 511 F. Supp. 2d 56, 71 (D.D.C. 2007); *Chattler v. United States*, No. 07-4040, 2009 U.S. Dist. LEXIS 43304, at *4 (N.D. Cal. May 12, 2009); *First Resort, Inc. v. Herrera*, No. 11-5534, 2014 U.S. Dist. LEXIS 34077, at *12, 13-14 (N.D. Cal. Mar. 10, 2014); *Columbia Riverkeeper v. U.S. Army Corps of Eng'rs*, 38 F. Supp. 3d 1207, 1219-20 (D. Or. 2014); *NRDC v. EPA*

First, "[t]he deliberative process privilege does not shield documents that simply state or explain a decision the government has already made…" *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). However, EPA has tried to withhold numerous records that only explain policy decisions that it has already made.

For example, EPA withholds information that amounts to talking points and topics for discussion from records that Administrator used for telephone calls with Senator Tom Carper, Senator John Cornyn, Senator Tom Udall, Governor Kim Reynolds, Senator Lisa Murkowski, and a reporter for the Washington Examiner newspaper. *See* Wilcox Decl. ¶ 55, Ex. 51 (compiling ED_004712_00017552; ED_004712_00017727; ED_004712_00017816; ED_004712_00017838; ED_004712_00017961; ED_004712_00017919). EPA claims that it was able to withhold this information under the deliberative process privilege because it was predecisional and deliberative. *See* Dkt. 19-4 at 16-17, 19-20, 20-21, 21-22, 23-24, 22-23. However, none of these people have responsibility for setting EPA policy, and it appears that the conversations merely focused on policy decisions EPA had already made and introductions. EPA's position misrepresents the law, and these records are not exempt from disclosure.

Where talking points discuss decisions already made, this Court has held that they are not properly withheld under the deliberative process privilege because they are not predecisional to any actual agency decision. *See, e.g., Trea II*, 994 F. Supp. 2d at 36-38. Similarly, "a document that does nothing more than explain an existing policy [also]

("*NRDC v. EPA I*"), No. 17-5928, 2019 U.S. Dist. LEXIS 207268, at *3-6 (S.D.N.Y. Dec. 2, 2019); *ACLU of Mass., Inc. v. Immigration & Customs Enf't*, No. 19-10690, 2020 U.S. Dist. LEXIS 50703, at *18-20 (D. Mass. Mar. 24, 2020); *MacNamara v. City of N.Y.*, No. 04-9216, 2007 U.S. Dist. LEXIS 28956, at *6-13 (S.D.N.Y. Apr. 20, 2007); *N.Y. Times Co. v. Dep't of Defense*, 499 F. Supp. 2d 501, 513-15 (S.D.N.Y. 2007).

cannot be considered deliberative under Exemption 5." *Id.* at 35 (quoting *Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 876 (D.C. Cir. 2009)) (internal punctuation omitted). EPA's plan for how to spin a policy decision that it has already made, unlike the policy decision itself, is not a decision for deliberative process privilege purposes. Notably, as in *Trea II*, EPA has neither shown that these records predate, in whole or in part, any relevant agency policy decision that they discuss—that they are predecisional—nor that they were part of the decisionmaking process for any such decision—that they are deliberative. *See id.* at 36-38; *see also Pub. Citizen*, 598 F.3d at 875-76 (government may only redact those portions of a predecisional and deliberative record that are themselves a part of a deliberative policymaking process, not which recount or explain a current policy); *Khatchadourian*, 2020 U.S. Dist. LEXIS 48009, at *86-87 (detailed explanation required). As a result, EPA has failed to show it can withhold these records.

Similarly, EPA withheld portions of the "Key Messages," "Background," and "Talking Points" sections of a briefing paper that Administrator Wheeler used at a memorandum of understanding signing ceremony. Dkt. 19-4 at 14-15 (citing ED_004712_00017459). However, fatally, EPA does not state that this briefing paper was designed to formulate policy rather than to discuss the decision already reached. Indeed, the meeting here was to sign a memorandum of understanding, a decision that was made well in advance and certainly not on the spot at the signing ceremony. Tellingly, EPA characterizes the alleged decision here as the content of remarks, not the content of the memorandum of understanding, which was the actual relevant policy

decision. As a result, this record cannot be predecisional or deliberative as required for invocation of the deliberative process privilege.[5]

EPA has also withheld in full Administrator Wheeler's talking points for the Emperor of Japan's birthday party. *See* Dkt. 19-4 at 11-12 (citing ED_004712_00005385). While this is wrong for the same reasons as for EPA's redactions of other talking points, it is an even starker example of why EPA's position is cannot be right. To be clear, what to say at someone's birthday party is not a cognizable policy decision for deliberative process privilege purposes, even if this includes the "decision" to discuss some actual, already made policy decisions. If such records were exempt under the deliberative process privilege, seemingly any agency "decision," no matter how innocuous or removed from its policymaking functions, could be exempt. As a result, this information can be neither predecisional nor deliberative and is a prime example of EPA's heavy-handed, unsupported redactions throughout these records.

