# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ECOLOGICAL RIGHTS FOUNDATION,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. ENVIRONMENTAL PROTECTION<br>AGENCY,<br><br>    Defendant. | Civil Action No. 19-980 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

Defendant, the U.S. Environmental Protection Agency ("EPA"), seeks partial reconsideration under Federal Rule of Civil Procedure 59(e) of this Court's February 13, 2021 Order, ECF No. 29, which, in relevant part, granted plaintiff Ecological Rights Foundation's motion for summary judgment with respect to EPA's withholding of certain information pursuant to various exemptions to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and directed the agency to produce all such records. *See* Def.'s Mot. Alter or Amend Judgment ("Def.'s Mot.") at 1, ECF No. 32.[1]  Plaintiff alleged in two counts that EPA unlawfully withheld records responsive to plaintiff's FOIA Request (Count II), Am. Compl. ¶¶ 60–62, ECF No. 7, and failed to conduct an adequate search for responsive records (Count III), *id.* ¶¶ 63–65.  EPA was granted summary judgment on Count III, and both parties were granted partial summary judgment on Count II, which is the only count at issue on reconsideration.  *See Ecological Rts. Found. v. EPA* ("*ERF I*"), Civ. A. No. 19-980 (BAH), 2021 U.S. Dist. LEXIS 27748, at \*115–17

---

[1]    EPA initially moved for relief "[p]ursuant to Federal Rule of Civil Procedure . . . 59(e), or, alternatively, Rule 54(b)," Def.'s Mot. at 1, but ultimately agreed with plaintiff that "the correct standard under which to review EPA's request for reconsideration of the Court's order is that set out in Rule 59(e)," Pl.'s Opp'n Def.'s Mot. Alter or Amend Judgment ("Pl.'s Opp'n") at 5, ECF No. 33; *see also* Def.'s Combined Opp'n Pl.'s Mot. Strike Suppl. Decl. Claude Walker & Reply Pl.'s Opp'n Def.'s Mot. Alter or Amend Judgment ("Def.'s Reply") at 2 n.1, ECF No. 37, and thus no arguments specific to Rule 54(b) need be addressed.

(D.D.C. Feb. 13, 2021).  At issue on reconsideration is the grant of summary judgment to

plaintiff with respect to EPA's withholding, pursuant to FOIA Exemption 7(C), 5 U.S.C.

§ 552(b)(7)(C), of the names of agents from EPA's Criminal Investigation Division ("CID")

tasked with providing protection to former EPA Administrator Andrew Wheeler as part of his

Personnel Security Detail ("PSD").  *See ERF I*, 2021 U.S. Dist. LEXIS 27748, at *88–101,

*117.[2]  The agency was ordered to produce the names of these PSD agents to plaintiff.  *See*

Order.

      EPA now contends, with previously undisclosed information provided in a new

supplemental declaration, that the Court erred in finding that Exemption 7(C) did not apply to

shield the PSD agents' names from disclosure.  According to EPA, contrary to plaintiff's

assertion in its reply briefing on the cross-motions for summary judgment, that EPA routinely

releases PSD agents' names, in fact, the agency shares only the names of supervising CID agents

approved to act as spokespersons.  Def.'s Mem. Supp. Mot. Alter or Amend Judgment ("Def.'s

Mem.") at 8–11, ECF No. 32-1.  In EPA's view, due to reliance on plaintiff's inaccurate claim,

which EPA failed to correct at the time, the Court gave insufficient weight to the agents' privacy

interests in the Exemption 7(C) balancing analysis.  Plaintiff rejects this argument as both

untimely and unpersuasive, and seeks to strike, in full or in part, the Supplemental Declaration of

Claude Walker ("Supplemental Walker Declaration"), ECF No. 32-2, describing EPA's practices

with respect to release of agent names, as well as the portions of EPA's memorandum in support

of reconsideration that rely on the Declaration.  *See* Pl.'s Mot. Strike Decl. Claude Walker &

Portions of Def.'s Mot. Alter or Amend Judgment ("Pl.'s Mot."), ECF No. 34; Pl.'s Opp'n.  For

---

[2]    According to EPA, "[t]he security detail formerly known as the PSD is now referred to as the National Capitol Area Branch of the Criminal Investigation Division."  Suppl. Decl. Claude Walker ("Suppl. Walker Decl.") at 1 n.1, ECF No. 32-2.  For consistency with the previous decision and filings in this case, the term "PSD" is used in this Opinion.

the reasons set forth below, plaintiff's Motion to Strike is denied and EPA's Motion to Alter or Amend Judgment is granted.

## I.      BACKGROUND

Only those facts necessary for resolving the instant motions are provided since the factual and procedural background of this litigation is fully summarized in *ERF I*. *See* 2021 U.S. Dist. LEXIS 27748, at *2–17.

### A.      Production of Calendar Entries in Response to FOIA Request

On August 30, 2018, plaintiff submitted a ten-part FOIA request to EPA for records related to the agency's transparency, personnel, and accountability policies. *See* Compl., Ex. 1, Pl.'s FOIA Request ("FOIA Request"), ECF No. 1-1. Part 6 of the FOIA Request requested "[a]ll documents created by EPA constituting or memorializing Acting Administrator Andrew Wheeler's full calendar, meeting schedule, and notes from meetings from July 5, 2018 to the present." *Id.* at 3. In response to Part 6, EPA produced former Administrator Wheeler's calendar records, including calendar entries for the relevant time period. *See ERF I*, 2021 U.S. Dist. LEXIS 27748, at *11–16. Production of these records began before plaintiff initiated the instant suit, on April 8, 2019, *see* Compl., ECF No. 1, and continued during the pendency of the litigation, *see ERF I*, 2021 U.S. Dist. LEXIS 27748, at *11–16. Of the calendar entries EPA eventually released, thirty, ranging in date from July 10, 2018 to March 27, 2019, included the names and email addresses of agents assigned to Administrator Wheeler's PSD. *Id.* at *88. EPA redacted this information from the produced entries, asserting FOIA Exemptions 6 and 7(C). *Id.* Both parties moved for summary judgment as to these withholdings. *See* Def.'s Mot. Summ. J., ECF No. 19; Pl.'s Cross-Mot. Summ. J., ECF No. 20.

**B.      Grant of Summary Judgment to Plaintiff**

Briefing on the parties' cross-motions for summary judgment was completed on October 26, 2020, with the filing of plaintiff's Reply, *see* Pl.'s Reply Supp. Cross-Mot. Summ. J. ("Pl.'s XMSJ Reply"), ECF No. 25, supported by a total of thirty pages in a supplemental declaration, *see* Suppl. Decl. Stuart Wilcox ("Suppl. Wilcox Decl."), ECF No. 25-1, and seven exhibits, *see id.* ¶¶ 2–8.  Almost three months later, with no further submission by EPA to correct any part of the record before the Court, on February 13, 2021, both parties' cross-motions for summary judgment were granted in part and denied in part.  *See ERF I*, 2021 U.S. Dist. LEXIS 27748, at *2, *115–17.  As relevant here, plaintiff was granted summary judgment as to EPA's withholding, pursuant to Exemption 7(C), of the names of agents serving on Administrator Wheeler's PSD.  *Id.* at *117.[3]  "Exemption 7(C) shields from disclosure 'records or information compiled for law enforcement purposes, but only to the extent' that disclosure 'could reasonably be expected to constitute an unwarranted invasion of personal privacy.'"  *Id.* at *88 (quoting 5 U.S.C. § 552(b)(7)(C)).  "If the records are properly characterized as law enforcement records, the agency must next show that 'the privacy interest the government asserts . . . outweighs any public interest in disclosure.'"  *Id.* at *90 (omission in original) (quoting *Bartko v. U.S. Dep't of Justice*, 898 F.3d 51, 64 (D.C. Cir. 2018)).  "Exemption 7(C) aims to 'protect the privacy of individuals identified in certain agency records.'"  *Id.* (quoting *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011)).  "'[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to.'"  *Id.* (alteration in original) (quoting *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282

---

[3]      Although EPA also invoked Exemption 6 to shield this information from disclosure, because "'Exemption 7(C) is more protective of privacy than Exemption 6 and thus establishes a lower bar for withholding material,'" *ERF I*, 2021 U.S. Dist. LEXIS 27748, at *88–89 (quoting *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011)), the appropriateness of EPA's withholding was evaluated only under Exemption 7(C)'s more lenient withholding standard, *see id.* at *88–100.

(D.C. Cir. 1992)).  "The FOIA requester carries the burden 'to show . . . that the public interest sought to be advanced is a significant one, and that the [requested] information is likely to advance that interest.'"  *Id.* (alteration and omission in original) (quoting *Bartko*, 898 F.3d at 72).

Applying this standard, the disputed calendar entries were found to be records "compiled for law enforcement purposes," and therefore within the scope of the exemption, because they detailed which agents would "carry out" certain duties that "serve[] to prevent potential criminal activity and promote public safety as well as the Administrator's safety . . . on a given date and time." *Id.* at *91.  As to the agents' privacy interests, *ERF I* determined that "EPA's claim, substantiated by two declarations, that the PSD agents could be subjected to harassment by virtue of the identity of the person they protect and the types of investigation in which they and their colleagues are involved is sufficient to establish an 'unwarranted invasion of privacy' for Exemption 7(C) purposes."  *Id.* at *93.  This assessment was made in relation to the identified "countervailing public interest in the identities of PSD agents," *id.* at *96, for use in assessing "EPA's reallocation of its CID agents for use by the Administrator as PSD agents and the impact of such reallocation on EPA's execution of its statutory duties," particularly since the record was not "clear that plaintiff could obtain the information it seeks through any other publicly available means," *id.* at *98.

The burden thus shifted to EPA "to 'explain[] why disclosure of [PSD agents' names] would . . . be reasonably . . . expected to constitute an unwarranted invasion' of agents' personal privacy, 'when balanced against the public interest in disclosure.'"  *Id.* (first alteration and omissions in original) (quoting *Bartko*, 898 F.3d at 66).  Though "EPA's declarations and *Vaughn* index ma[de] no apparent effort to weigh the public interest in disclosure against PSD agents' privacy interests" and EPA argued in its briefing "only that, in the 'absence of any

countervailing public interest,' [its] withholdings are justified,'" *id.* at \*98–99 (quoting Def.'s Reply Supp. Mot. Summ. J. & Opp'n Pl.'s Cross-Mot. Summ. J. ("Def.'s XMSJ Reply") at 16, ECF No. 23), *ERF I* nonetheless undertook the Exemption 7(C) balancing analysis.  Crediting evidence proffered by plaintiff in its Reply, consisting of multiple EPA press releases and media interviews identifying CID agents by name, *ERF I* noted that "[a]lthough PSD agents have a strong privacy interest in their identities, EPA appears to routinely release the names of CID and PSD agents for public relations purposes" and that "EPA does not identify any particularized risk of threat or harassment to PSD agents assigned to protect Administrator Wheeler."  *Id.* at \*99. On the other side of the equation, plaintiff "ha[d] identified a significant public interest in tracing EPA's transfer and reallocation of law enforcement agents from investigatory duties within CID to the Administrator's PSD and any concomitant reduction in enforcement actions at EPA."  *Id.* at \*100 (internal quotation marks omitted).  This interest was linked to disclosure of the agents' names "because plaintiff, or others, can use this information to determine how many agents were shifted from investigation and enforcement to protection."  *Id.*  The public interest in EPA's performance of its statutory duties outweighed the agents' private interests, assessed in light of the belief that EPA routinely released their names, and summary judgment was therefore granted for plaintiff.