Second, EPA has not shown that these "drafts," even if they would have otherwise been exempt, were not adopted by EPA or used in its dealings with third parties.[6] This failure is fatal because, "even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal States*, 617 F.2d at 866; *Judicial Watch v. USPS*, 297 F. Supp. 2d 252, 261 (D.D.C. 2004) (making clear that either of these is sufficient grounds to lose privilege because "both

---

[5] EPA's attempt to withhold the corresponding entry for this event in Administrator Wheeler's calendar fails for the same reasons. *See* Dkt. 19-4 at 7-8 (discussing redaction to calendar entry for July 11, 2018 from 9:30-10:00 AM).

[6] For example, though EPA says that ED_004712_00004639 was not the final agency decision, it does not say that no portion of this record was adopted by the Agency. *See* Dkt. 19-4 at 10.

actions involve the exposure of the withheld documents to third parties."). Indeed, in discussing "drafts" of "talking points" and "briefing materials," this Court has previously stated that "[t]hese document designations are significant because the likelihood that briefing materials and talking points have been relied upon or adopted as official positions after their preparation is particularly high." *Elec. Frontier Found.*, 826 F. Supp. 2d at 171 (citation and internal punctuation omitted). EPA has entirely failed to address these issues and has therefore failed to meet its burden with regard to these records.[7]

Because EPA has failed to show that these records are predecisional and deliberative, as is required for invocation of the deliberative process privilege, EPA must produce the records. In the alternative, to the extent the Court determines that any portion of these records is exempt, EPA must produce all non-exempt portions of these records, as discussed in the segregability section below. The latter course of action may require *in camera* review given that EPA's heavy-handed redactions have removed all relevant information from these records in most circumstances.

---

[7] This possibility of records losing their exempt status also further undercuts EPA's numerous attempts to bootstrap its deliberative process privilege claims by stating that the records say "draft," "not for distribution," etc., because these statements are all irrelevant in determining whether a record is exempt. *See, e.g., Arthur Anderson & Co. v. IRS*, 679 F.2d 254, 257 (D.C. Cir. 1982) ("The designation of . . . documents . . . as 'drafts' does not end the inquiry, however. *Coastal States* [, 617 F.2d at 866,] forecloses the . . . argument that any document identified as a 'draft' is per se exempt."); *Citizens for Responsibility & Ethics in Wash. v. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152, 161-62 (D.D.C. 2009); *Wilderness Soc'y v. Dep't of Interior*, 344 F. Supp. 2d 1, 14 (D.D.C. 2004). If the record is not exempt to begin with, writing "draft" on it does not make it so.

### b. EPA has improperly redacted certain additional attachments to Administrator Wheeler's calendar under the deliberative process privilege that are merely descriptive, not deliberative.

In addition to the records discussed above, EPA has also failed to show that several other attachments to Administrator Wheeler's calendar that it redacted under the deliberative process privilege are predecisional and deliberative.

First, EPA has attempted to withhold a bare "list of topics" in an agenda for a meeting. Dkt. 19-4 at 15 (citing ED_004712_00017471). However, EPA does not identify any specific decision this relates to and this bare list of topics would not expose any deliberations. This agenda "merely state[s] that certain issues were discussed" and is "descriptive rather than deliberative" as it does not contain personal opinions or recommendations of the meeting attendees. *See MacNamara*, 2007 U.S. Dist. LEXIS 28956, at *6-8. As a result, EPA must produce this withheld record.

Similarly, EPA improperly redacts the issue and timeline sections of a briefing document. Dkt. 19-4 at 12-13 (citing ED_004712_00005410). However, these pieces of information only identify the issue for decision, not the resolution of that decision, and the expected timeline for resolution. These are descriptive and factual pieces of information, not deliberative ones.

### c. EPA failed to produce all reasonably segregable material from files it redacted under the deliberative process privilege.