## C.    EPA's Submission of the Supplemental Walker Declaration

EPA now asks for reconsideration of the grant of summary judgment to plaintiff with respect to the disclosure of PSD agents' names, in order to correct a clear error or prevent manifest injustice.  *See* Def.'s Mem.  The agency argues first, that "no clear nexus" exists "between [plaintiff's] stated public interest and the names of the PSD agents," such that the agents' privacy interests should have prevailed in the Exemption 7(C) balancing analysis, *id.* at 4–5, and second, that plaintiff's assertion, credited in *ERF I*, that EPA routinely releases the

names of CID and PSD agents for public relations purposes was inaccurate, *id.* at 8–11.  To support reconsideration, EPA has submitted a supplemental declaration with previously undisclosed information by Claude Walker, the Deputy Director, Legal Counsel Division, of EPA's Office of Criminal Enforcement, Forensics and Training ("OCEFT").  Suppl. Walker Decl. ¶ 1.

The Supplemental Walker Declaration specifies that Walker's statements "are based on [his] own personal knowledge, on information contained in the records of the [EPA], or on information supplied to [Walker] by employees under [his] supervision or employees in other EPA offices," *id.* at 1, and are made "under penalty of perjury," *id.* at 5.  It describes the disputed calendar entries from which PSD agent names were redacted, *id.* ¶¶ 3–4, and plaintiff's FOIA Request, *id.* ¶ 5, and compares plaintiff's FOIA Request to other FOIA requests received by the agency specifically seeking records related to the CID, *id.* ¶¶ 6–7.  The Supplemental Walker Declaration also describes the exhibits submitted by plaintiff in connection with plaintiff's reply argument that EPA routinely releases agent names, *id.* ¶¶ 8–9, and clarifies OCEFT's policies with respect to identifying agents and rationale for protecting the identities of rank-and-file agents, *id.* ¶¶ 10–13.  According to the Declaration, "OCEFT policy is to not disclose the names of Special Agents that serve on the Administrator's security detail."  *Id.* ¶ 8.  When "the CID requires a spokesperson for a press release or similar function[,] . . . OCEFT permits the top supervisor of the relevant criminal enforcement field office, the Special Agent-In-Charge or Assistant Special Agent-In-Charge, to serve as the spokesperson" for EPA.  *Id.*  In OCEFT's view, "[a] supervisor in CID does not have the same privacy concerns as a staff-level agent," because, unlike a supervisor, staff-level agents "participate in investigations" and "commonly serve as undercover agents in highly sensitive environmental enforcement investigations."  *Id.*

¶ 11.  Thus, OCEFT seeks to "maintain the privacy of CID Agents," *id.*, and treats the privacy of

CID agents assigned to the Administrator's PSD with additional caution because "those who

serve on the PSD face a heightened and particular threat of harassment" as a result of their

"access to highly sensitive law enforcement information," including information about criminal

investigations and the Administrator's movements, *id.* ¶ 12.

## II.  LEGAL STANDARDS

### A.  Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that the court "may strike from a pleading

an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R.

CIV. P. 12(f).  "'The decision to grant or deny a motion to strike is vested in the trial judge's

sound discretion,' and '[t]he moving party bears a heavy burden as courts generally disfavor

motions to strike.'"  *Sacchetti v. Gallaudet Univ.*, 344 F. Supp. 3d 233, 251 (D.D.C. 2018)

(alteration in original) (first quoting *Canady v. Erbe Elektromedizin GmbH*, 384 F. Supp. 2d 176,

180 (D.D.C. 2005); and then quoting *Ng v. Lahood*, 952 F. Supp. 2d 85, 92 (D.D.C. 2013)); *see

also Stabiliesisrungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd.*, 647 F.2d 200, 201

(D.C. Cir. 1981) (per curiam); *Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*, 815 F. Supp.

2d 148, 162 (D.D.C. 2011).  "Striking material may be warranted in the summary judgment

context when a party's declaration or other pleading fails to comply with Federal Rule of Civil

Procedure 56."  *Waggel v. George Wash. Univ.*, Civ. A. No. 16-1412 (CKK), 2018 U.S. Dist.

LEXIS 191702, at *9 (D.D.C. Nov. 9, 2018).  As relevant here, Rule 56(c)(4) requires that "[a]n

affidavit or declaration used to support or oppose a motion . . . be made on personal knowledge,

set out facts that would be admissible in evidence, and show that the affiant or declarant is

competent to testify on the matters asserted." FED. R. CIV. P. 56(c)(4).  "A court may strike all

improper portions of an affidavit used to support or to oppose a motion for summary judgment,

but in resolving a motion to strike a 'court uses a scalpel, not a butcher knife.'" *Ascom Hasler Mailing Sys., Inc.*, 815 F. Supp. 2d at 162–63 (quoting *Canady*, 384 F. Supp. 2d at 180); *see also Perez v. Volvo Car Corp.*, 247 F.3d 303, 315 (1st Cir. 2001).

### B. Motion to Alter or Amend Judgment

Federal Rule of Civil Procedure 59(e) allows a litigant to file a "motion to alter or amend a judgment," within 28 days from entry of the judgment. FED. R. CIV. P. 59(e). Altering or amending a judgment under Rule 59(e) "is an extraordinary remedy which should be used sparingly," *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 17 (D.C. Cir. 2015) (quoting 11 Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2810.1 (3d ed. 2012)), as a "limited exception to the rule that judgments are to remain final," *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018). This Rule "gives a district court the chance 'to rectify its own mistakes in the period immediately following' its decision." *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (quoting *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982)). The law is well-settled that a motion for reconsideration "is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Pigford v. Perdue*, 950 F.3d 886, 891 (D.C. Cir. 2020) (quoting *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004)); *see also Leidos, Inc.*, 881 F.3d at 217 ("Under Rule 59(e), the court may grant a motion to amend or alter a judgment under three circumstances only: (1) if there is an 'intervening change of controlling law'; (2) if new evidence becomes available; or (3) if the judgment should be amended in order to 'correct a clear error or prevent manifest injustice.'" (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam))).

Consistent with Rule 59(e)'s corrective function, the only matters subject to reconsideration are those "properly encompassed in a decision on the merits," *Banister*, 140 S.

Ct. at 1703 (quoting *White*, 455 U.S. at 451), such that "courts will not address new arguments or evidence that the moving party could have raised before the decision issued," *id.*  Accordingly, a motion to reconsider "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."  *Exxon Shipping v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 2810.1 (2d ed. 1995)).  Whether to grant a motion for reconsideration is within the district court's discretion.  *See Leidos, Inc.*, 881 F.3d at 216.

## III.    DISCUSSION

EPA argues that, in granting plaintiff summary judgment as to the withholding of PSD agent names pursuant to Exemption 7(C), the Court erred by failing to identify a nexus between the withheld information and plaintiff's proffered public interest in disclosure and by giving weight to plaintiff's inaccurate claim that EPA routinely releases PSD agents' names in carrying out the Exemption 7(C) balancing analysis.  *See* Def.'s Mem.  Plaintiff vehemently opposes EPA's motion for reconsideration as procedurally improper and substantively wrong since no clear error supporting reconsideration was made.  *See* Pl.'s Opp'n.  Plaintiff has also moved to strike, in whole or in part, the Supplemental Walker Declaration.  *See* Pl.'s Mot.  Given that the resolution of plaintiff's Motion to Strike affects the evidence that may be considered on reconsideration, that motion is addressed before EPA's Motion to Alter or Amend Judgment.

### A.    Motion to Strike

Plaintiff moves to strike in its entirety the Supplemental Walker Declaration and any portions of EPA's briefing on reconsideration reliant on it, contending that the declaration "provides testimony of which Mr. Walker does not allege personal knowledge, relies on inadmissible hearsay, violates the best evidence rule, offers legal conclusions, and seeks to offer testimony that is immaterial and impertinent" and therefore does not comply with Rule 56(c)'s

requirements.  Pl.'s Mem. Supp. Pl.'s Mot. Strike Decl. Claude Walker & Portions of Def.'s

Mot. Alter or Amend Judgment ("Pl.'s Mem.") at 1, ECF No. 34-1; Pl.'s Mot.  Alternatively,

plaintiff "requests that the Court strike all portions of the Declaration that it determines are

improper and all portions of EPA's Memorandum in Support that rely on the Declaration" or

"ignore the Walker Declaration and the portions of EPA's Memorandum in Support that rely on

the Declaration."  Pl.'s Mem. at 2.  EPA opposes plaintiff's motion, contending that the

Supplemental Walker Declaration "falls squarely within the parameters followed by this district

for agency [FOIA] declarations."  Def.'s Reply at 1.  As explained below, each of plaintiff's

challenges to the Supplemental Walker Declaration fails.

> **1.** ***The Supplemental Walker Declaration Satisfies the Personal-Knowledge
> Requirement***

Plaintiff first asserts that, because portions of the Supplemental Walker Declaration are

based on "information contained in [EPA] records . . . or on information supplied to [him] by

employees under [his] supervision or employees in other EPA offices," Suppl. Walker Decl. at 1,

the declaration does not satisfy Rule 56(c)(4)'s personal knowledge requirement and should be

struck in its entirety or in part, *see* Pl.'s Mem. at 4–5, 10 n.3; Pl.'s Reply Supp. Pl.'s Mot. Strike

Decl. Claude Walker & Portions of Def.'s Mot. Alter or Amend Judgment ("Pl.'s Reply") at 2–8,

ECF No. 39.  Rule 56(c)(4)'s "'directive with respect to the admissibility of an affidavit's [or a

declaration's] contents on summary judgment has been liberally construed,'" *Sabra ex rel. Baby

M v. Pompeo*, 453 F. Supp. 3d 291, 330 (D.D.C. 2020) (quoting *Londrigan v. FBI*, 670 F.2d

1164, 1174 (D.C. Cir. 1981)), but its "requirement of personal knowledge is . . . unequivocal,

and cannot be circumvented," *Londrigan*, 670 F.2d at 1174.  Thus, "[a]n affidavit based merely

on information and belief is unacceptable."  *Id.*

This standard of personal knowledge is deemed met by "[a]n affiant who reviews the business records of the organization that he or she is affiliated with, and who testifies on the basis of information acquired through the performance of his or her official duties," since that person "may be deemed competent by the court to testify as to those records." *Akers v. Beal Bank*, 845 F. Supp. 2d 238, 242 (D.D.C. 2012); *see also Citizens for Resp. & Ethics in Wash. v. Leavitt*, 577 F. Supp. 2d 427, 434 n.5 (D.D.C. 2008) (allowing use of a declaration "based on [an agency employee's] personal knowledge or information made known to her in the course of her official duties"); *Elliot v. Fed. Bureau of Prisons*, Civ. A. No. 04-1702 (CKK), 2006 U.S. Dist. LEXIS 94342, at *19 (D.D.C. Oct. 17, 2006) (finding that a declaration based on the declarant's "own personal knowledge, or on the basis of information acquired by [him] through the performance of [his] official duties" and through review of "official files and records" met the personal-knowledge requirement (internal quotation marks omitted)); *accord Woodruff v. United States*, Civ. A. No. 16-1884 (RDM), 2020 U.S. Dist. LEXIS 107761, at *19 n.2 (D.D.C. June 18, 2020) (holding that information "acquired . . . through the performance of [a declarant's] official duties" satisfied the personal-knowledge requirement under Federal Rule of Evidence 602 (omission in original) (internal quotation marks omitted)).  Moreover, a declarant may "testify to his own observations upon review of . . . documents" and to "practices of which he possesses personal knowledge."  *Londrigan*, 670 F.2d at 1174.