In the alternative, should the Court determine that any portion of the challenged withheld records are subject to Exemption 5, it should still order EPA to produce the segregable non-exempt portions of those records. FOIA does not allow agencies to withhold "reasonably segregable" information from a responsive, but partially exempt,

record. 5 U.S.C. § 552(b). To meet its burden to show that no reasonably segregable information exists, the agency "must provide a reasonably detailed justification rather than conclusory statements to support its claim that the non-exempt material in a document is not reasonably segregable." *Judicial Watch, v. Dep't of the Treasury*, 802 F. Supp. 2d 185, 198 (D.D.C. 2011) (citation omitted); *see also Wilderness Soc'y v. Interior*, 344 F. Supp. 2d at 18-19. As discussed, *supra*, EcoRights has identified multiple places where allegedly deliberative material includes factual material, such as material discussing decisions EPA has already made or a current policy, which is reasonably segregable and must be produced. *See* Section IV.C.1.a, *supra* (discussing ED_004712_00017552; ED_004712_00017727; ED_004712_00017816; ED_004712_00017838; ED_004712_00017961; ED_004712_00017919; ED_004712_00017459; ED_004712_00005385; ED_004712_00017471; ED_004712_00005410; ED_004712_00005438). This information is not exempt from disclosure and must be produced, even if the Court finds that any of these records contain some information that is properly withheld under the deliberative process privilege. *See, e.g., In re Sealed Case*, 121 F.3d at 737 ("[t]he deliberative process privilege does not shield documents that simply state or explain a decision the government has already made…"); *Trea II*, 994 F. Supp. 2d at 35 (explaining "a document that does nothing more than explain an existing policy cannot be considered deliberative under Exemption 5.") (citation and internal punctuation omitted); *Coastal States*, 617 F.2d at 866 ("even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public."); *Judicial Watch v. USPS*, 297 F. Supp. 2d at 261.

As one example, EPA fully redacts a briefing paper on the Lead and Copper Rule. Dkt. 19-4 at 13-14 (citing ED_004712_00005438). However this redaction is overbroad. As discussed above, EPA cannot redact information that merely restates a decision. Because this briefing paper would necessarily include information on the Rule as it presently stood at the time, EPA would have to produce that information at a minimum. Also, EPA would have to produce anything that was subsequently adopted as the Agency's policy as that would represent the culmination of the decisionmaking process, at least as to that aspect of the policy. EPA has not provided this information and its redactions therefore are in violation of FOIA.

In addition to the instances where EcoRights has identified segregable factual information, EPA has also failed to even actually allege that it has properly segregated non-exempt information from many of its records. EPA has often phrased its segregability claims in conditional terms that fail to demonstrate that it actually reviewed the records for segregable factual information at all. EPA repeatedly makes statements such as, "*[t]o the extent* any of the withheld information contains facts, they are inextricably intertwined…" with deliberative content. *See, e.g.*, Dkt. 19-4 at 6, 7, 11, 12, 13, 14, 15, 16, 18, 19, 20, 22, 23, 24, 27, 28, 29 (emphasis added). EPA's boilerplate language does not address whether the record actually contains any factual material and suggests that EPA did not undertake this analysis for each record, as it is required to do. Further, these repeated boilerplate assertions that the exempt and non-exempt information are inextricably intertwined lack the requisite detailed justification (such as a description of the facts and how they are purportedly inextricably intertwined with the exempt

portion of the record). *See, e.g., Wilderness Soc'y*, 344 F. Supp. 2d at 19.[8] EPA's single paragraph regarding segregability in its supporting declaration, *see* Dkt. 19-3 ¶ 68, is also of no help to it here because "a blanket declaration that all facts are so intertwined to prevent disclosure under the FOIA does not constitute a sufficient explanation of non-segregability." *See id.* As a result, EPA should be ordered to produce all reasonably segregable information in the withheld records for any records the court determines EPA may withhold in part. In the alternative, EcoRights requests that the Court review these records *in camera* and provide EcoRights with the reasonably segregable information from the records.

> **2. EPA wrongfully redacted information under Exemption 6 where the public interest in disclosure easily outweighs the privacy interest, if any, in withholding.**

Exemption 6 allows agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). To determine whether "disclosure would constitute a clearly unwarranted invasion of personal privacy," the court engages in a two-step inquiry: (1) determining whether "disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest," and, if so, (2) "balanc[ing] the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (citation and internal quotation marks omitted); *Jurewicz v. Dep't of Agric.*, 741 F.3d 1326, 1332 (D.C.

---

[8] Similarly, EPA repeatedly states that "any factual information contained in the entry reflects the author's selection of facts from a broad range of available information" related to the decision EPA alleges allows it to withhold this information under Exemption 5, which also does not reflect actual analysis and is instead hollow boilerplate. *See* Dkt. 19-4 at 6, 8, 11, 12, 13, 14, 15, 16, 18, 19, 21, 22, 23, 24, 25, 27, 28, 29.

Cir. 2014) (citations omitted). "[U]nless the invasion of privacy is 'clearly unwarranted,'

the public interest in disclosure must prevail." *Dep't of State v. Ray*, 502 U.S. 164, 177

(1991).