EPA contends that the Supplemental Walker Declaration should be assessed under the personal-knowledge standard applicable in a FOIA case to an agency's declarant, who "'satisfies the personal knowledge requirement in [Rule 56(c)(4)] if in his declaration, [he] attests to his personal knowledge of the procedures used in handling [a FOIA] request and his familiarity with the documents in question.'"  *Prop. of People, Inc. v. Dep't of Justice*, 405 F. Supp. 3d 99, 125

(D.D.C. 2019) (alterations in original) (quoting *Barnard v. Dep't of Homeland Sec.*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008)); *see* Def.'s Reply at 3–5. EPA characterizes this version of the personal-knowledge requirement not only as universally controlling for any declaration introduced by an agency in the FOIA context, but also as somehow a unique standard, separable from Rule 56's generally applicable personal-knowledge requirement, for personal knowledge in FOIA cases. *See* Def.'s Reply at 3–5. EPA's suggestion that the personal-knowledge requirement somehow applies differently or more leniently in a FOIA case than in other legal contexts is just wrong. In fact, the personal-knowledge requirement for FOIA declarants is not a distinct personal-knowledge standard, but instead a refined articulation of the generally applicable standard for personal knowledge under Rule 56, as outlined above. In the FOIA context, application of the general principle that an organization's employee may testify to information personally acquired in the course of their official duties means that an agency employee, whose duties involve the processing of FOIA requests, may provide sworn declarations concerning an agency's search for and production of records responsive to a FOIA request. *See, e.g.*, *Londrigan*, 670 F.2d at 1174 (framing this tailored version of the personal-knowledge standard as an application of Rule 56's requirements).

Accordingly, as the cases cited by EPA in support of this proposition demonstrate and as plaintiff contends, *see* Pl.'s Reply at 3–5, this application of the personal-knowledge standard in the FOIA context is designed to evaluate the content of a declaration describing an agency's search for and production of records responsive to a FOIA request or explaining the agency's withholding of responsive records. Such a declarant is typically an individual who was directly involved in the search or holds a supervisory FOIA role within the agency.[4] Walker, in contrast,

---

[4]     *See, e.g.*, *Prop. of People, Inc.*, 405 F. Supp. 3d at 125 (applying standard to declarants who "supervise[d] all stages of the [FOIA] request process including initial receipt and handling, the search for responsive records, and

states that his official duties "include providing legal advice regarding the EPA Protection

Services Detail" and "serv[ing] as a first-line supervisor in" EPA's Legal Counsel Division,

Suppl. Walker Decl. ¶ 1, not the processing or oversight of FOIA requests.  At the same time,

however, his testimony focuses not on EPA's responses to plaintiff's FOIA Request, but instead

on the availability of information related to CID and PSD and OCEFT policy regarding the

release of agents' names.  His testimony is therefore properly evaluated under the generally

applicable standard for a declarant's personal knowledge of information acquired in his official

capacity, rather than some measure tied to being engaged in the processing of FOIA requests.[5]

Under this standard, the Supplemental Walker Declaration passes muster.  Walker attests

that his declaration is "based on [his] own personal knowledge, on information contained in the

records of the [EPA], or on information supplied to [him] by employees under [his] supervision

or employees in other EPA offices," Suppl. Walker Decl. at 1, and "affirm[s] under penalty of

perjury" that his "declaration is true and correct," *id.* at 5.  He states that, as the Deputy Director

of OCEFT's Legal Counsel Division, he is "a first-line supervisor" within OCEFT and

"provid[es] legal advice regarding [PSD]," *id.* ¶ 1, and that he "ha[s] read and [is] personally

familiar with" plaintiff's FOIA Request, *id.* ¶ 2.  Walker's position within OCEFT, his access to

and review of EPA records, his knowledge about OCEFT policies, and his representation that he

---

the processing of those records pursuant to the FOIA" (second alteration in original)); *Niskanen Ctr., Inc. v. U.S. Dep't of Energy*, 328 F. Supp. 3d 1, 7, 10, 15 (D.D.C. 2018) (declaration of "the FOIA Officer in [the agency's] Office of Public Information," who was "the manager for all FOIA requests sent to [agency] HQ" (internal quotation marks omitted)); *Hainey v. U.S. Dep't of Interior*, 925 F. Supp. 2d 34, 40 (D.D.C. 2013) (declaration of attorney who "was assigned to this case involving [plaintiff's] FOIA request" and whose duties included "provid[ing] legal advice to the . . . FOIA Office" and "assist[ing] . . . with FOIA litigation" (internal quotation marks omitted)); *Barnard*, 531 F. Supp. 2d at 137 (declaration of "the Chief of the FOIA/Privacy Act . . . Section at" the agency, who "reviewed the records" at issue); *Carter, Fullerton & Hayes LLC v. FTC*, 520 F. Supp. 2d 134, 140 (D.D.C. 2007) (declaration of "Supervisory Attorney of the FOIA Unit of the Office of the General Counsel within the FTC").

[5]      Plaintiff's extensive arguments as to why the Supplemental Walker Declaration does not demonstrate Walker's personal knowledge of the procedures EPA uses to handle FOIA requests or his familiarity with the records produced in response to the FOIA request, *see* Pl.'s Reply at 2–8, are simply irrelevant since those arguments would apply only to an agency official recounting information acquired in the course of his official duties related to the agency's search for and processing of responsive requests, and that is neither the purpose nor the subject matter of the information described in the challenged Declaration.

acquired information from other EPA employees in the course of his official duties together demonstrate that Rule 56's personal-knowledge requirement is met.[6]

### 2. *The Supplemental Walker Declaration Does Not Contain Inadmissible Hearsay*

Plaintiff next argues that the Supplemental Walker Declaration should be completely stricken or have certain paragraphs excised "because [it] relies on inadmissible hearsay," Pl.'s Mem. at 6; *see also id.* at 10 n.4, in the form of "certain unspecified records and information supplied to Mr. Walker by other individuals," *id.* at 7; *see also* Pl.'s Reply at 9–11.  EPA contends that the Declaration "complies with established law regarding the use of hearsay in agency FOIA declarations," Def.'s Reply at 5, citing to cases in this District finding that "'[t]he use of hearsay in agency FOIA affidavits is generally acceptable,'" *id.* (alteration in original) (quoting *Taylor Energy Co. LLC v. U.S. Dep't of Interior*, 271 F. Supp. 3d 73, 92 (D.D.C. 2017)) (citing *Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 19 (D.D.C. 2009)).

Plaintiff counters that these cases stand primarily for the proposition that courts may "allow[] limited hearsay regarding the adequacy of an agency's search," not for the broader position "that hearsay is admissible for any other purpose in FOIA cases."  Pl.'s Reply at 9.  Indeed, courts have declined to adopt a permissive approach to hearsay in all aspects of FOIA cases and thus, for example, have rejected as impermissible hearsay an agency's invocation of FOIA exceptions reliant on out-of-court statements by private third parties.  *See, e.g.*, *Brown v. Perez*, 835 F.3d 1223, 1231–33 (10th Cir. 2016) (refusing to weigh third-party letters in Exemption 4 analysis); *Leopold v. U.S. Dep't of Justice*, Civ. A. No. 19-3192 (RC), 2021 U.S.

---

[6]    *Cf. Teva Pharms. USA, Inc. v. FDA*, Civ. A. No. 20-808 (BAH), 2020 U.S. Dist. LEXIS 245082, at *44 n.3 (D.D.C. Dec. 31, 2020) (holding that personal knowledge could "be inferred" from a declarant's "position" as an employee of plaintiff paired with "representations in his sworn statement"); *Wye Oak Tech., Inc. v. Republic of Iraq*, No. 1:10-cv-01182-RCL, 2018 U.S. Dist. LEXIS 194225, at *25, *29–30 (D.D.C. Nov. 14, 2018) (finding declarants' statements that they were "authorized and qualified to make the declaration based on their positions" and certification that their declarations were "'true and correct' under the penalty of perjury" sufficient to "satisfy the low bar set forth in Rule 56's personal knowledge requirement").

Dist. LEXIS 6236, at \*14–20 (D.D.C. Jan. 13, 2021) (declining to consider letters by third parties proffered by the government to establish its FOIA exemption claims on hearsay grounds); *Humane Soc'y of U.S. v. Animal & Plant Health Insp. Serv.*, 386 F. Supp. 3d 34, 44 (D.D.C. 2019) ("To be sure, courts may consider hearsay in FOIA cases when assessing the adequacy of the agency's search. . . . But it is a different matter to rely on out-of-court statements from private third-parties to justify an agency's withholding." (internal citations omitted)).

Hearsay evidence in testimony by agency declarants based upon information gleaned from personal familiarity with agency practices or from information relayed by other agency personnel, however, presents a different case.  The D.C. Circuit in *Londrigan v. FBI*, 670 F.2d 1164 (D.C. Cir. 1981), recognized that statements by agency declarants who are knowledgeable insiders as to the agency practices and procedures on which they testify and who acquire knowledge from examination of agency records constituting public records and reports are admissible, and, on these bases, determined that an FBI agent's testimony based on his review of agency records and knowledge of FBI investigative policies and practices could be considered in assessing an agency's withholdings under the Privacy Act.  *Id.* at 1174–75.  Relying on *Londrigan*'s reasoning, in this Circuit, agency declarants' testimony based on information obtained in the course of their official duties or from review of agency records is routinely considered when evaluating an agency's invocation of FOIA exemptions.  *See, e.g.*, *Leopold*, 2021 U.S. Dist. LEXIS 6236, at \*14–20 (distinguishing, in the context of evaluating FOIA exemptions, statements by agency declarants relying on information obtained in the course of their official duties from out-of-court statements by third parties); *Canning v. U.S. Dep't of State*, 134 F. Supp. 3d 490, 510–11 (D.D.C. 2015) (determining that agency declarant's statements reflecting "information obtained through consultation with other agencies" were not inadmissible

hearsay and weighing the testimony in its analysis of the agency's withholdings); *Barnard*, 598 F. Supp. 2d at 19 (rejecting plaintiff's argument that agency declarations contained inadmissible hearsay based "on the fact that the declarants were *told* certain information" by other agency employees and considering the declarations in its Exemption 7(C) and 7(E) balancing).  The Supplemental Walker Declaration likewise relies on the declarant's review of "information contained in the records of the [EPA], or on information supplied . . . by employees under [his] supervision or employees in other EPA offices."  Suppl. Walker Decl. at 1.  Under the *Londrigan* standard, it therefore does not contain inadmissible hearsay.