> The D.C. Circuit has laid out a flexible, low bar for the public interest prong:

> The proper inquiry is whether the information "sheds light" on
> government activities ... and whether it would "appreciably further"
> public understanding of the government's actions... A public interest exists
> where the public "can more easily determine" whether an agency is in
> compliance with a statutory mandate, ... even if "the data will not be
> perfect" with respect to the value of the information that might be derived
> from                                         that                                         requested…

*Jurewicz*, 741 F.3d at 1333-34 (internal citations omitted); *see also Painting &*

*Drywall Work Pres. Fund, Inc. v. Dep't Housing & Urban Dev.*, 936 F.2d 1300,

1303 (D.C. Cir. 1991) (public interest if information "might provide leads …to

ferret out what government is up to.") *ACLU v. DOJ*, 655 F.3d 1, 15 (D.C. Cir.

2011) (courts should "take[] derivative uses into account in evaluating the impact

of disclosure on the public interest"). The D.C. Circuit has long held that,

"[u]nder Exemption 6, the presumption in favor of disclosure is as strong as can

be found anywhere in the Act." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d

1224, 1227 (D.C. Cir. 2008) (citation omitted); *Jurewicz*, 741 F.3d at 1332

(presumption in favor of disclosure "at its zenith" under Exemption 6) (citation

omitted).

EPA's attempt to increase Plaintiff's burden based on *Salas v. Office of*

*the Inspector General*, 577 F. Supp. 2d 105 (D.D.C. 2008) is foreclosed by case

law. Dkt. 19-1 at 20. As this Court pointed out in *Judge Rotenberng Educ. Ctr.,*

*Inc. v. FDA*, 376 F. Supp. 3d 47, 71 n.8 (D.D.C. 2019), *Salas* relied on *Nat'l*

*Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004), and *Favish* dealt with "Exemption 7, which though narrower in scope than [Exemption 6], is more protective of privacy interests than Exemption 6 and establishes a lower bar for withholding information. 541 U.S. at 165-66. In light of the authority on which *Salas* relied—as well as the D.C. Circuit's *AILA* opinion—*Salas* is not persuasive." *See also Jurewicz*, 741 F.3d at 1333-34 (rejecting EPA's proposed standard).[9]

> **a. EPA overstates the privacy interest in the travel and restaurant information from Administrator Wheeler's calendar and ignores the recent controversies at EPA that highlight the public interest in the disclosure of this information.**

EPA improperly withheld information related to Administrator Wheeler's travel and locations of lunch and dinner meetings under Exemption 6 despite the strong public interest in EPA divulging this information. EPA conclusorily overstates Mr. Wheeler's privacy interest in this information and understates the public interest. *See* Dkt. 19-1 at 19. However, EPA's statements cannot change the fact that these records are not subject to withholding and must be produced.

EPA's sole argument regarding privacy interests is that release "could lead to harassment as well as unwanted contact by the media and others." Dkt. 19-1 at 19. However, this is wholly speculative, especially given that the last calendar EPA produced was from March 2019, meaning that all of these records relate to activities that occurred

---

[9] EPA's reliance on *Carter v. Dep't of Commerce*, 830 F.2d 388, 391 n.13 (D.C. Cir. 1987) is also wrong for the reasons identified in *Judge Rotenberng*, 376 F. Supp. 3d at 71 n.8. And *Associated Press v. Dep't of Defense*, 549 F.3d 62, 66 (2d Cir. 2008), to the extent it states a heavier burden than provided here, is contrary to binding D.C. Circuit case law and thus cannot set a differing, higher standard. Finally, as discussed below, EPA's attempts to withhold some of this information under Exemption 7(C) also fails.

at least 17 months in the past. Dkt. 19-3 ¶ 41. This long temporal lapse further reduces

the reasonableness of any espoused privacy concerns arising from disclosure of these

wholly past, completed actions.

EPA also ignores the clear value of these records in reviewing EPA's conduct.

Administrator Wheeler's immediate predecessor, former Administrator Pruitt, headed

what was perceived as the most scandal plagued iteration of the EPA ever. *See* Wilcox

Decl. ¶ 46, Ex. 42. In fact, Mr. Pruitt's extravagant travel spending triggered an OIG

investigation, which found Mr. Pruitt's actions wrongful on numerous counts, including:

numerous instances of improper use of first and business class travel, numerous instances

of improper international travel, regular exceedance of hotel *per diem* rates, and other

unjustified uses of travel funds. *See* Wilcox Decl. ¶¶ 46, 51, Exs. 42 at 1, 47 at 3, 37-38,

84; Dkt. 19-6 at 18, 21. The investigation determined that this travel resulted in a total of

$123,942 in excess travel spending over just a 10-month period. Wilcox Decl. Ex. 47 at

3. There is a strong public interest in determining whether the scandals of Mr. Pruitt's

tenure have continued under Mr. Wheeler. The withheld information in these records is

directly relevant to that task and to determining whether the recommendations from the

OIG investigation are being followed. This strong public interest easily overrides EPA's

doubtful, speculative privacy interest argument.