Plaintiff protests that "*Londrigan* is not on point and provides no justification for an exception to the rule against hearsay" because the hearsay at issue in that case "was not a statement conveyed by a third party, but was in fact based on information contained in one of the records the agent reviewed."  Pl.'s Reply at 10.  This claimed contrast is "a distinction without a difference," because the *Londrigan* rule encompasses all information obtained by a declarant in the course of official duties, whether through conversation with other agency employees or review of documents.  *Barnard*, 598 F. Supp. 2d at 19.  Even if plaintiff's distinction were persuasive, each paragraph of the Supplemental Walker Declaration that, in plaintiff's view, relies on inadmissible hearsay characterizes documents and records reviewed by the declarant that are either agency records, records previously submitted by plaintiff in this case, or both, and would therefore fall within plaintiff's narrower interpretation of the *Londrigan* exception.  *See* Pl.'s Mem. at 10 n.4; Suppl. Walker Decl. ¶¶ 6–10, 13.  The Supplemental Walker Declaration does not contain inadmissible hearsay and will not be stricken on this ground.

3.     *The Supplemental Walker Declaration Does Not Violate the Best Evidence Rule*

Plaintiff's third challenge alleges that the Supplemental Walker Declaration "improperly claims to characterize 'unspecified information contained in the records of the [EPA],'" without either "provid[ing] these records to the Court" or "identif[ying] what these records are," in violation of the so-called "best evidence rule." Pl.'s Mem. at 7 (quoting Suppl. Walker Decl. at 1); *see also id.* at 7–9, 10 n.5; Pl.'s Reply at 11–12. Federal Rule of Evidence 1002 codifies the best evidence rule and provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." FED. R. EVID. 1002. As plaintiff concedes, *see* Pl.'s Reply at 11, the best evidence rule "'is a rule of preference, not a solid bar on secondary evidence,'" *Porup v. CIA*, Case No. 17-cv-72, 2020 U.S. Dist. LEXIS 44963, at *10 (D.D.C. Mar. 16, 2020), *aff'd*, No. 20-5144, 2021 U.S. App. LEXIS 15149 (D.C. Cir. May 21, 2021) (quoting *United States ex rel. El-Amin v. George Wash. Univ.*, 522 F. Supp. 2d 135, 145 (D.D.C. 2007)).

Plaintiff claims that four paragraphs in the Supplemental Walker Declaration "appear to characterize available records instead of providing them," in violation of the best evidence rule. Pl.'s Mem. at 10; *see also id.* at 10 n.5; Suppl. Walker Decl. ¶¶ 4–7. These paragraphs describe the thirty calendar entries that EPA produced to plaintiff with agent names redacted, Suppl. Walker Decl. ¶ 4; plaintiff's FOIA Request, *id.* ¶ 5; a separate FOIA request related to EPA's criminal enforcement activities and the publicly available records EPA produced in response to that request, *id.* ¶ 6; and other FOIA requests received by OCEFT "related to specific aspects of the PSD or the allocation of enforcement resources," *id.* ¶ 7. Plaintiff contends that "[b]ecause EPA does not allege that the records the [Supplemental] Walker Declaration purports to rely on are unavailable, the Court should strike the [Supplemental] Walker Declaration because its

allegations regarding the contents of the records to which it refers are inadmissible."  Pl.'s Mem. at 8; *see also* Pl.'s Reply at 11–12.  At summary judgment, however, "it is well established that . . . evidence need not be in a form that would be admissible at trial, so long as it is capable of being converted into admissible evidence."  *Porup*, 2020 U.S. Dist. LEXIS 44963, at \*11–12 (internal quotation marks and citation omitted); *see also Porup v. CIA*, No. 20-5144, 2021 U.S. App. LEXIS 15149, at \*24 (D.C. Cir. May 21, 2021) (rejecting plaintiff's objection to declaration's testimony about documentary evidence in FOIA case under the best evidence rule in part because "the facts asserted in the Declaration could have been reduced to admissible evidence . . . if the parties' dispute had gone beyond summary judgment"); *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000) (holding that, at summary judgment, "[w]hile a [party] is not required to produce evidence in a *form* that would be admissible at trial, the evidence still must be capable of being converted into admissible evidence"); FED. R. CIV. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

Under this standard, the fact that, as plaintiff suggests, the underlying records are available mitigates any concerns related to the best evidence rule.  Indeed, one of the records described in the challenged paragraphs, plaintiff's FOIA Request, is already part of the record in this case, *see* FOIA Request, while the records responsive to a separate FOIA request described by Walker are, as he observes, available online, *see* Suppl. Walker Decl. ¶ 6.[7]  As to the remaining records, the disputed calendar entries and additional FOIA requests seeking information about EPA's criminal enforcement resources, Walker has attested that his testimony

---

[7]    *See* FOIA Online, *EPA-HQ-2019-003261 Request Details* (last visited May 23, 2021) https://foiaonline. gov/foiaonline/action/public/submissionDetails?trackingNumber=EPA-HQ-2019-003261&type=request.  The Supplemental Walker Declaration states that these records "are attached" as "Exhibit A," Suppl. Walker Decl. ¶ 6, but this Exhibit was not ultimately filed and is evidently available for review online.

is based on his review of agency records and information received from other agency employees in the course of his duties.  *Id.* at 1.  These statements are sufficient to establish his personal knowledge of the documents he describes, as set forth *supra* Part III.A.1, and he could therefore testify to these facts.  *See Porup*, 2021 U.S. App. LEXIS 15149, at *24 (finding best evidence rule satisfied despite lack of documentary evidence where the declarant "could have testified to the same facts if the parties' dispute had gone beyond summary judgment").  Moreover, the documents themselves, which are apparently available as agency records, could be submitted.  As Walker's challenged descriptions of the records could be readily converted to admissible evidence, plaintiff's best-evidence objection fails.

### 4.   *Alleged Legal Conclusions Will Not Be Stricken*

Plaintiff next contends that portions of the Supplemental Walker Declaration "[s]tat[ing] or indirectly impl[ying] that the records at issue were properly withheld . . . amount to no more than legal conclusions" and therefore "are not permissible in a declaration."  Pl.'s Mem. at 10; *see also id.* at 10–12; Pl.'s Reply at 12–14.  In particular, plaintiff seeks to strike "the first sentence of paragraph 12," Pl.'s Mem. at 11, stating that "[t]hose who serve on the PSD have an expanded privacy interest beyond that of a CID Special Agent," Suppl. Walker Decl. ¶ 12, and paragraph 13, Pl.'s Mem. at 11, which explains that "EPA determined that [PSD] agents have a substantial privacy interest in non-disclosure of their names" and contends that "no public interest is served by disclosing their identities," Suppl. Walker Decl. ¶ 13.  EPA argues that the challenged paragraphs "provide[] factual justifications for the application of FOIA Exemption 7(C)," in an effort to meet EPA's burden to demonstrate that the agents' privacy interests outweigh the public interest in disclosure.  Def.'s Reply at 8; *see also id.* at 8–10; *DiBacco v. U.S. Army*, 795 F.3d 178, 196 (D.C. Cir. 2015) (describing an agency's obligation to

"demonstrate[] that the information withheld logically falls within the claimed exemption" (internal quotation marks and citation omitted)).

Plaintiff's concern that Walker proffers legal conclusions warrants neither the drastic remedy of striking nor the alternative remedy suggested by plaintiff, that the Court "ignore" the challenged statements "and any portions of EPA's briefing relying on [them]."  Pl.'s Reply at 14. The contested paragraphs of the Declaration are best viewed as setting forth Walker's understanding of the issues in the case and the agency's rationale for withholding the agents' names in the first instance, and will be treated as such rather than as legal conclusions.  *See, e.g.*, *Stein v. CIA*, 454 F. Supp. 3d 1, 14 n.3 (D.D.C. 2020) (noting that plaintiff's motion "to strike portions of various agency declarations" was denied on the grounds "that, [t]o the extent that Defendants' declarations contain legal arguments, the court will reach its own legal conclusions and regard the statements in the declarations as explanations of the declarant's understanding of the issues of the case" (alteration in original) (internal quotation marks and citation omitted)); *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 93 F. Supp. 2d 1, 12 (D.D.C. 2000) (determining that, instead of striking challenged portions of agency declarations, "any [s]tatements of ultimate fact and conclusions of law will be regarded simply as declarations of each affiant's understanding of the veracity of [the opposing party's] allegations, to the best of [the affiant's] knowledge" (alterations in original) (internal quotation marks and citations omitted)).  Accordingly, plaintiff's request to strike or disregard paragraphs 12 and 13 of the Supplemental Walker Declaration is denied.

### 5.    *Allegedly Immaterial or Impertinent Statements Will Not Be Stricken*

Finally, plaintiff moves to strike paragraphs 5, 6, and 7 of the Supplemental Walker Declaration, arguing that these paragraphs describing plaintiff's FOIA Request and other requesters' FOIA requests for information about EPA's criminal enforcement activities and

resources, *see* Suppl. Walker Decl. ¶¶ 5–7, are "irrelevant and therefore immaterial and impertinent," Pl.'s Mem. at 12; *see also id.* at 12–13; Pl.'s Reply at 14–18.  This request fails at the outset because, while Federal Rule of Civil Procedure 12(f) provides for the striking of "any redundant, immaterial, impertinent, or scandalous matter" from a pleading, FED. R. CIV. P. 12(f), Rule 56 makes no such provision, and limits a party's ability to object on evidentiary grounds to situations in which "the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence," FED. R. CIV. P. 56(c)(2).

Even if construed as an objection to the relevance of the challenged paragraphs under Federal Rule of Evidence 401, plaintiff's request fares no better.  Rule 401 states that "[e]vidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401.  EPA contends that the disputed paragraphs "are provided to demonstrate that [p]laintiff could obtain" information about EPA's allocation of CID resources "without jeopardizing the privacy interests of PSD agents," which facts "address[] the Court's conclusion [in *ERF I*] that it is not 'clear that plaintiff could obtain the information it seeks through any other publicly available means.'"  Def.'s Reply at 10 (quoting *ERF I*, 2021 U.S. Dist. LEXIS 27748, at *98).  That observation was made in the course of defining the scope of the public interest in disclosure of PSD agents' names, as plaintiff acknowledges, Pl.'s Reply at 16, and in turn informed the dispositive conclusion that the public interest in disclosure prevailed over the agents' privacy interests.[8]  Paragraphs 5, 6, and 7 of the Supplemental Walker Declaration are therefore plainly relevant to the necessary determination, in the Exemption 7(C) balancing

---

[8]     Plaintiff further contends that the facts proffered in the Supplemental Walker Declaration do not show that the agents' names are publicly available and therefore should not alter *ERF I*'s balancing analysis, *see* Pl.'s Reply at 14–18, but this argument goes to the merits of EPA's claims, not to the relevance of the challenged statements.

analysis, of whether the public interest in disclosure of PSD agent names outweighs the privacy interests, and therefore will not be stricken.