Similarly, former Administrator Pruitt was notorious for going to lunch and

dinner meetings at expensive restaurants at great taxpayer expense. *See, e.g.,* Wilcox

Decl. Ex. 43 at 3 (discussing Pruitt's favorite upscale restaurant and stating that "Pruitt

and aides spent hundreds of dollars each on a meal footed by taxpayers in Rome."). As a

result, even if EPA had identified a legitimate privacy interest in the restaurant names,

which EcoRights disputes, the locations where Administrator Wheeler dines are a matter
of public interest based on the extravagant and newsworthy practices in this regard from
EPA's immediate past. Without this information, the public will be unable to determine
whether these irresponsible expenditures are continuing under Administrator Wheeler.

> **b. EPA's speculative privacy interest argument regarding the
> identity of members of Administrator Wheeler's personal
> security detail must yield to the public interest in the
> disclosure of this information.**

EPA improperly withholds the names of individuals serving on Administrator
Wheeler's personal security detail ("PSD") under Exemptions 6 based on trumped up
claims that disclosure of their names would result in threats and harassment. Dkt. 19-1 at
20-21. Not only does EPA fail to provide any reason why the innocuous act of serving on
a security detail would be controversial at all, much less likely to draw threats and
harassment,[10] but EPA again ignores the high public interest in this information.[11]

While the identity of members of an EPA Administrator's security detail may
have potentially been a subject of lesser public interest in the past, that changed with
former Administrator Pruitt. During his tenure, Mr. Pruitt allegedly insisted on a 24/7
security detail costing around $3.5 million in his first year alone. *See* Wilcox Decl. Ex. 42
at 5-6; Wilcox Decl. Ex. 47 at 3; Dkt. 19-6 at 18. This detail was reportedly over three
times as large as for previous EPA Administrators. Dkt. 19-6 at 20. An EPA Office of the
Inspector General report, produced under the FOIA Request, found that the $3.5 million

---

[10] This Court has repeatedly made clear that claims of harm must be plausible, based in
fact, and well-explained, not conclusory like EPA's statements here. *See, e.g., Judicial
Watch v. Dep't of the Navy*, 25 F. Supp. 3d 131, 142-43 (D.D.C. 2014).

[11] EPA also attempts to bootstrap its weak privacy interest claims by arguing that release
of this information would cause potential interference with the PSD agents' discharge of
their duties, but the cognizable interests are in personal privacy, not in job duties. *See
Judicial Watch v. Navy*, 25 F. Supp. 3d at 143. EPA's claims are misplaced.

dollar cost of the PSD during this time period was a 110 percent increase over the previous period. Wilcox Decl. Ex. 47 at 3. This report also found that there were no final standard operating procedures, meaning that inappropriate, over the top staffing was possible into the future. *Id.* Not only does this appear to be an unreasonable increase in staffing from a fiscal perspective, but it is also concerning because these PSD agents were apparently pulled from the EPA's Criminal Investigation Division ("CID"). *Id.* at 13; Dkt. 19-3 ¶ 44. The EPA OIG investigation found that in 2017 many of these PSD agents were permanently transferred from CID to Pruitt's security detail "with no significant responsibilities for investigating environmental crimes." Wilcox Decl. Ex. 47 at 13. This is concerning because it may leave a gap in enforcement of certain environmental laws, which poses clear threats to public health and the environment. Knowing who these people are would allow the public to assess the effects of these reductions on environmental enforcement actions and to assess whether EPA is still overstaffing the PSD, an action that led to three OIG investigations and a House Oversight Committee investigation under Mr. Pruitt's tenure. Dkt. 19-6 at 20.

In addition, EPA attempts to withhold these PSD members' email addresses. However, it does not appear that these individuals have any independent privacy interest in their email addresses. For example, CID agents William Oros and Kim Bahney were identified by name in *United States v. Scaccia*, No. 11 CR 0533, 2012 U.S. Dist. LEXIS 82753, at *17 (N.D. Ill. June 8, 2012) and *United States v. El-Sherif*, No. 17-20006-01-JAR, 2018 U.S. Dist. LEXIS 124829, at *1 (D. Kan. July 26, 2018) respectively, and counsel for EcoRights was readily able to identify these individuals' email addresses on EPA's publicly available Staff Directory merely by searching their names. *See* Wilcox

Decl. ¶ 45. As a result, EPA's argument that the PSD agents have a privacy interest in these email addresses lacks any basis in fact.