*     *     *

In sum, plaintiff's Motion to Strike, in whole or in part, the Supplemental Walker Declaration and portions of EPA's briefing that rely on it is denied.  EPA's Motion to Alter or Amend Judgment is considered next.

## B.     Motion to Alter or Amend Judgment

EPA contends that the grant of summary judgment to plaintiff as to the withholding of PSD agents' names pursuant to Exemption 7(C) was predicated on two errors: first, "fail[ing] to connect the disclosure of the names of individual agents to the articulated public interest" in understanding EPA's criminal enforcement work and resource allocation, Def.'s Mem. at 5; *see also id.* at 4–8; Def.'s Reply at 14–18, and second, crediting plaintiff's "factually incorrect claim[,] . . . advanced for the first time in a reply brief," that EPA routinely releases the names of CID and PSD agents for public relations purposes, Def.'s Mem. at 9; *see also id.* at 8–11; Def.'s Reply at 18–22.  In the agency's view, reconsideration under Rule 59(e) is therefore warranted. Plaintiff not only disputes EPA's claims of errors, but also challenges this reconsideration motion as procedurally improper.  *See* Pl.'s Opp'n at 7–13.  Plaintiff's procedural arguments are addressed before turning to the merits of EPA's Motion to Alter or Amend Judgment.

### 1.     *EPA's Motion Is Not Procedurally Improper*

Plaintiff argues that EPA's motion is procedurally improper under Rule 59(e) on two grounds: first, EPA's motion is untimely because EPA could have sought leave, but did not, to file a sur-reply to address plaintiff's purportedly inaccurate characterization of the agency's policies regarding release of agent names before the entry of judgment, Pl.'s Opp'n at 7–9; and, second, EPA has failed to show any of the threshold circumstances warranting reconsideration

23

under Rule 59(e), *id.* at 9–13; *see supra* Part II.B.  As explained below, while prompt correction

of information submitted to the Court would indisputably have been helpful here, neither ground

is ultimately persuasive.

### a)  EPA's Motion, Though Belated, Is Not Barred as Untimely

First, plaintiff disputes EPA's claim that "it lacked an opportunity to respond" to

plaintiff's factual assertion, which was raised for the first time in its Reply, that CID and PSD

agent names are regularly released.  Plaintiff insists that this assertion in reply stemmed from

arguments made in its cross-motion for summary judgment, to which EPA could have responded

in its Opposition.  Pl.'s Opp'n at 7.  Moreover, plaintiff contends that EPA could have sought

leave to file a sur-reply before the entry of judgment and elected not to do so.  *Id.*[9]  As a result,

plaintiff claims, EPA's belated effort to correct the record through a motion for reconsideration

is improper and untimely, and should be rejected.  *Id.* at 7–9.

Although "an issue presented for the first time in a motion pursuant to Federal Rule of

Civil Procedure 59(e) generally is not timely raised[,] . . . the district court [may] exercise[] its

discretion to excuse the party's lack of timeliness and consider the issue."  *District of Columbia

v. Doe*, 611 F.3d 888, 896 (D.C. Cir. 2010) (internal quotations and citation omitted).  Here, the

fact that EPA did not have an opportunity as of right to address plaintiff's assertion, raised in

reply, that EPA regularly releases CID agents' names for public-relations purposes counsels in

favor of considering the reconsideration motion.

Though plaintiff now argues that this issue of EPA's routine disclosure of CID agent

names was presented in its cross-motion for summary judgment and not for the first time in

---

[9]      The parties make no reference to the fact that, in addition to seeking permission to file a sur-reply to correct
the record, EPA could also have alerted plaintiff about any erroneous factual assertion or conclusion made to the
Court and thereby provided an opportunity for plaintiff to correct or clarify the reply filing.  The record is silent as to
whether EPA made any such effort.

reply, Pl.'s Opp'n at 7, 18–19, this characterization of the record is a bit exaggerated.  In its

cross-motion, plaintiff contended only that PSD agents did not "have any independent privacy

interest in their email addresses," citing to two district court criminal cases in which CID agents

were identified by name and noting that plaintiff was able to use these names to locate agents'

email addresses through EPA's online staff directory.  Pl.'s Mem. P. & A. Supp. Cross-Mot.

Summ. J. & Opp'n Def.'s Mot. Summ. J. at 30, ECF No. 20-1 (citations omitted).  This

argument, to which EPA responded in its Opposition by stating that "an email address on the

staff directory can only be assessed [sic] if one already knows the name of the individual

employee," *see* Def.'s XMSJ Reply at 17 n.7, should have alerted EPA to the broader issue of

agents' names being publicly available, but did not put EPA on specific notice that its policies

with respect to disclosure of agent identities for public-relations purposes were at issue.  Not

until its Reply did plaintiff make the more fulsome factual assertion in support of its claim for

PSD agents' names now contested by the parties, that "EPA regularly publicizes the names of its

agents in press releases and other news stories related to environmental enforcement actions," a

policy that, in plaintiff's view, "undercut[] EPA's withholding of the PSD agent identities here."

Pl.'s XMSJ Reply at 12.  As noted *supra* Part I.B, plaintiff supported this claim with a

declaration, *see* Suppl. Wilcox Decl. ¶¶ 2–8, and seven exhibits, *see id.*; Suppl. Walker Decl. ¶ 9

(identifying each of the exhibits).  Had EPA reviewed this voluminous filing in reply, this factual

assertion would have been difficult to miss.  Yet, over the next three months before issuance of

*ERF I*, EPA said nothing, seemingly asleep at the proverbial switch.

   As to EPA's failure to submit a sur-reply to correct the record prior to the entry of

judgment, plaintiff accurately notes both that this Court's standing order provides for the

submission of sur-replies in appropriate circumstances, *see* Standing Order ¶ 5(b), ECF No. 6

("A party may not file a sur-reply without first obtaining leave of the Court and may do so only upon a specific showing of good cause."), and that "leave to file a surreply is 'routinely granted when a party is unable to contest matters presented to the court for the first time in the last scheduled pleading,'" *United States ex rel. Barko v. Halliburton Co.*, 241 F. Supp. 3d 37, 80 (D.D.C. 2017) (quoting *Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75, 85 (D.D.C. 2014)).  *See* Pl.'s Opp'n at 7–8, 20.  Nonetheless, "[i]n general, sur-replies are 'disfavored[,]'" *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 154 (D.D.C. 2015) (quoting *Glass v. Lahood*, 786 F. Supp. 2d 189, 231 (D.D.C. 2011)), and "[t]he Local Rules of this Court contemplate that there ordinarily will be at most three memoranda associated with any given motion: (i) the movant's opening memorandum; (ii) the non-movant's opposition; and (iii) the movant's reply," *Crummey v. Soc. Sec. Admin.*, 794 F. Supp. 2d 46, 62 (D.D.C. 2011); *see also* L. Civ. R. 7.  Thus, EPA correctly contends that it had no opportunity as-of-right to correct the erroneous claims raised in plaintiff's Reply.  *See* Def.'s Reply at 11–13.[10]

The agency further argues that its decision not to pursue a sur-reply, made in reliance on the practice of this Court "generally refus[ing] to entertain arguments raised for the first time in a reply brief," *United States v. All Assets Held at Bank Julius*, 251 F. Supp. 3d 82, 104 (D.D.C. 2017), was reasonable.  Def.'s Mem. at 9–10; Def.'s Reply at 11–13.  Yet sur-replies are

---

[10]    Plaintiff relies on *SmartGene, Inc. v. Advanced Biological Laboratories, S.A.*, 915 F. Supp. 2d 69 (D.D.C. 2013), and *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5 (D.D.C. 2011), to support its claim that EPA's motion should be rejected due to its failure to seek leave to file a sur-reply.  Both cases demonstrate the discretion granted to resolve motions for reconsideration and how dilatory conduct, such as EPA's in this case, can doom such a motion.  In *SmartGene,* a motion for reconsideration was rejected because the defendants skipped the opportunity to clarify the disputed claims "at the motions hearing, and could have provided additional briefing if they believed that the Court had an incorrect understanding of the plaintiff's position," 915 F. Supp. 2d at 76, and defendants further failed to file a notice of supplemental authority before the entry of judgment, when it had time to do so, *id.* at 80–81.  Similarly, in *Estate of Gaither,* a motion for reconsideration, under Federal Rule of Civil Procedure 54(b), raised three legal arguments, 771 F. Supp. 2d at 9, one of which was new and should have been addressed in the defendant's own motion for summary judgment, while the second and third arguments had been previously decided, *id.*  Neither of these cited cases involved, as here, however, correction of a factual assertion on which judgment implicating the privacy rights of individuals was predicated and thus do not dictate denial of EPA's motion for reconsideration.

routinely granted to allow parties to respond to assertions made for the first time in reply.  In light of plaintiff's explicit and obvious dependence on a misunderstanding of EPA's policies with respect to disclosure of PSD agents' identities, the agency's decision to allow such a glaring factual inaccuracy to stand on the record is inexplicable.  EPA's belated effort in the pending motion to correct this error is therefore untimely, but the costs of its failure to remedy the record prior to the entry of judgment fall squarely on the individual PSD agents named in the challenged calendar entries, whose identities will be made public and who may be subject to harassment or other unwarranted intrusions absent reconsideration.  Only to avoid imposing the burden of EPA's dilatoriness on these law-enforcement agents will EPA's motion be deemed procedurally adequate, despite EPA's failure to raise its current arguments prior to the entry of judgment.

### b)  EPA's Clarification of its Policies Regarding Release of Agent Names Is Sufficient to Warrant Reconsideration

Plaintiff next argues that EPA has not demonstrated one of the recognized circumstances in which reconsideration under Rule 59(e) may be warranted because the agency "has identified no error, let alone a clear error" and "show[s] no injustice, let alone manifest injustice."  Pl.'s Opp'n at 9; *see also id.* at 9–13; *supra* Part II.B.  A party seeking to alter or amend a judgment need only demonstrate that one of the four enumerated circumstances supporting reconsideration exists.  *See Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012); *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 17 (D.D.C. 2015).  Thus, EPA must establish either clear error or manifest injustice, not both, for its motion to be considered.[11]

Rule 59(e) sets a high bar for a finding of clear error, which is met when the final judgment entered is "dead wrong," *CNN, Inc. v. FBI*, 401 F. Supp. 3d 187, 193 (D.D.C. 2019), including because of "errors of fact appearing on the face of the record, or errors of law,"

---

[11]     The parties agree that EPA's motion is not brought on the basis of a change in the controlling law or the availability of new evidence.  *See* Pl.'s Opp'n at 9; Def.'s Reply at 13–14.