> **3. EPA's attempt to withhold the identities of members of Administrator Wheeler's personal security detail under Exemption 7(C) fails for the same reasons as its attempts to do so under Exemption 6 and for the additional reason that the records at issue are not law enforcement records.**

EPA's attempt to withhold the identity of the members of Administrator Wheeler's PSD under Exemption 7(C) also fails. Exemption 7(C) is similar to Exemption 6 in that it weighs privacy interests against the public interest in disclosure, but it is of narrower applicability in that it only applies to privacy interests in information that is in "records compiled for law enforcement purposes." *See* 5 U.S.C. § 552(b)(7)(C). "To qualify as law enforcement records, the record must arise out of 'investigations which focus directly on specifically alleged illegal acts which could, if proved, result in civil or criminal sanctions.'" *Bartko v. DOJ*, 898 F.3d 51, 64 (D.C. Cir. 2018) (citation omitted). The proponent of the exemption must point to a connection between an individual and a violation of federal law. *Id.* Where the agency does not specialize in law enforcement, such as EPA here, its attempts to withhold information warrant no deference. *Id.* Internal agency practices distinct from legal violations are not covered. *Id.* at 64-65. Here EPA does not, and cannot, identify any reasonable basis for defining these as law enforcement records based on the standard above. As a result, these records cannot be exempt under Exemption 7(C).

EPA cites *Tax Analysts v. IRS*, 294 F.3d 71 (D.C. Cir. 2002) to say that records need not relate to an identifiable investigation to be covered by Exemption 7(C), but ultimately that case only said that "internal agency materials relating to guidelines,

techniques, sources, and procedures for law enforcement investigations and prosecutions," were also exempt in that case. *Id.* at 79. This focus on guidelines and similar materials is important and makes sense given that Exemption 7(E), not 7(C) as in *Bartko*, was at issue in *Tax Analysts*, which protects certain records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E). The records at issue here do not implicate techniques and procedures, and the general requirement, applicable to Exemption 7(C), that the records are related to a specific investigation applies. *See Bartko*, 898 F.3d at 64.

In addition, even if these records did qualify as law enforcement records, EPA fails to provide a cognizable privacy interest here. Exemption 7(C) is designed to protect the interest of "suspects, witnesses, or investigators, 'in not being associated unwarrantedly with alleged criminal activity.'" *Dunkelberger v. DOJ*, 906 F.2d 779, 781 (D.C. Cir. 1990) (quoting *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984)). That is because "the privacy interests at stake in an Exemption 7(C) analysis are those resulting from the stigma of being associated with a criminal investigation." *Tokar v. DOJ*, 304 F. Supp. 3d 81, 99 (D.D.C. 2018) (citations omitted). Where this stigma is absent, as here, there is no cognizable privacy interest under Exemption 7(C). *Id.* As a result, the public interest in this information, discussed above with regard to Exemption 6, necessarily outweighs this nonexistent privacy interest. Indeed, EPA does not cite to a single case, and EcoRights is aware of none, where an agency was actually allowed to withhold the names and email addresses of members of a security detail. This information simply does not fall within the narrow purview of Exemption 7(C).

### 4.   Exemption 7(E) has no application to EPA's withholding of White House meeting locations.

EPA argues that it can withhold, under Exemption 7(E), the identity of rooms in the White House where certain meetings took place. However, Exemption 7(E) only permits withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information … would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). EPA fails to meet this exemption at every step.

First, these records were not "compiled for law enforcement purposes," but instead to direct attendees to meetings. *Id.* Second, identification of meeting rooms would not disclose techniques, procedures, or guidelines "for law enforcement investigations or prosecutions." *Id.* In fact, EPA's position on these first two factors is so weak that EPA does not even try to substantively address the incredibly poor fit of Exemption 7(E) to this withheld information and instead jumps right to claiming that release "could reasonably be expected to risk circumvention of the law." Dkt. 19-1 at 22 (citing 5 U.S.C. § 552(b)(7)(E)). However, EPA fails here again.

EPA admits that it must show a "reasonably expected risk" from disclosure. Dkt. 19-1 at 22 (citations omitted). However, the only basis that it provides for its withholdings is the "high security concerns" of the White House. *Id.* This generic, broad argument, if allowed to stand, would leave the exemption untethered from reason and its

purpose.[12] This failure to identify any real, identifiable risk is yet another reason EPA's

invocation of Exemption 7(E) must fail.