*Judicial Watch, Inc. v. U.S. Dep't of State*, 282 F. Supp. 3d 338, 341 (D.D.C. 2017) (quoting

*Hammond v. Kempthorne*, 448 F. Supp. 2d 114, 118 (D.D.C. 2006)).  EPA contends that the

Court made a clear error of fact by crediting plaintiff's incorrect assertion that "EPA regularly

publicizes the names of its agents in press releases and other news stories," Def.'s Reply at 14

(internal quotation marks omitted), and that this error of fact led to an error of law in the

Exemption 7(C) balancing analysis, *id.* at 18–22.  Plaintiff frames this argument as EPA's "mere

disagreement with the Court's Order," because, in its view, "[t]hese issues were fully briefed on

cross-motions for summary judgment."  Pl.'s Opp'n at 10.  As explained above, EPA had no

opportunity as of right to respond to plaintiff's description of the agency's alleged practice of

releasing agent names and simply let months pass without seeking to file a sur-reply or take other

action to correct plaintiff's factual assertion.  *See supra* note 9.  It now explains that OCEFT has

a "policy of providing supervisor names when spokespeople are needed to comment on

significant case developments, but not producing the names of the Agents who serve on the

Administrator's security detail," Suppl. Walker Decl. ¶ 10, because the agency believes that

supervisors "do[] not have the same privacy concerns as a staff-level agent in CID," *id.* ¶ 11.

This description of agency policy directly contradicts the description proffered by plaintiff and

accepted by the Court, and therefore suggests a clear error of fact appearing on the face of *ERF I*.

This finding alone is sufficient to warrant reconsideration, and EPA's showing of manifest

injustice need not be considered.  In sum, EPA's Motion to Alter or Amend Judgment is

procedurally appropriate.  The merits of its request for reconsideration are addressed next.

### 2. *EPA Has Shown that PSD Agents' Privacy Interests Outweigh the Public Interest in Disclosure*

EPA raises two challenges to *ERF I*'s conclusion that the public interest in disclosure of

PSD agents' identities outweighs individual agents' privacy interests.  First, the agency argues

that *ERF I* failed to "identify[] the nexus required by precedent between the requested information and the asserted public interest that would be advanced by disclosure" and therefore committed an error of law.  Def.'s Mem. at 5; *see also id.* at 4–8; Def.'s Reply at 14–18.  EPA next claims, as explained above, that *ERF I* made a clear error of fact by accepting plaintiff's assertion that "EPA regularly publicizes the names of its agents in press releases and other news stories," Def.'s Reply at 14 (internal quotation marks omitted), and that this factual error led to a legally incorrect weighing of the public and private interests in the Exemption 7(C) balancing analysis, *see id.* at 18–22; Def.'s Mem. at 8–11.  Although the first of these arguments, which the agency failed to raise prior to the entry of judgment, is incorrect and unavailing, the second provides a basis on which to vacate the entry of summary judgment for plaintiff as to withholding of the PSD agents' names.

> a) ***ERF I*** **Identified a Sufficient Nexus Between Disclosure of PSD Agents' Identities and the Public Interest**

EPA first contends that *ERF I* failed to "identify[] the nexus required by precedent between the requested information and the asserted public interest that would be advanced by disclosure."  Def.'s Mem. at 5; *see also id.* at 4–8; Def.'s Reply at 14–18.  Plaintiff counters that "EPA failed to argue that Plaintiffs [sic] had not identified a nexus between this public interest and the records at issue in its briefing" on the parties' cross-motions for summary judgment, Pl.'s Opp'n at 15, an argument that EPA disputes, pointing to its argument presented in opposition "that not only was . . .cost information publicly available but '[t]he specific names and email addresses of individual agents as they appear in calendar entries offers [sic] no insight into . . . costs'" associated with staffing former Administrator Wheeler's PSD, as addressing the nexus issue,  Def.'s Reply at 16 (alteration in original) (quoting Def.'s XMSJ Reply at 16).

Even accepting EPA's premise that its nexus argument was previously raised, it does not supply a basis for reconsideration.  "[T]he law is well-settled that litigants may not use Rule 59(e) either to repeat unsuccessful arguments or to assert new but previously available arguments."  *Nat'l Fair Hous. All. v. Carson*, 397 F. Supp. 3d 1, 8 (D.D.C. 2019); *see also New Lifecare Hosps. of N.C. LLC v. Azar*, 466 F. Supp. 3d 124, 129 (D.D.C. 2020).  The precise argument to which EPA now points was considered and rejected in *ERF I*.  Quoting from EPA's Opposition, *ERF I* determined that, "[e]ven if EPA is correct that '[t]he specific names and email addresses of individual agents . . . offer[] no insight into [the] costs' associated with agents' assignment to the PSD beyond that provided by the cost-related information on its website, the separate public interest in EPA's reallocation of its CID agents for use by the Administrator . . . and the impact of such reallocation on EPA's execution of its statutory duties remains unsatisfied."  2021 U.S. Dist. LEXIS 27748, at *97–98 (second, third, and fourth alterations and omissions in original) (quoting Def.'s XMSJ Reply at 16).  *ERF I* therefore concluded that, notwithstanding the cost-related information that EPA has made publicly available, a nexus between the requested information and the public interest existed because "[w]ithout the identities of the PSD agents, . . . plaintiff 'cannot determine which CID agents were transferred to the PSD, and therefore taken off of environmental enforcement duties; how that may affect the CID's environmental enforcement abilities; and which statute(s) these PSD agents formerly enforced prior to being reassigned.'"  *Id.* at *97 (quoting Pl.'s XMSJ Reply at 12).  EPA may not now relitigate this issue under the guise of Rule 59(e).

To the extent that EPA seeks to advance a new theory of why no nexus between disclosure of PSD agents and the public interest is present, this attempt is similarly unsuccessful. In support of its current nexus argument, EPA relies primarily on *National Archives & Records*

*Administration v. Favish*, 541 U.S. 157 (2004), a 2004 Supreme Court decision.  *See* Def.'s

Mem. at 4–8; Def.'s Reply at 14-18.  A motion for reconsideration, however, "is 'not a vehicle to

present a new legal theory that was available prior to judgment.'"  *Leidos, Inc.*, 881 F.3d at 217

(quoting *Patton Boggs LLP*, 683 F.3d at 403).  As EPA's reliance on *Favish*¸ a case decided

more than fifteen years ago, demonstrates, this theory could have been raised in the agency's

briefing of its Exemption 7(C) withholdings in the parties' cross-motions for summary judgment,

at which time, beyond the cost-information argument outlined above, the agency "argue[d] only

that, in the 'absence of any countervailing public interest,' [its] withholdings [we]re justified,"

*ERF I*, 2021 U.S. Dist. LEXIS 27748, at *98–99 (quoting Def.'s XMSJ Reply at 16), and

"ma[de] no apparent effort to weigh the public interest in disclosure against PSD agents' privacy

interests in nondisclosure of their names," *id.* at *98.  The agency now seeks to recast its nexus

argument in terms of the relationship between PSD agents' names and EPA's resource allocation

decisions, but "[w]hen a party first argues an unavailing theory of liability, and then attempts to

argue an alternative or contrary position in a motion for reconsideration, this [does not]

constitute[] . . . a clear error of law sufficient to support a motion for reconsideration."  *Foster v.*

*Sedgwick Claims Mgmt. Servs., Inc.*, 842 F.3d 721, 735 (D.C. Cir. 2016).  EPA had ample

opportunity to submit this theory to the Court in its previous briefing, but chose not to do so.

The agency cannot belatedly correct this strategic decision through a motion for reconsideration.

Moreover, even if EPA's argument were timely, *ERF I* identified an adequate nexus

between the agents' names and the asserted public interest in disclosure.  The nexus requirement

set out in *Favish* is simply a requirement that "the [requested] information [be] likely to

advance" the public interest set forth by the requester.  541 U.S. at 172.  The example of a

sufficient nexus provided in *Favish*, that "photographic images and other data pertaining to an

individual who died under mysterious circumstances . . . [are] necessary to show the investigative agency or other responsible officials acted negligently or otherwise improperly in the performance of their duties," *id.*, demonstrates that the nexus need not be defined at a high level of specificity, nor must a court connect every dot between the requested information and public interest it serves for the requirement to be satisfied.

The nexus set forth in *ERF I* meets this standard.  *ERF I* stated that the "significant public interest in tracing EPA's transfer and reallocation of law enforcement agents from investigatory duties within CID to the Administrator's PSD and any concomitant reduction in enforcement actions at EPA" would "be furthered by disclosure of the names of the Administrator's PSD agents because plaintiff, or others, can use this information to determine how many agents were shifted from investigation and enforcement to protection."  *ERF I*, 2021 U.S. Dist. LEXIS 27748, at *100 (internal quotation marks omitted).  In support of this conclusion, it observed that a report by EPA's Office of Inspector General had concluded that former "Administrator Pruitt's security detail was three times as large as for previous Administrators, and that the PSD agents who contributed to this increased detail were permanently transferred from CID . . . to Pruitt's security detail with no significant responsibilities for investigating environmental crimes pursuant to EPA's statutory mandates."  *Id.* at *96–97 (internal quotation marks and citations omitted).  *ERF I* also credited plaintiff's claim that "[w]ithout the identities of the PSD agents . . . plaintiff 'cannot determine which CID agents were transferred to the PSD, and therefore taken off of environmental enforcement duties; how that may affect the CID's environmental enforcement abilities; and which statute(s) these PSD agents formerly enforced prior to being reassigned.'"  *Id.* at *97 (quoting Pl.'s XMSJ Reply at 12).  Altogether, these findings established a clear nexus between PSD agents' identities and "the . . . public interest in

EPA's reallocation of its CID agents for use by the Administrator as PSD agents and the impact

of such reallocation on EPA's execution of its statutory duties." *Id.* at \*98. *ERF I*'s explanation

thus offers a sufficient nexus between the requested information and the public interest,

comparable to like connections found to be sufficient in other cases in this Circuit.[12]

EPA further contends that *ERF I* did not meet the nexus requirement because "the

disclosure of agent names listed in calendar entries . . . does not, in and of itself, provide insight

as to how staff is allocated between CID and PSD," therefore indicating that "[t]he *Favish* nexus

requirement . . . precludes release of the agents' names." Def.'s Mem. at 5; *see also* Def.'s

Reply at 15–16 ("The name of an individual agent offers no information concerning whether that

agent was transferred . . ., and it offers no information concerning the allocation of law

enforcement resources."). Yet courts may "take[] derivative uses into account in evaluating the

impact of disclosure on the public interest," including when assessing requests for disclosure of

names or other identifying information. *ACLU*, 655 F.3d at 15 (footnote omitted) (considering

derivative uses in assessing the relevant public interests in disclosure of names for Exemption

7(C) purposes).[13] That the names as they appear in a calendar entry do not provide directly

---

[12]    *See, e.g.*, *ACLU*, 655 F.3d at 13–14 (nexus met where requested information, consisting of individual names, would be used to "shed[] light on the scope and effectiveness of cell phone tracking as a law enforcement tool," "provide information regarding how often prosecutions against people who have been tracked are successful," "provide further insight regarding the efficacy of the technique . . . [and] the standard or standards the government uses to justify warrantless tracking," and "provide facts regarding the duration of tracking and the and the quality of tracking data"); *Elec. Frontier Found. v. Dep't of Justice*, 384 F. Supp. 3d 1, 16 (D.D.C. 2019) (identifying a sufficient nexus between the name of an individual and the "public interest in learning about the FBI's use of computer technician informants" where the requester "could use the disclosed name to review filings and transcripts" and gain insights into law enforcement techniques and their intrusiveness); *Prop. of People, Inc.*, 405 F. Supp. 3d at 117 (finding nexus satisfied where plaintiffs sought FBI investigative and non-investigative files about a congressman "to discover how the FBI handled the issue of threats posed by Russian intelligence to the U.S. political system" (internal quotation marks omitted)).