### D.  EPA failed to show producing the challenged records would cause foreseeable harm.

Congress passed the FIA in 2016 after finding agencies are engaged in a

"'growing and troubling trend' of invoking FOIA exemptions 'even though no harm

would result from disclosure.'" *Ctr. for Investigative Reporting v. U.S. Customs &*

*Border Prot.* ("*Investigative Reporting I*")*,* No. 18-2901, 2019 U.S. Dist. LEXIS 223077,

at *20 (D.D.C. Dec. 31, 2019) (quoting 162 Cong. Rec. H3717 (2016); S. Rep. No. 114-

4, at 3). The FIA creates a "presumption of openness" under FOIA by prohibiting

agencies from withholding records, even if they fall within a FOIA exemption, unless the

agency "reasonably foresees that disclosure of the record would harm an interest

protected by" that exemption. *See, e.g., Judicial Watch v. Dep't of Commerce*, 375 F.

Supp. 3d 93, 100 (D.D.C. 2019); *Ctr. for Investigative Reporting v. Dep't of Labor*

("*Investigative Reporting II*"), 424 F. Supp. 3d 771, 780 (N.D. Cal. 2019) (*citing* 5 U.S.C.

§ 552(a)(8)(A)(i)). "Generic, across-the-board articulations of harm," "boilerplate,"

and/or "nebulous articulations of harm are insufficient." *See, e.g., NRDC v. EPA* ("*NRDC*

*v. EPA II*"), No. 17-5928, 2019 U.S. Dist. LEXIS 124353, at *2-4 (S.D.N.Y. July 25,

2019); *Judicial Watch v. DOJ*, No. 17-832, 2019 U.S. Dist. LEXIS 163473, at *5 (D.D.C.

Sept. 24, 2019). Notably, this standard does not allow record withholding "merely

because public officials might be embarrassed by disclosure, because errors and failures

might be revealed, or because of speculative or abstract fears." *Judicial Watch v. DOJ*,

---

[12] The arguments in EPA's Vaughn index and Declaration merely continue these sweeping, broad, implausible arguments and similarly must fail. *See* Dkt. 19-4 at 4; Dkt. 19-3 ¶ 49.

2019 U.S. Dist. LEXIS 163473, at *7-8 (citation omitted); *see also Investigative*

*Reporting I*, 2019 U.S. Dist. LEXIS 223077, at *22. EPA has not met its burden to show

that releasing the withheld records in issue would cause any cognizable foreseeable harm.

Thus, EcoRights respectfully requests that the Court order production of all challenged

records on a finding of lack of foreseeable harm regardless of whether any exemption

might otherwise apply. *See EcoRights v. FEMA*, 2017 U.S. Dist. LEXIS 197451, at *16-

17.[13]

First, EPA's claims of harm are too speculative. For dozens of withholdings,

EPA's *Vaughn* index[14] and supporting declaration[15] assert only that disclosure of the

information "could" or "may" result in the type of harm asserted, not that it "will" result

in such harm. However, speculative claims that disclosure "could" or "may" harm a

protected interest *per se* fail because "[t]he question is not whether disclosure could"

---

[13] EPA's failure to demonstrate foreseeable harm is particularly egregious given its many
claimed Exemption 5 withholdings. *See generally* Dkt. 19-4. Notably, when creating the
foreseeable harm standard, "Congress was especially concerned about agencies' reliance
on Exemption 5..." *Investigative Reporting I*, 2019 U.S. Dist. LEXIS 223077, at *20.
Congress pointed to "Exemption five . . . as a particularly problematic exemption," and
explained further that it "is the most used privilege and the source of the most concern
regarding overuse." *Id.* at *20-21 (quoting S. Rep. No. 114-4, at 3; H.R. Rep. No. 114-
391, at 10).

[14] *See* Dkt 19-4 at 2, 3 ("could expose Administrator Wheeler to harassment"); *id.* at 4
("could reasonably be expected to risk" harm); *id.* at 5 ("could expose them to
harassment or danger" and "could interfere with their ability to protect the physical safety
of the Administrator"); *id.* at 10, 13, 14, 18 ("could cause public confusion"); *id.* at 4
("may face embarrassment or disruption with their current employer"); *id.* at 15 ("may
prematurely disclose federal decisions").