[13]    *See also, e.g.*, *Painting & Drywall Work Pres. Fund, Inc. v. Dep't of Hous. & Urb. Dev.*, 936 F.2d 1300, 1303 (D.C. Cir. 1991) (finding that "a relevant public interest could exist where [a list of names] might provide leads for an investigative reporter seeking to ferret out what government is up to," but subsequently concluding that this public interest was outweighed by the individuals' privacy interests (internal quotation marks omitted)); *Tokar v. U.S. Dep't of Justice*, 304 F. Supp. 3d 81, 99–100 (D.D.C. 2018) (ordering disclosure of names of corporate compliance monitor candidates pursuant to Exemption 7(C) where the requester planned to use the names "to learn about the inner workings of the selection process" and "to investigate" firms' strategies when nominating monitors);

information about EPA's allocation of criminal enforcement resources therefore does not foreclose the identification of a sufficient nexus, in light of the potential derivative uses described above.  In short, *ERF I* correctly identified a nexus between disclosure of PSD agents' names and the public interest in understanding EPA's allocation of resources to its criminal enforcement activities.  The agency has therefore failed to demonstrate a clear error of law warranting reconsideration on this ground.[14]

> **b)  EPA's Clarification that PSD Agents' Names Are Not Routinely Released Tilts the Exemption 7(C) Balancing Analysis in its Favor**

EPA next argues, as explained *supra* Part III.B.1.b, that *ERF I* made a clear error of fact by accepting plaintiff's inaccurate assertion that "EPA regularly publicizes the names of its agents in press releases and other news stories," Def.'s Reply at 14 (internal quotation marks omitted), and that this factual error resulted in an erroneous legal conclusion that the public interest in disclosure outweighed PSD agents' privacy interests in the Exemption 7(C) balancing

---

*Gilman v. Dep't of Homeland Sec.*, 32 F. Supp. 3d 1, 14–16 (D.D.C. 2014) (directing release of names and addresses of private landowners in emails between landowners and U.S. Customs and Border Protection in part because disclosure would help the public to understand the consequences of constructing a wall along the U.S.–Mexico border); *supra* note 12 (collecting additional cases).

[14]     In support of its nexus argument, EPA originally contended in its opening reconsideration brief that "no part of [plaintiff's FOIA Request] sought records related to the public interest relied upon by the Court in its Exemption 7(C) balancing analysis," Def.'s Mem. at 6, and this fact demonstrated that no connection existed between the public interest in EPA's CID resource allocation and the disclosure of PSD agents' names as they appear in calendar entries.  EPA now concedes, however, that plaintiff's original intent in seeking the calendar entries is of no import, as the Exemption 7(C) inquiry weighs the general public interest in requested information against the privacy interests of individuals.  Def.'s Reply at 23; Pl.'s Opp'n at 23–24.  Shifting tacks, the agency instead argues that other FOIA requests specifically seeking information about OCEFT show that "[p]laintiff could obtain the information it seeks through other publicly available means," Def.'s Reply at 22–23, for example, by "filing a FOIA request that directly seeks information pertaining to the public interest" in understanding EPA's law-enforcement resource allocation, Def.'s Mem. at 7, or by consulting information made publicly available after being produced in response to another FOIA request, *see* Suppl. Walker Decl. ¶ 6, such that disclosure of PSD agent names is not necessary to advance the public interest.  EPA asserts that this information is meant to correct *ERF I*'s observation that it was not "clear that plaintiff could obtain the information it seeks through any other publicly available means."  2021 U.S. Dist. LEXIS 27748, at *98.  As *ERF I* acknowledged, "the availability of the information [sought by a FOIA requester] through other sources" is "relevant to the public interest."  *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015); *see also ERF I*, 2021 U.S. Dist. LEXIS 27748, at *97.  EPA, however, failed to raise either of the two alternative sources of information to which it now points in its earlier briefing.  This new evidence, consisting of agency records, was available to EPA prior to the entry of judgment but is raised for the first time in EPA's motion for reconsideration.  It is therefore untimely.  *See, e.g.*, *Foster*, 842 F.3d at 735.

analysis, *see id.* at 18–22; Def.'s Mem. at 8–11.  The agency's clarification of its policies limiting the release of CID agent names to the names of supervisors designated to act as spokesperson indicates that *ERF I* clearly erred in crediting plaintiff's characterization of EPA's practice.  For the reasons explained below, this factual correction changes the relative weight of the public and private interests such that PSD agents' privacy interests prevail, and EPA therefore properly invoked Exemption 7(C) to withhold their names from the calendar entries produced to plaintiff.[15]

As set forth *supra* Part I.C, EPA has explained in the Supplemental Walker Declaration that "OCEFT policy is to not disclose the names of" PSD agents and that the agency uses only "the top supervisor of the relevant criminal enforcement field office, the Special Agent-In-Charge or Assistant Special Agent-In-Charge, to serve as the spokesperson for the Agency." Suppl. Walker Decl. ¶ 8.  In the agency's view, "[a] supervisor in CID does not have the same privacy concerns as a staff-level agent" because staff-level agents "commonly serve as undercover agents" and "participate in investigations."  *Id.* ¶ 11.  PSD agents in particular "have an expanded privacy interest" beyond other staff-level agents because they "face a heightened and particular threat of harassment" stemming from their "access to highly sensitive law

---

[15]     EPA also argues that "ordering [the agency] to release the names of the PSD agents in the Administrator's calendar entries results in the de facto release of PSD agents' email addresses and phone numbers" because EPA's "publicly available, online staff directory allows users to search for EPA employees by first and last names" and its search results "include EPA employees' email addresses and phone numbers."  Def.'s Mem. at 7–8.  Thus, disclosure of PSD agents' names would allow members of the public to readily locate agents' direct contact information.  In the agency's view, because *ERF I* concluded that release of PSD agents' email addresses was not justified, *see* 2021 U.S. Dist. LEXIS 27748, at *93–95, the fact that disclosure of agents' names would indirectly lead to the same result shows that EPA's withholding of the names is justified.  EPA previously raised this argument, contending in support of its position that neither PSD agent names nor agent email addresses should be disclosed that "an email address on the staff directory can only be assessed [sic] if one already knows the name of the individual employee," Def.'s XMSJ Reply at 17 n.7, and *ERF I* explicitly addressed the staff directory in concluding that EPA had appropriately withheld agents' emails addresses, 2021 U.S. Dist. LEXIS 27748, at *95 n.12.  Re-litigation of this issue on a motion for reconsideration is therefore inappropriate.  Moreover, as plaintiff rightly notes, EPA has elected to make CID agents' contact information publicly available in its staff directory, and therefore "should not be heard to complain that citizens will access information it has chosen to make public."  Pl.'s Opp'n at 27 n.9.

enforcement information concerning criminal investigations" and knowledge of the Administrator's movements. *Id.* ¶ 12. EPA further clarifies that, consistent with OCEFT policy, the media reports and press releases provided with plaintiff's Reply to substantiate the claim that EPA routinely releases agent names, in fact, referred only to Special Agents-in-Charge, Acting Special Agents-In-Charge, or Assistant Special Agents-In-Charge by name. *Id.* ¶¶ 9–10. In contrast, the CID agents listed in the disputed calendar entries "appear on the Administrator's calendar in their capacity as PSD agents," not as CID supervisors, and withholding of their names is therefore also consistent with OCEFT policy. *Id.* ¶ 13; *see also* Def.'s Mem. at 9–10 ("The names at issue in the calendar entries are individuals who, at the time of the calendar entries at issue, served on the Administrator's security detail as opposed to supervisors speaking about criminal investigatory issues."); Def.'s Reply at 18–19 (similar).

This explication of agency policy directly contradicts *ERF I*'s finding that "EPA appears to routinely release the names of CID and PSD agents for public relations purposes, for example, positive press coverage about CID or PSD agents," 2021 U.S. Dist. LEXIS 27748, at *99, and therefore demonstrates a clear error of fact appearing on the face of the decision. Plaintiff protests that this correction "is not enough to change the outcome," Pl.'s Opp'n at 20, because "the public disclosure of the CID agents' names appears to have had little if any effect on the Court's assessment of the CID agents' privacy interests" and "was not dispositive to [the Court's] analysis," *id.* at 21. Not so. *ERF I* found that "[a]lthough PSD agents have a strong privacy interest in their identities," that privacy interest was diminished by what *ERF I* understood to be EPA's regular practice of disclosing agent names. 2021 U.S. Dist. LEXIS 27748, at *99. The conclusion that this "diminished" privacy interest was outweighed by the "significant public interest in tracing EPA's transfer and reallocation of law enforcement agents"

was therefore substantially informed by the inaccurate information that EPA released agent identities when doing so was in the agency's interest.  *Id.* at \*100.  Moreover, *ERF I* relied on *Hunton & Williams LLP v. EPA*, 248 F. Supp. 3d 220 (D.D.C. 2017), a decision concluding that Exemption 7(C) did not shield the names of U.S. Army employees from disclosure where "[t]he Army ha[d] already named several individuals in its briefing," *id.* at 258, in part based on the assumption that, like the Army in that case, EPA had disclosed CID agent names elsewhere.

The privacy interests of PSD agents in their identities are bolstered by the knowledge that EPA does not disclose the names of *any* CID agents except the names of CID agents in supervisory roles designated to serve as agency spokespersons for limited purposes.  As *ERF I* acknowledged, "[r]ank-and-file government employees, including law enforcement agents, have a clear interest in avoiding harassment by members of the media or the public, as courts in this Circuit have routinely acknowledged."  2021 U.S. Dist. LEXIS 27748, at \*93.  *ERF I* recognized that "PSD agents could be subjected to harassment by virtue of the identity of the person they protect and the types of investigations in which they and their colleagues are involved," and that this reality was "sufficient to establish an 'unwarranted invasion of privacy' for Exemption 7(C) purposes."  *Id.*  When considered without giving weight to the erroneous belief that EPA itself releases agents' identifying information on a regular basis, this "strong privacy interest [of PSD agents] in their identities," *id.* at \*99, outweighs the public interest in disclosure identified by plaintiff, although, as explained *supra* Part III.B.2.a, that interest remains substantial. Accordingly, EPA has demonstrated "why disclosure of [PSD agents' names] would . . . be 'reasonably . . . expected to constitute an unwarranted invasion of' [agents'] personal privacy, when balanced against the public interest in disclosure." *Bartko*, 898 F.3d at 66 (second omission in original) (quoting 5 U.S.C. § 552(b)(7)(C)).  Contrary to *ERF I*'s finding, then, the

agency properly invoked Exemption 7(C) to shield PSD agents' names appearing in the disputed calendar entries from disclosure.[16]   As this finding of a clear error of fact resulting in an error of law is itself sufficient to merit an amendment of judgment under Rule 59(e), *see supra* Part II.B, EPA's alternative argument that reconsideration is warranted to prevent manifest injustice, *see* Def.'s Reply at 20–22, need not be addressed.