[15] *See* Dkt. 19-3 ¶ 43 ("could expose Administrator Wheeler to harassment"); *id.* ¶ 45
("could expose them to harassment or danger"); *id.* ¶ 46 ("could interfere with their
ability to protect the physical safety of the Administrator"); *Id.* ¶ 49 ("could reasonably
be expected to risk"); *Id.* ¶ 58 ("could cause public confusion"); *Id.* ¶ 48 ("Disclosure can
result in embarrassment for the candidate or may have an impact on the current
employment of the candidate"); *Id.* ¶ 65 ("may prematurely disclose federal decisions");
*Id.* ¶ 55 ("disclosure of briefing documents can create public confusion").

cause harm, "but rather if it is reasonably foreseeable that it will…. In other words, the Act requires more than speculation…" *Judicial Watch v. Commerce*, 375 F. Supp. 3d at 101; *see also Amadis v. Dep't of State*, No. 19-5088, 2020 U.S. App. LEXIS 26633, at *12 (D.C. Cir. Aug. 21, 2020). EPA's conclusory statements in its brief that harm would occur are not supported by its own sworn statement and *Vaughn* index, as discussed above, and cannot cure this failure. *See* Dkt. 19-1 at 17.

Notably, even if these statements were sufficient, EPA's briefing only addresses foreseeable harm at all for its Exemption 5 withholdings, thus conceding a lack of harm for the other redactions. Statements related to weighing are insufficient to address this "independent and meaningful burden." *See Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.* ("*Investigative Reporting III*"), 436 F. Supp. 3d 90, 106 (D.D.C. 2019).

Second, EPA's general, conclusory articulations of harm fall short. The foreseeable harm standard creates an "independent and meaningful burden" requiring EPA to "'identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials' and 'connect[] the harms in [a] meaningful way to the information withheld.'" *Investigative Reporting I*, 2019 U.S. Dist. LEXIS 223077, at *24 (citation omitted). However, EPA fails to provide "context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure." *See Investigative Reporting I*, 2019 U.S. Dist. LEXIS 223077, at *26 (citation omitted); *Ctr. For Investigative Reporting v. Dep't of Interior* ("*Investigative Reporting IV*"), No. 18-1599, 2020 U.S. Dist. LEXIS 61201, at *10 (D.D.C. April 7, 2020) (agency must show disclosure of the

"*particular*" record will cause reasonably foreseeable harm) (emphasis in original). For example, with regard to records related to discussions that were never shared with the public, such as Administrator Wheeler's discussions with other politicians (*see* Dkt. 19-4 at 7-8, 14-15, 16-17, 19-20, 20-21, 21-22, 23-24), there is no risk, contrary to EPA's assertion, of confusing the public with conflicting messages. *See, e.g., ACLU of Mass.*, 2020 U.S. Dist. LEXIS 50703, at *21-22.

Third, in many instances EPA claims foreseeable harm from release of records related only to completed actions and/or routine government matters that do not rise to the level of substantial policy decisions. For example, with regards to the postdecisional records discussed above that only refer to decisions already made, "it is difficult to see how the quality of a decision will be affected by communications with respect to the decision occurring after the decision is finally reached; and therefore equally difficult to see how the quality of the decision will be affected by forced disclosure of such communications, as long as prior communications and the ingredients of the decisionmaking process are not disclosed." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). As another example, EPA's overblown concern about releasing Administrator Wheeler's birthday party remarks is misplaced because the determination about what to say does not rise to the level of a cognizable policy decision.

EPA's irrational concerns, rooted in withholding information about insignificant decisions and completed actions, do not amount to the foreseeable harm required to withhold records. *See Rosenberg v. Dep't of Defense*, 342 F. Supp. 3d 62, 79 (D.D.C. 2018) (upholding agency's foreseeable harm claim for internal deliberations between high ranking military and Department of Defense officials about highly sensitive

program, but not as to "more benign, categories of withheld deliberative information"

such as "opinions about the current state of facilities … and recommendations and advice

about maintenance issues…" based on potential "level of harm to the exemption-

protected interest."); S. Rep. No. 114-4, at 8 (attached as Wilcox Decl. Ex. 50)

(explaining that foreseeable harm will turn on the "age, content, and character" of the

record in question)); *Investigative Reporting I*, 2019 U.S. Dist. LEXIS 223077, at *27,

28-29 (unclear that disclosure would harm agency where it had already taken the action).

As a result, EPA has failed to show that release of the challenged records would result in

reasonably foreseeable harm and EPA must produce this information.

## V.      CONCLUSION

For the reasons stated above, EcoRights respectfully requests that the Court deny

EPA's Motion for Summary Judgment, grant EcoRights' Cross-Motion for Summary

Judgment, declare that EPA has violated FOIA, and order EPA to produce all wrongfully

withheld records.

Respectfully submitted on the 7th day of September 2020,

<div style="margin-left:40%">

*/s/ Stuart Wilcox_____*
Stuart Wilcox (Bar No. CO0062)
Environmental Advocates
5135 Anza Street
San Francisco, CA 94121
(720) 331-0385
wilcox@enviroadvocates.com

*Attorney for Plaintiff*

</div>