### 3.   *Foreseeable Harm and Segregability*

The parties do not address, in their briefing of EPA's pending reconsideration motion, either the foreseeable harm, under the FOIA Improvement Act of 2016, 5 U.S.C. § 552(a)(8)(A), that would result from disclosure of PSD agents' names or the segregability of the withheld information.  To approve withholding under one of the FOIA exemptions, however, a district court must find that the agency has met its burden with respect to these requirements.  *See Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370–71 (D.C. Cir. 2020).  Although the parties briefed foreseeable harm and segregability in connection with their cross-motions for summary judgment, *ERF I* did not specifically consider whether EPA had demonstrated foreseeable harm from disclosure of agents' names or segregability of this information due to the conclusion reached there that agents' names were not properly withheld under Exemption 7(C).

---

[16]     EPA also seeks reconsideration of *ERF I*'s observation, in carrying out the Exemption 7(C) balancing analysis, that "EPA does not identify any particularized risk of threat or harassment to PSD agents assigned to protect Administrator Wheeler," *ERF I*, 2021 U.S. Dist. LEXIS 27748, at *99, contending that cases cited in note 11 of *ERF I* "make[] clear that there is no requirement that EPA identify a particularized threat of harm or harassment when asserting Exemption 7(C)" and that *ERF I* therefore erred in holding EPA to this standard, Def.'s Mem. at 10; *see also* Def.'s Reply at 19.  *ERF I* plainly identified PSD agents' "clear interest in avoiding harassment," and deemed it "sufficient to establish an 'unwarranted invasion of privacy' for Exemption 7(C) purposes."  2021 U.S. Dist. LEXIS 27748, at *93.  In stating that EPA had failed to identify a particularized risk of harm, *ERF I* therefore did not impose a new threshold requirement for Exemption 7(C) withholding, as EPA asserts, but rather considered the weight of PSD agents' privacy interest in the balancing analysis relative to the "significant public interest" identified by plaintiff.  *See id.* at *99–100; *see also Sierra Club v. EPA*, Case No. 18-cv-03472-JCS, 2020 U.S. Dist. LEXIS 231770, at *13 (N.D. Cal. Dec. 8, 2020) (assigning an agency's similarly general assertion of an interest in avoiding harassment "relatively little weight" in the balancing analysis while recognizing that "the mere potential for harassment creates a cognizable [privacy] interest in the absence of any certainty that harassment would result" (emphasis and internal quotation marks omitted)).  Since *ERF I* did not create the heightened standard that EPA claims, this additional basis for reconsideration is rejected.

*See* 2021 U.S. Dist. LEXIS 27748, at *108 ("If an agency fails to show that a withheld record fits within the claimed exemption in the first instance, the foreseeable harm analysis need not be addressed."); *id*. at *113–15. In light of the determination here that PSD agents' names are protected by Exemption 7(C), EPA's satisfaction of the foreseeable-harm and segregability requirements as applied to these records is now addressed.

### a) Foreseeable Harm

The FOIA Improvement Act provides that "[a]n agency shall withhold information . . . only if . . . the agency reasonably foresees that disclosure would harm an interest protected by" one of the nine FOIA exemptions. 5 U.S.C. § 552(a)(8)(A). This provision requires agencies withholding information under an exemption to show not only that a withheld record "falls within a FOIA exemption," but also "that the agency 'reasonably foresees that disclosure would harm an interest protected by [the] exemption.'" *Machado Amadis*, 971 F.3d at 370 (alteration in original) (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)).

An agency successfully makes this second, "heightened" showing, *Judicial Watch, Inc. v. U.S. Dep't of Com.*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019), by "'identify[ing] specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials' and 'connect[ing] the harms in [a] meaningful way to the information withheld,'" *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019) (third alteration in original) (quoting *Judicial Watch, Inc. v. U.S. Dep't of Justice* ("*Judicial Watch II*"), Civ. A. No. 17-0832 (CKK), 2019 U.S. Dist. LEXIS 163473, at *13–14 (D.D.C. Sept. 24, 2019)); *see also* H.R. Rep. No. 114-391, at 9 (2016) ("An inquiry into whether an agency has reasonably foreseen a specific, identifiable harm that would be caused by a disclosure would require the ability to articulate both the nature of the harm and the link between the specified harm and specific information contained in the material

withheld."). Agencies therefore "must provide more than 'nearly identical boilerplate statements' and 'generic and nebulous articulations of harm.'" *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106 (quoting *Judicial Watch II*, 2019 U.S. Dist. LEXIS 163473, at *11, *13); *see also Cause of Action Inst. v. U.S. Dep't of Vets. Affs.*, Civ. A. No. 20-997 (BAH), 2021 U.S. Dist. LEXIS 75417, at *45–46 (D.D.C. Apr. 20, 2021).

"[T]he agency's burden to demonstrate that harm would result from disclosure may shift depending on the nature of the interests protected by the specific exemption with respect to which a claim of foreseeable harm is made." *ERF I,* 2021 U.S. Dist. LEXIS 27748, at *107. The purpose of Exemption 7(C) is "to protect the privacy of individuals identified in certain agency records," *ACLU*, 655 F.3d at 6, such that disclosure of identifying information is a harm in and of itself. Thus, when invoking Exemption 7(C), an agency need not establish much more than the fact of disclosure to establish foreseeable harm. *See Reps. Comm. for Freedom of Press v. FBI*, Civ. Case No. 15-1392 (RJL), 2020 U.S. Dist. LEXIS 48925, at *28 (D.D.C. Mar. 20, 2020) (finding that the agency's "justifications for withholding names and identifying information for FBI personnel" under Exemption 7(C) "readily satisfy the 'foreseeable harm' standard"); *cf. ERF I*, 2021 U.S. Dist. LEXIS 27748, at *107–08 (observing that a similar standard would likely apply to withholdings under Exemption 5's attorney-client privilege, given its purpose of providing an assurance of confidentiality to clients).

EPA's *Vaughn* Index and the declarations submitted in support of its motion for summary judgment meet this standard with respect to withholding of PSD agents' identities.[17] The content of the withheld information, consisting solely of agent names, is undisputed. EPA affirmatively concludes, with respect to all of the records, that disclosure of PSD agents' names would harm

---

[17]   "A *Vaughn* index describes the documents withheld or redacted [by the agency] and the FOIA exemptions invoked, and explains why each exemption applies." *Prison Legal News*, 787 F.3d at 1145 n.1.

the privacy interests of the identified individuals.  *See* Def.'s Mot. Summ. J., Attach., *EcoRights v. EPA*, Civ. A. No. 1:19-CV-00980 (D.D.C.) *Vaughn* Index ("*Vaughn* Index") at 5, ECF No. 19-4 ("Disclosure of [PSD agents'] identities . . . could expose them to harassment or danger due to their role providing security to the Administrator" and "could interfere with their ability to protect the physical safety of the Administrator when on duty."); *see also* Decl. of Elizabeth White ("White Decl.") ¶¶ 45–46, ECF No. 19-3 (similar); Decl. of Claude Walker ¶ 6, ECF No. 23-2 ("[D]isclosure of PSD members' personal information would expose them to undue attention from individuals seeking information about the Administrator and harassment from individuals seeking to disrupt the Administrator's activities.").  These predicted results of disclosure are exactly what Exemption 7(C) seeks to prevent, and are connected to "specific information contained in the material withheld," that is, the names of PSD agents appearing in the disputed calendar entries.  *Judicial Watch II*, 2019 U.S. Dist. LEXIS 163473, at *10 (internal quotation marks and citation omitted).  EPA has demonstrated that foreseeable harm would result from the disclosure of PSD agent names.

### b)  Segregability

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt" from disclosure.  5 U.S.C. § 552(b).  Producing segregable information is essential for agencies' FOIA compliance, and "district courts cannot approve withholding exempt documents 'without making an express finding on segregability.'"  *Machado Amadis*, 971 F.3d at 371 (quoting *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007)); *see also Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008) ("[B]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the

documents to be withheld." (internal quotation marks and citation omitted)); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (same).

In evaluating segregability, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman*, 494 F.3d at 1117. Even under that presumption, "the agency must provide a 'detailed justification' for [the exempt material's] non-segregability," but need not "provide so much detail that the exempt material would be effectively disclosed." *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting *Mead Data Ctr., Inc. v. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977)).  Affidavits attesting to the agency's "line-by-line review of each document withheld in full" and the agency's determination "that no documents contained releasable information which could be reasonably segregated from the nonreleasable portions," in conjunction with a *Vaughn* index describing the withheld record, suffice. *Id.* (internal quotation marks omitted); *see also Loving v. Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008) (stating that "the description of the document set forth in the *Vaughn* index and the agency's declaration that it released all segregable material" are "sufficient for [the segregability] determination").[18]

To this end, as explained in *ERF I*, "EPA has averred that 'all of the information withheld [from its response to plaintiff's FOIA Request] was carefully reviewed to ensure that the Agency has disclosed all reasonably segregable non-exempt information' and that EPA 'provided supplemental releases of information where possible.'"  2021 U.S. Dist. LEXIS 27748, at *114–

---

[18]     The FOIA Improvement Act of 2016 added another provision concerning segregability: An agency shall "(I) consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible; and (II) take reasonable steps necessary to segregate and release nonexempt information."  5 U.S.C. § 552(a)(8)(A)(ii).  The D.C. Circuit has interpreted subsection (b) of FOIA to be satisfied by affidavits attesting to the agency's "line-by-line review of each document withheld in full" and the agency's determination "that no documents contained releasable information which could be reasonably segregated from the nonreleasable portions."  *Johnson*, 310 F.3d at 776 (internal quotation marks omitted).  The FOIA Improvement Act's new provision on segregability "appears to require no more than that."  *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 115.

15 (quoting White Decl. ¶ 68). Corroborating these statements is the fact that EPA produced the calendar entries in which PSD agents' names appear to plaintiff, with only the agents' identifying information redacted. *See Vaughn* Index at 5–6. Therefore, EPA's declaration and *Vaughn* Index are sufficient to establish non-segregability of the disputed calendar entries. Consequently, summary judgment as to the PSD agents' names will be granted for defendant.

## IV.     CONCLUSION

For the foregoing reasons, plaintiff has failed to demonstrate any basis on which to strike EPA's Supplemental Declaration of Claude Walker, and therefore plaintiff's Motion to Strike is denied. EPA has shown that *ERF I* contained a clear error of fact by crediting plaintiff's claim that the agency routinely releases PSD agents' names for public-relations purposes, and that this factual error, by mitigating PSD agents' privacy interests in their identities, resulted in a legal error in the Exemption 7(C) balancing analysis. Accordingly, EPA's Motion to Alter or Amend Judgment is granted. The previous entry of summary judgment for plaintiff as to EPA's withholding of PSD agent names from thirty calendar entries is vacated, and summary judgment will be granted for EPA on these withholdings.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  June 1, 2021

_____
BERYL A. HOWELL
Chief Judge